# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: POTASH ANTITRUST LITIGATION (No. II) | MDL Docket No. 1996 (Civil Action No. 1:08-cv-6910) |
| THIS DOCUMENT APPLIES TO: ALL DIRECT PURCHASER ACTIONS | Hon. Ruben Castillo |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JSC URALKALI'S INDIVIDUAL MOTION TO DISMISS THE DIRECT PURCHASER AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

## PRELIMINARY STATEMENT

The Direct Purchaser Amended Consolidated Class Action Complaint ("Complaint") should be dismissed for the reasons set forth in the Defendants' Joint Motion to Dismiss, filed on June 15, 2009. JSC Uralkali ("Uralkali") joins in that motion and incorporates it herein by reference. The Complaint should also be dismissed as to Uralkali for the additional reasons that:

- Plaintiffs failed to serve Uralkali pursuant to the Hague Convention, which the Supreme Court has held is "mandatory";

- Plaintiffs' efforts to serve Uralkali in Russia via facsimile and email were insufficient because such service does not comport with Russian law;

- Plaintiffs' efforts to serve Uralkali in the United States through BPC Chicago and Dewey & LeBoeuf did not comport with Rule 4 of the Federal Rules of Civil Procedure and applicable law; and

- Plaintiffs allege no facts in the Complaint that would establish that this Court has personal jurisdiction over Uralkali – a corporation that Plaintiffs admit is organized under the laws of the Russian Federation, is based in Russia, and does not operate in the United States.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs allege that Uralkali "is a Russian joint stock corporation with its headquarters in Moscow, Russia." Complaint ¶24. Plaintiffs also allege that "[a]s of April 25, 2005, Uralkali owned a one-half interest in Belarusian Potash Company, a joint venture with defendant RUE PA Belaruskali, through which it markets, sells and distributes potash. During the Class Period, Uralkali sold and distributed potash in the United States, directly or through its affiliates." *Id.*

On March 18, 2009, Plaintiffs filed a Motion to Allow Alternative Service on Defendants Uralkali, Silvinit, and IPC pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Alternative Service Motion" or "Alt. Serv. Mot."). [Dkt. No. 41]. Not having been a party to this litigation at that time, Uralkali was not in a position to contest that motion. On April 23, 2009, this Court granted Plaintiffs' motion and approved delivery of the Complaint to Uralkali by four alternative methods: (1) email to its corporate headquarters; (2) facsimile to its corporate headquarters; (3) delivery to BPC Chicago, LLC ("BPC Chicago"); and (4) delivery to Dewey & LeBoeuf LLP

1

("Dewey") in New York. [Dkt. No. 64]. In doing so, however, the Court acknowledged that except for objections by BPC Chicago to being characterized as Uralkali's "agent," the motion had not been contested. *See* Transcript of Proceedings, April 23, 2009 [Dkt. No. 87] at 5.

About five weeks later, on May 27, 2009, Plaintiffs' counsel sent an email to uralkali@uralkali.com attaching copies of the Summons and Complaint, as well as purported Russian translations of those documents. *See* Declaration of Eamon O'Kelly, dated July 6, 2009, submitted herewith ("O'Kelly Decl.") ¶2. On the same date, May 27, 2009, Plaintiffs' counsel sent to Uralkali via facsimile what appear to be a Russian translation of the Summons and incomplete Russian translations of the Complaint, but not copies of the English-language Summons and Complaint themselves. *See* O'Kelly Decl. ¶3.

On June 2, 2009, Plaintiffs delivered copies of the Summons and Complaint, with purported Russian translations thereof, to Dewey at its offices in New York. At that time, a Dewey representative objected on the ground that Dewey was not authorized by Uralkali to accept service on its behalf. *See* Declaration of Judith L. Strigaro, dated June 25, 2009 ("Strigaro Decl.") ¶3. On June 3, 2009, Plaintiffs delivered copies of the same materials to the offices of BPC Chicago, over BPC Chicago's objections. *See* O'Kelly Decl. ¶4.

## ARGUMENT

### I. The Complaint Should Be Dismissed Because Plaintiffs Failed to Use the Mandatory Hague Convention Procedures

#### a. Plaintiffs Were Required to Comply with Hague Convention Procedures Before Resorting to Alternative Service Methods Under Rule 4(f)(3)

"When a defendant challenges the sufficiency of service, the burden is on the Plaintiff to affirmatively demonstrate otherwise." *Chapman v. U.S. Marshal for the N. Dist. of Illinois*, 584 F. Supp. 2d 1083, 1090 (N.D. Ill. 2008). Plaintiffs cannot satisfy this requirement here with respect to Uralkali because they failed to comply with the mandatory service procedures of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15,

1965, 20 U.S.T. 361 ("Hague Convention"), and thus the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

The Federal Rules of Civil Procedure provide for service on a foreign corporation outside the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery…." Fed. R. Civ. P. 4(h)(2). Rule 4(f)(1) in turn requires service in a foreign country to be effected through the Hague Convention, a multilateral treaty that provides procedures by which judicial documents can be transmitted to parties in foreign countries. *See* Fed. R. Civ. P. 4(f)(1). Both the United States and the Russian Federation are parties to the Hague Convention. *See* Hague Conference on Private International Law, *Status Table to the Hague Service Convention*, http://www.hcch.net/index_en.php?act=conventions.status&cid=17.

By its terms, the Hague Convention "*shall apply in all cases*, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention art. 1 (emphasis added). The Supreme Court has held that these Hague Convention requirements are "mandatory." *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 699 (1988); *see also Robinson Eng'g Co. v. George*, 223 F.3d 445, 449 n.2 (7th Cir. 2000) ("In the cases to which it applies – that is, civil or commercial cases, where service must actually take place abroad – the Convention is mandatory."); *Zelasko v. Comerio*, No. 08-366, 2008 U.S. Dist. LEXIS 53316, at *3 (S.D. Ill. July 14, 2008) (same).

Therefore, "to make effective service in a country that has joined the Hague Convention, a plaintiff must follow the provisions of the treaty." *Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 58 (D. Mass. 2002). In the first instance, this requires a plaintiff to transmit copies of the Summons and Complaint, together with certified translations, to the Hague Central Authority in the country in which service is being attempted; the Central Authority is then responsible for effecting service on the foreign defendant. *See* Hague Convention art. 5(a); *Trump Taj Mahal Assocs. v. Hotel Servs., Inc.*, 183 F.R.D. 173, 176 (D.N.J. 1998). Alternatively, plaintiffs could seek authorization from the Central Authority to effect service

themselves within the foreign country, in a manner that comports with that country's laws. Hague Convention art. 5(b); *Trump Taj Mahal Assocs.*, 183 F.R.D. at 176. Here, the Plaintiffs admit that they have not even attempted to serve Uralkali via the Hague Convention. *See* Alt. Serv. Mot. at 2-3. They have neither sent copies of the Summons and Complaint to the Central Authority in Moscow nor sought authorization from the Central Authority to effect service themselves within Russia in accordance with Russian law. Therefore, because Plaintiffs "did not follow the provisions of the Hague Convention … service was improper." *Marcantonio*, 206 F. Supp. 2d at 58.

Plaintiffs claim that they were not required to abide by the terms of the Hague Convention as provided by Rule 4(f)(1) because another section of Rule 4(f) allows service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); *see* Alt. Serv. Mot. at 3-8. But while Rule 4(f)(3) allows a court to approve alternative means of service on a foreign defendant where efforts to follow Hague Convention procedures have been diligently attempted but failed, the plaintiff must *first* attempt to serve the Summons and Complaint via those procedures, as required by Rule 4(f)(1):

> [R]esort to Rule 4(f)(3) … should be seen as a final effort to make service when other means have failed. … [I]t is clear from the Advisory Committee Notes on Rule 4, which state "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service," that *subsection (f)(1) does take precedence when, as here, an international treaty so requires.*

*Marcantonio*, 206 F. Supp. 2d at 58 (emphasis added); *see also Furukawa Elec. Co. of N. Am. v. Yangtze Optical Fibre & Cable Co.*, No. Civ. 05-11219, 2005 WL 3071244, at *3 (D. Mass. Nov. 16, 2005) (holding that the plaintiff must "attempt[] to make service on [the defendant] pursuant to the Convention" before seeking to resort to alternative means under Rule 4(f)(3)); *Trask v. Service Merch. Co.*, 135 F.R.D. 17, 22 (D. Mass. 1991) (requiring "at least a good faith attempt to comply with the Hague Convention" before using alternative methods). Because Plaintiffs had not first made a good faith effort to comply with Rule 4(f)(1) by attempting service

through the Hague Convention procedures, service by alternative means under Rule 4(f)(3) was legally insufficient and thus the Complaint should be dismissed under Rule 12(b)(5).

### b. Plaintiffs' Excuses for Their Unwillingness to Follow the Hague Convention Procedures Are Unavailing

In support of their contention that they were not required to follow the mandatory Hague Convention procedures required by Rule 4(f)(1), Plaintiffs relied primarily on *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002).  *See* Alt. Serv. Mot. at 4-5.  *Rio*, however, is inapposite on its face.  First, the defendant in *Rio* was a Costa Rican entity, and because Costa Rica was not a party to the Hague Convention, the use of Hague procedures was not "mandatory" under *Schlunk* and Rule 4(f)(1).  *See Rio*, 284 F.3d at 1015 n.4.  Moreover, in *Rio*, the plaintiff had made numerous unsuccessful attempts to serve the defendant, "an international e-business scofflaw, playing hide-and-seek with the federal court" that had no known real address outside of the internet, before seeking approval for alternative means of service under Rule 4(f).  *Id.* at 1018.  Here, by contrast, Plaintiffs admit that they made no effort to serve Uralkali, a publicly-traded corporation with headquarters in Berezniki, Russia and corporate offices in Moscow and Perm.  *See* Alt. Serv. Mot. at 1-3.

None of the other cases cited by Plaintiffs supports their argument that they were not required to attempt service through Hague Convention procedures before resorting to alternative methods.  *See* Alt. Serv. Mot. at 5 (citing cases).  To the contrary, these cases support Uralkali's position.  *See Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-Civ-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (approving alternative service where "the Plaintiffs' attempts to perfect service under [the Hague Convention] for over a year had come to naught"); *1st Tech., LLC v. Digital Gaming Solutions S.A.*, No. 08 CV 586, 2008 WL 4790347, at *7-10 (E.D. Mo. Oct. 31, 2008) ("requir[ing] the plaintiff to show that reasonable efforts to serve the defendant have already been made," including through the Hague Convention); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (ordering alternative service only

5

after plaintiffs "show[ed] that they have reasonably attempted to effectuate service on defendant," including that they "attempted to comply with [the Hague Convention]") (internal quotation omitted); *Studio A Entm't, Inc. v. Active Distribs., Inc.*, No. 06CV2496, 2008 WL 162785, at \*3-5 (N.D. Ohio Jan. 15, 2008) ("requir[ing] a showing by the plaintiff that reasonable efforts to serve the defendant have already been made" before approving alternative service under Rule 4(f)(3)); *Williams v. Advertising Sex LLC*, 231 F.R.D. 483, 486 (N.D. W. Va. 2005) (permitting alternative service under Rule 4(f)(3) because Australia was not a party to the Hague Convention).

In an effort to justify their flouting of the mandatory Hague Convention procedures, Plaintiffs cited to a State Department circular describing purported difficulties with serving process in Russia.  *See* Alt. Serv. Mot. at 2.  Their contention that delays at the Russian Central Authority would have made it futile to attempt service, however, ignores the fact that the Hague Convention itself provides alternatives in the event that the Russian Central Authority were to refuse to serve process:  "According to Article 15 of the Hague Convention, the Court may hold that service is complete even if the Central Authority has not returned a certificate [of service] under Article 6" within a reasonable time.  *OGM, Inc. v. Televisa, S.A. de C.V.*, No. CV 08-5742, 2009 WL 1025971, at \*3 n.2 (C.D. Cal. April 15, 2009); *see also* Fed. R. Civ. P. 4(f)(1) advisory committee's note ("Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months.").  Therefore, Plaintiffs' contention that they were "unable" to serve Uralkali via Hague Convention procedures is simply wrong.  The facts are that they never even tried to serve in accordance with Hague Convention procedures in the first place.

## II.     The Complaint Should Be Dismissed Because the Methods Used to Serve Uralkali in Russia Were Improper under Russian Law

Even if it were appropriate for Plaintiffs to serve Uralkali by alternative means under Rule 4(f)(3) (and it was not), Plaintiffs' efforts to serve Uralkali by facsimile and email did not comport with Russian law, and thus the Complaint should be dismissed as to Uralkali for this

reason as well.  "While Rule 4(f)(3) provides for substitute service 'as may be directed by the court,' any such service must comport with the laws of the foreign country."  *In re Ski Train Fire in Kaprun, Austria*, No. 01 Civ. 7342, 2003 WL 1807148, at *7 (S.D.N.Y. April 4, 2003) (citing Fed. R. Civ. P. 4(f) advisory committee's note); *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 927 (11th Cir. 2003) (holding that Rule 4(f)(3) does not authorize a method of service that violates foreign law); *see also Lake Charles Cane Lacassine Mill, LLC v. SMAR Int'l Corp.*, No. 07-CV-667, 2007 U.S. Dist. LEXIS 41941, at *7 (W.D. La. June 8, 2007) (holding that "in the interest of international comity, the attempted service on the defendant will be quashed" because it did not comport with Brazilian law); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389, 399-401 (N.D. Ohio 1990) (quashing service on "principles of comity" where plaintiff failed to serve process in accordance with the Hague Convention); *Ballard v. Tyco Int'l, Ltd.*, No. MD-02-1335-PB, 2005 WL 1863492, at *2 (D.N.H. Aug. 4, 2005) (stating that the Hague Convention was designed to provide a means of service that "will not be objectionable to the nation in which that defendant is served").[1]

Russian law provides that service of judicial documents by fax or email is permissible only "in cases not allowing any delay" – for example, when a hearing is scheduled so soon that there is not sufficient time to obtain postal receipt of delivery of judicial documents sent via registered mail.  *See* Arbitration Procedural Code of the Russian Federation, art. 122(1) (O'Kelly Decl., Ex. 1); Declaration of Eleonora Sergeeva, dated June 30, 2009, ¶¶4-9.  Because Plaintiffs have not claimed (and could not claim) that this is such a "case[] not allowing any delay," transmitting documents via fax and email did not comport with Russian law, and therefore service was insufficient under any circumstances.  *See Prewitt Enters.*, 353 F.3d at 927; *Ski Train Fire*, 2003 WL 1807148, at *7.  To the extent that Plaintiffs rely on their efforts to serve

---

[1] Indeed, the State Department circular that Plaintiffs rely upon recognizes that even when "alternative methods of service" are used to serve a Russian party, such methods should comport with Russian law, when it "advise[s] litigants that they may wish to seek guidance from legal counsel in the Russian Federation regarding alternative methods of service…."  *See* U.S. Dep't of State, Russia Judicial Assistance, *available at* http://travel.state.gov/law/info/judicial/judicial_3831.html.

Uralkali by fax and email in Russia, the Complaint must be dismissed pursuant to Rule 12(b)(5).[2]

### III.   The Complaint Should Be Dismissed Because Service through Uralkali's Purported Agents in the United States Was Insufficient

Plaintiffs' efforts to serve Uralkali through BPC Chicago and Dewey & LeBoeuf as Uralkali's purported "agents" were also insufficient, and the Complaint must be dismissed under Rule 12(b)(5) for this reason as well. Rule 4(h)(1)(B) provides that if a foreign corporation is served within the United States, service "must" be effected by "delivering a copy of the summons and complaint … to an agent *authorized by appointment or law* to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); *see also* Fed. R. Civ. P. 4(e) (setting forth analogous provisions for service on individuals). In their Alternative Service Motion, plaintiffs contended that the Court could bypass the express requirements of Rule 4(h)(1)(B), and permit service through Dewey and BPC Chicago as Uralkali's agents under Rule 4(f)(3). *See* Alt. Serv. Mot. at 13-14. This contention is wrong as a matter of law. Rule 4(f)(3) applies *only* when service is to be made "at a place *not* within any judicial district of the United States." *See* Fed. R. Civ. P. 4(f) (emphasis added); *see also Chung v. Tarom, S.A.*, 990 F. Supp. 581, 583-84 (N.D. Ill. 1998) (noting that Rules 4(e) and 4(h) apply when a foreign corporation is served within the United States); *Silvious v. Pharaon*, 54 F.3d 697, 701-702 (11th Cir. 1995) (holding that service on a foreign defendant's agent who is located within the United States is governed by Rule 4(e) (and, implicitly, Rule 4(h))).

Rule 4(h)(1)(A) provides that when service is to be effected upon a corporation, the mode of service must accord with the applicable state law. *See* Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1). Although Illinois law permits service upon a corporation through its agent (*see* 735

---

[2] Moreover, to the extent that Plaintiffs specifically purport to rely on their efforts to serve Uralkali by facsimile, dismissal is also required for insufficient process under Fed. R. Civ. P 12(b)(4). Plaintiffs faxed only non-certified and incomplete translations of the Summons and Complaint in Russian, without copies of the original documents. This was contrary to Fed. R. Civ. P. 4(a)-(c) and Russian law, both of which require service of a copy of the original documents and a certified translation. *See Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 797 (S.D.N.Y. 2008); *United States v. Nat'l Muffler Mfg.*, 125 F.R.D. 453, 454-55 (N.D. Ohio 1989); *cf. O'Brien v. R.J. O'Brien Assocs., Inc.*, 998 F.2d 1394, 1400 (7th Cir. 1993).

ILCS § 5/2-204), Plaintiffs have the "burden of establishing this agency relationship" under § 2-204.  *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998).  Here, Plaintiffs have not satisfied their burden of establishing that BPC Chicago was Uralkali's "agent," and thus their delivery of a copy of the Summons and Complaint to BPC Chicago did not constitute sufficient service under Rule 4(h)(1)(B).

In their Alternative Service Motion, Plaintiffs asserted that "Uralkali owns a half interest in defendant Belarusian Potash Co. (a company located in the Republic of Belarus), which in turn, owns BPC Chicago LLC, a subsidiary located in Buffalo Grove, Illinois."  Alt. Serv. Mot. at 12-13.  Such an indirect and attenuated relationship is insufficient to establish that BPC Chicago is Uralkali's "agent" for service of process under Illinois law.  Under that law, "[t]he mere existence of a parent-subsidiary relationship is insufficient to establish the close ties necessary for a subsidiary to be deemed a parent's agent for the service of process."  *Akari Imeji Co. v. Qume Corp.*, 748 F. Supp. 588, 593 (N.D. Ill. 1990) (quoting *Wissmiller v. Lincoln Trail Motosports, Inc.*, 195 Ill. App. 3d 399 (4th Dist. 1990)).  *A fortiori*, Uralkali's 50% interest in a Belarusian company that in turn owns BPC Chicago "is insufficient to establish the close ties" necessary for an agency relationship.

Indeed, even in cases where the ties between the parent and subsidiary are much closer than those alleged here, courts have found that there is no agency relationship for service of process.  *See, e.g.*, *Chung*, 990 F. Supp. at 585 (finding no agency despite "evidence of some control" and indirect two-thirds ownership of the domestic corporation by the foreign defendant); *Akari Imeji Co.*, 748 F. Supp. at 593 (holding that a 60% owned subsidiary that "does not publish its own annual report" and that "exists predominantly to promote the sale and distribution of [the parent's] products in the United States" was not an agent for service of process).  Even if Uralkali owned 100% of BPC (which it does not), which in turn owns BPC Chicago, BPC Chicago would not automatically qualify as an agent for service of process on Uralkali.  *See Rymal v. Ulbeco, Inc.*, 33 Ill. App. 3d 799, 802 (2d Dist. 1975) ("The mere fact that a corporation

9

is owned by another corporation does not render the subsidiary a proper agent for service of process upon the parent or, as here contended, the great-grandparent corporation.").

Moreover, even if the Court were to accept as true for purposes of this motion the conclusory allegation in Plaintiffs' Alternative Service Motion (but not in the Complaint) that "[m]uch, if not all, of Uralkali's sales of potash in the United States are handled by BPC Chicago LLC," this would not suffice to make BPC Chicago Uralkali's agent for service of process. *See Akari Imeji Co.*, 748 F. Supp. at 593 (stating that even a subsidiary that "exists predominantly to promote the sale and distribution of [the parent's] products in the United States" is not an agent for service of process by virtue of that fact); *Chung*, 990 F. Supp. at 585 (finding no agency even though the "sole business purpose" of the subsidiary was to market the defendant's products).

Similarly, Plaintiffs purported "service" of Uralkali by delivering a copy of the Summons and Complaint to Dewey in New York is insufficient on its face. *See Schultz v. Schultz*, 436 F.2d 635, 637 (7th Cir. 1971) (holding that for counsel to be authorized to accept service for his client, the client must "actually appoint[] an agent for that purpose") (quoting 2 Moore's Federal Practice (2d ed.) § 4.12); *see also Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 144, 147 (N.D. Ind. 1985) (holding that it was not sufficient that a law firm had been authorized to accept service for its client in the past). Plaintiffs expressly admit, however, that Dewey "is *not* authorized to accept service on behalf of Uralkali in this matter." *See* Alt. Serv. Mot. at 13 (emphasis added); *see also* Letter from Jeffrey L. Kessler to W. Jos. Bruckner, dated Feb. 17, 2009 (attached as Ex. G to the Declaration of Austin Cohen in Support of Plaintiffs' Alternative Service Motion [Dkt. No. 40]). Moreover, when Plaintiffs' representative attempted to deliver a copy of the summons and complaint to Dewey on June 2, 2009, a Dewey employee expressly reiterated that Dewey was not authorized by Uralkali to accept service. *See* Strigaro Decl. ¶3. In addition, Plaintiffs allege no facts in the Complaint that would support a claim that Dewey is Uralkali's agent "by law."

In short, Plaintiffs cannot satisfy their burden of establishing under Rule 4(h)(1)(B) that

10

BPC Chicago and Dewey & LeBoeuf are Uralkali's agents for service of process.  Here, the Complaint should be dismissed under Rule 12(b)(5).

**IV.    The Complaint Should Be Dismissed Because Plaintiffs Allege No Facts That Would Establish That This Court Has Personal Jurisdiction over Uralkali**

"When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* case of jurisdiction."  *Dupree v. Greyhound Lines, Inc.*, 540 F. Supp. 2d 946, 949 (N.D. Ill. 2008).  In a specific jurisdiction case such as this one, "[t]he question is whether these allegations, if true, are sufficient for personal jurisdiction." *Quantum Color Graphics, LLC. v. Fan Ass'n Event Photo GmbH*, 185 F. Supp. 2d 897, 904 (N.D. Ill. 2002).  The Complaint against Uralkali should be dismissed because Plaintiffs allege no facts in their Complaint that would enable them to meet their burden under Rule 12(b)(2).

Before a foreign defendant such as Uralkali may be required to defend a case in this Court, Plaintiffs must establish that the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "[I]t is essential … that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "[C]ritical to [the] due process analysis … is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Plaintiffs allege no facts in the Complaint that, if true, would allow them to establish that the Court has personal jurisdiction over Uralkali.  *See Quantum Color Graphics, LLC*, 185 F. Supp. 2d at 904.

Plaintiffs allege in conclusory fashion that Uralkali:

> (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of potash

11

> throughout the United States, including this District; [and] (c) had substantial contacts with the United States, including this District….

Complaint ¶8; *see also id.* ¶24 ("Uralkali sold and distributed potash in the United States, directly or through its affiliates.").  Such conclusory assertions, unsupported by any allegations of specific facts, do not satisfy the standards set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  *See also Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 673-74 (D. Del. 2008) (dismissing for lack of personal jurisdiction because "[t]he amended complaint alleges, in a conclusory manner, that the defendants derive substantial revenue from products sold in Delaware.").

The only *facts* that Plaintiffs offer in support of the conclusory assertions quoted above are that Uralkali and another defendant, RUE PA Belaruskali ("Belaruskali"), "have consolidated sales and marketing of their potash supplies with a single entity BPC," a joint venture between Uralkali and Belaruskali that is headquartered in Minsk, Belarus, and that "BPC jointly markets and sells these defendants' potash throughout the world, including in the United States." Complaint ¶71.  However, the allegation that BPC – a Belarus corporation in which Uralkali is not alleged to own a majority or controlling share (*see* Complaint ¶24), and which in turn owns BPC Chicago LLC (*see* Complaint ¶¶26-28) – allegedly sells potash in the United States is insufficient to establish the Court's personal jurisdiction over *Uralkali*.  *See Parker*, 530 F. Supp. 2d at 674 (holding that plaintiff failed to plead personal jurisdiction as to certain defendants because the complaint alleged only that another defendant had sales within the forum).

Even "the jurisdictional contacts of a wholly-owned subsidiary are not imputed to the parent corporation."  *Erie Foods Int'l v. Apollo Group & Apollo Group USA, Inc.*, No. 04 C 6610, 2006 U.S. Dist. LEXIS 21515, at *6 (N.D. Ill. April 10, 2006).  *A fortiori*, the alleged jurisdictional contacts of a partly-owned subsidiary not even alleged to be within Uralkali's control cannot be imputed to Uralkali.  Courts have "tended to reject the notion that a foreign corporation transacts business in a district simply because its products are sold in the district in

the absence of other evidence that the sales are made by a company controlled by the foreign manufacturer." *Sportmart, Inc. v. Frisch*, 537 F. Supp. 1254, 1258 (N.D. Ill. 1982).

A court does not have personal jurisdiction over a foreign corporation based on its subsidiary's contacts, "where corporate formalities are substantially observed and the parent does not exercise an *unusually high degree of control* over the subsidiary," *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (emphasis added), *i.e.*, not just the degree of control that is "simply incident[] of a parent-subsidiary relationship." *Erie Foods Int'l*, 2006 U.S. Dist. LEXIS at *6, *15 (emphasis added). Rather, "[i]n order to support the exercise of jurisdiction and venue over the foreign corporation, the relationship between the foreign and local corporations must be such that one is merely the alter ego of the other." *Sportmart, Inc*, 537 F. Supp. at 1258. Not only does the Complaint not allege that BPC (much less its subsidiary BPC Chicago) is "controlled" by Uralkali – let alone that Uralkali exercised an "unusually high degree of control" – it affirmatively admits that Uralkali does not have even a majority interest in BPC. Moreover, the Complaint is totally devoid of any factual allegations that would support a claim that BPC, much less its United States subsidiary, is Uralkali's alter ego.

Finally, Plaintiffs allege that the Court has personal jurisdiction over Uralkali because Uralkali "engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District." *See* Complaint ¶8(d). But in order for the Court to exercise personal jurisdiction under this theory, Plaintiffs are required to allege facts that would support a claim that there was such a conspiracy, that Uralkali knowingly participated in the conspiracy, and that a "co-conspirator committed a tortious act pursuant to the conspiracy in the forum." *See Medallion Prods., Inc. v. H.C.T.V., Inc.*, No. 06 C 2597, 2006

U.S. Dist. LEXIS 81360, at *13 (N.D. Ill. Oct. 24, 2006).[3]  For the reasons set forth in Defendants' Joint Motion to Dismiss [Dkt. No. 108], Plaintiffs have failed to allege facts that would support a claim for an antitrust conspiracy in violation of the Sherman Act.  Thus, because Plaintiffs' conspiracy theory of personal jurisdiction is entirely derivative of their Sherman Act conspiracy claim, they have alleged no facts that would allow the Court to find personal jurisdiction over Uralkali.  *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough."); *see Twombly*, 550 U.S. at 555 (a complaint "requires more than labels and conclusions . . . .  Factual allegations must be enough to raise a right to relief above the speculative level.").  If the Court accepts the argument in Defendants' Joint Motion to Dismiss that Plaintiffs have alleged no facts supporting a conspiracy, the Court must also dismiss Plaintiffs' claims against Uralkali for lack of personal jurisdiction.

---

[3] Uralkali also notes that the "conspiracy" theory of personal jurisdiction has not been accepted by most federal courts, and Uralkali respectfully suggests that it is not a proper legal basis for satisfying the personal jurisdiction requirements.  *See Roy v. Brahmbhatt*, No. Civ. 07-5082, 2008 WL 5054096, at *8 (D.N.J. Nov. 26, 2008) (surveying many jurisdictions and holding that "[w]ithout … any consensus among the jurisdictions, this Court declines to recognize the conspiracy theory of personal jurisdiction" because its "central tenets . . . do not comport with *Int'l Shoe* and its admonition that the assertion of jurisdiction over a non-resident defendant should not 'offend traditional notions of fair play and substantial justice.'").

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Joint Motions to Dismiss, the Direct Purchaser Plaintiffs' Amended Consolidated Class Action Complaint should be dismissed against Uralkali.

Dated: July 6, 2009

Respectfully submitted,

/s/  Elizabeth M. Bradshaw
Elizabeth M. Bradshaw
DEWEY & LEBOEUF LLP
Two Prudential Plaza, Suite 3700
180 North Stetson Avenue
Chicago, IL 60601
(312) 794-8000

Jeffrey Kessler (admitted *pro hac vice*)
A. Paul Victor (admitted *pro hac vice*)
Eamon O'Kelly (admitted *pro hac vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 259-8000

Counsel for Defendant JSC Uralkali