**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: POTASH ANTITRUST | ) | Case No. 08-CV-6910 |
| LITIGATION (No. II) | ) | |
| | ) | MDL No. 1996 |
| THIS DOCUMENT APPLIES TO: | ) | |
| | ) | |
| ALL   ACTIONS | ) | Judge Ruben Castillo |
| ——————————————— | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUE PA BELARUSKALI'S INDIVIDUAL MOTION TO DISMISS THE DIRECT PURCHASER CONSOLIDATED CLASS ACTION COMPLAINT AND INDIRECT PURCHASERS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

GREENBERG TRAURIG, LLP
Thomas E. Dutton (Bar No. 6195923)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: 312-456-8400
Fax: 312-456-8435
duttont@gtlaw.com

David A. Baron
2101 L Street, Suite 1000
Washington, DC 20037
Tel: (202) 331-3165
Fax: (202) 261-0465
barond@gtlaw.com
Counsel for RUE PA Belaruskali

**Table of Contents**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 2

I.      PLAINTIFFS' CLAIMS AGAINST RUE PA BELARUSKALI ................... 2

II.     REPUBLICAN UNITARY ENTERPRISE "PRODUCTION
        AMALGAMATION 'BELARUSKALI'" .......................................................... 6

ARGUMENT ....................................................................................................... 7

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER RUE
        PA BELARUSKALI .................................................................................... 7

      A.    RUE PA Belaruskali is Undeniably an Agency or Instrumentality
           of the Republic of Belarus Entitled to Sovereign Immunity ......................... 7

           1. Plaintiffs Failt to Allege Any Exceptions to Sovereign Immunity ........ .. 11

           2. The "Commercial Activity" Exception Does Not Apply ........................ 12

                 a. Prong 1: Based Upon a Commercial Activity Carried on
                     in the United States ................................................................. 13

                 b. Prong 2: Based Upon an Act Performed in the United States
                     in Connection With A Commercial Activity Elsewhere ..... 14

                 c. Prong 3: Based Upon an Act Outside of the United States
                     in Connection with a Commercial Activity Elsewhere
                     that Causes a Direct Effect in the United States ................. 14

      B.    RUE PA Belaruskali Is Immune From Jurisdiction and Suit in this Court . 15

           1. RUE PA Belaruskali's Activities are not Commercial ............................ 15

           2. RUE PA Belaruskali's Activities have not Caused a
              Direct Effect in the United States ............................................................. 19

           3. The Mere Financial Losses Claimed by Plaintiffs are
              Not Cognizable as Direct Effects in the United States under the FSIA ... 20

II.     DIRECT PLAINTIFFS' PURPORTED SERVICE OF RUE PA
        BELARUSKALI WAS LEGALLY INSUFFICIENT ..................................... 21

A.     The Purported Summons that was Delivered to RUE PA Belaruskali was Improper and Legally Insufficient ........................................................ 22

B.     The Direct Purchasers Complaint had already been Superseded at the time it was Served on RUE PA Belaruskali and was of No Legal Effect ... 23

III.     **THE COURT LACKS PERSONAL JURISDICTION OVER RUE PA BELARUSKALI** ................................................................................................ 24

IV.     **UNDER 28 U.S.C. §1391 (f)(4) ORIGINAL VENUE IN THIS COURT IS IMPROPER** ................................................................................ ...25

V.     **ANY FURTHER AMENDMENTS OF THE COMPLAINTS BY THE PLAINTIFFS WITH RESPECT TO RUE PA BELARUSKALI WOULD BE FUTILE** ................................ ............................................. 26

**CONCLUSION** ..................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. Fed. Republic of Nigeria*, 107 F.3d 720 (9th Cir. 1997) .................................... 6

*Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250 (7th Cir. 1983) ................... *passim*

*Allen v. Russian Federation*, 522 F. Supp. 2d 167 (D.D.C. 2007) ............................... 18

*Antares Aircraft L.P. v. Nigeria*, 999 F.2d 33 (2d Cir. 1993) ...................................... 24

*Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ....................................... *passim*

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (2000) ........................... 8, 12

*Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528 (5th Cir. 1929) ............................... 23

*Autotech Technologies LP v. Integral Research & Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007)...... 9

*Bokkelen v. Grumman Aerospace Corp.*, 432 F. Supp. 329 (E.D.N.Y. 1977).............................. 19

*Bowyer v. U.S. Dept. of Air Force*, 875 F.2d 632 (7th Cir. 1989) .................................. 6

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ....................................... 10

*Enharo v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) ............................................. 11, 16

*Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270 (3rd Cir. 1993) ....................... 16

*Herbage v. Meese*, 747 F. Supp. 60 (D.D.C. 1990) ............................................. 13, 23

*Heroth v. Kingdom of Saudi Arabia*, 565 F. Supp. 2d 59 (D.D.C 2008)....................... 16

*Int'l Ass'n of Machinists & Aerospace Workers v. OPEC*,
477 F. Supp. 553 (C.D. Cal. 1979) *("IAM I")* .......................................... 16, 18, 19, 20

*Int'l Insurance Co. v. Caja Nacional De Ahorro Seguro*, 293 F.3d 392 (7th Cir. 2002) ............. 12

*Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147 (2nd Cir. 2007).................................... 16, 24

*MOL, Inc. v. Bangladesh*, 736 F.2d 1326 (9th Cir. 1984) ....................................... 19, 20

*Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542 (S.D.N.Y. 1985)............................ 28

*Olympia Exp., Inc. v. Linee Aeree Italiene, S.P.A.*, 509 F.3d 347 (7th Cir. 2007) .................. 8, 12

*Parker v. Brown*, 317 U.S. 341 (1943) ....................................................................................... 20

*Phillips v. Murchison*, 194 F. Supp. 620 (S.D.N.Y. 1961) ......................................................... 28

*Princz v. Germany*, 26 F.3d 1166 (D.C. Cir. 1994) .................................................................... 22

*Robinson v. Gov't of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ............................................... 13, 23

*Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*,
877 F.2d 574 (7th Cir. 1989) ………………………………………………… …10,18, 20, 24

*Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir. 1985) ...................... 14, 19, 24

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ................................................................. *passim*

*Segni v. Commercial Office of Spain*, 816 F.2d 344 (7th Cir. 1987) ........................................ 11

*Tifa Ltd. v. Republic of Ghana*, 692 F. Supp. 393 (D.N.J. 1988) ............................................. 27

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*,
33 F.3d 1232 (10th Cir. 1994) ............................................................................................ 23, 24

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983) ............................................. 9, 23

*Wahba v. National Bank of Egypt*, 457 F. Supp. 2d 721 (E.D. Tex 2006) ................................ 24

*Week v. Cayman Islands*, 983 F.2d 1074, 1992 WL 372241 (7th Cir. 1992) ............................... 3

**Federal Statutes**

28 U.S.C. § 1330 ................................................................................................................ *passim*

28 U.S.C. § 1330(a) ........................................................................................................... *passim*

28 U.S.C. § 1602 ................................................................................................................ *passim*

28 U.S.C. § 1603(b) ..................................................................................................................... 9

28 U.S.C. § 1605(a)(2) ...................................................................................................... *passim*

28 U.S.C. § 1608(b) .............................................................................................................. 8, 21

28 U.S.C. § 1406(a) ................................................................................................................... 26

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(1)...............................................................1, 11

Federal Rules of Civil Procedure 12(b)(2)...............................................................1, 25

Federal Rules of Civil Procedure 12(b)(3)................................................................1, 26

Federal Rules of Civil Procedure 12(b)(4)................................................................1, 24

Statement of the U.S. Representative to the United Nations,
 U.N. GAOR, 28th Sess., 2203rd Plen. Mtg.,
U.N. Doc. A/PV. 2203 (1973)...............................................................18

U.N. Resolution on Permanent Sovereignty Over Natural Resources,
G.A. Res. 1803 (XVII), 17 U.N. GAOR, 2d Comm. 327,
U.N. Doc. A/C R 850 (Dec. 1962)...............................................................18

U.N. Framework Convention on Climate Change (New York, May 9, 1992)
1771 U.N.T.S. 107, 31 I.L.M. 849(1992),
entered into force Mar. 21, 1994...............................................................18

Convention on the Service Abroad of Judicial and Extrajudicial Documents
 in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 1361, 658 U.N.T.S. 163..............23

1 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 4.50 (3d ed. 2009)...............25

28 Fed. Proc., L. Ed. § 5:74...............................................................25

62B Am. Jur. 2d Process § 140...............................................................25

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: POTASH ANTITRUST | ) | Case No. 08-CV-6910 |
| LITIGATION (No. II) | ) | |
| | ) | MDL No. 1996 |
| THIS DOCUMENT APPLIES TO: | ) | |
| | ) | |
| ALL   ACTIONS | ) | Judge Ruben Castillo |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUE PA BELARUSKALI'S
INDIVIDUAL MOTION TO DISMISS THE DIRECT PURCHASER CONSOLIDATED
CLASS ACTION COMPLAINT AND INDIRECT PURCHASERS AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT**

Defendant, Republican Unitary Enterprise "Production Amalgamation 'Belaruskali'"

("RUE PA Belaruskali"), by and through undersigned counsel, submits this Memorandum of

Law in Support of its Motion to Dismiss the Direct Purchaser Consolidated Class Action

Complaint ("Direct Complaint")[1] and Indirect Purchasers Amended Consolidated Class Action

Complaint ("Indirect Complaint") pursuant to the Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3),

12(b)(4) and the Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891,

28 U.S.C. § 1602 *et seq.* ("FSIA"), 28 U.S.C. § 1330.

**INTRODUCTION**

RUE PA Belaruskali is a wholly state owned entity of the Republic of Belarus with no

operations of any kind in the United States.  Accordingly, RUE PA Belaruskali is entitled to

---

[1] Pursuant to the Court's Order issued on September 4, 2009, RUE PA Belaruskali responds to both
Direct and Indirect Complaints.  *See* Case No. 08-cv-6910, (DE # 173).  As to the Direct Complaint, RUE
PA Belaruskali addresses the allegations in the original Direct Purchaser Complaint as filed on November
13, 2008, Case No. 08-cv-5192 (DE #60), and served on RUE PA Belaruskali on June 1, 2009. *Infra* pp.
21-24.

sovereign immunity and should be dismissed. Indeed, this action should never have been brought against it.

Plaintiffs do not allege that RUE PA Belaruskali has conducted any business or performed any prohibited or tortious acts in the United States. Importantly, any acts that are complained of occurred in the Republic of Belarus, and those acts are by definition sovereign. Nevertheless, Plaintiffs attempt to corral RUE PA Belaruskali into a United States court and hold it accountable to United States legal standards without any basis for doing so. Because RUE PA Belaruskali is an agency or instrumentality of the Republic of Belarus, it is immune from jurisdiction and suit under the FSIA, 28 U.S.C. §§ 1330, 1602 *et seq. See infra* pp. 7-20.

The Direct Complaint also should be dismissed as to RUE PA Belaruskali because the Direct Plaintiffs' purported service on RUE PA Belaruskali was improper and therefore insufficient to trigger the Court's jurisdiction. *See infra* pp. 21-24. Legally inadequate service coupled with the lack of subject matter jurisdiction also means that the Court lacks personal jurisdiction over RUE PA Belaruskali under the FSIA. *See infra* p. 24.

Finally, pursuant to 28 U.S.C. § 1391 (f)(4), the proper venue to have attempted to bring this action against RUE PA Belaruskali prior to MDL consolidation is the District Court for the District of Columbia. *See infra* pp. 25-26.

## FACTUAL BACKGROUND

### I.    PLAINTIFFS' CLAIMS AGAINST RUE PA BELARUSKALI

Plaintiffs allege that RUE PA Belaruskali violated Section 1 of the Sherman Act, 15 U.S.C. § 1 and various State laws, and seek an unspecified amount of damages, trebled, plus attorneys' fees. Lumping all defendants together, Plaintiffs allege that defendants conspired to "fix, raise, maintain, and stabilize the price at which potash was sold in the United States," to

implement this alleged conspiracy through alleged "coordinated restrictions in manufacturing capacity," and "restriction of supply" of potash to the United States.  Direct Compl. ¶¶ 73-106; Indirect Compl. ¶¶ 60-128.  Plaintiffs have not set forth a single factual allegation in either Complaint specifically directed toward (or that even mentions) RUE PA Belaruskali that either relates to any conduct by RUE PA Belaruskali in the United States, let alone a violation committed in the United States or elsewhere and having a direct effect in the United States. Except for conclusory allegations taken from state long-arm statutes which cannot be used to obtain jurisdiction over RUE PA Belaruskali as a foreign sovereign, Plaintiffs do not allege any facts demonstrating that RUE PA Belaruskali has conducted any business or performed any act in the United States. Direct Compl.  ¶¶ 6-7; Indirect Compl. ¶ 6.  Only 8 of the 124 paragraphs in the Direct Complaint and 202 paragraphs of the Indirect Complaint even mention RUE PA Belaruskali.  Direct Compl. ¶¶ 21-23, 53, 60, 64, 66, and 70; Indirect Compl. ¶¶ 20, 22, 53, 58, 63, 65, 68 and 74.  None of these paragraphs in the Direct Complaint identify any price increase, restriction of manufacturing capacity, supply reduction or any other illegal conduct by RUE PA Belaruskali.  Direct Compl. ¶¶ 73-106.  There is only one limited and conclusory allegation in the Indirect Complaint with regard to a  reduction of the exportation of potash.  Indirect Compl. ¶ 74.

The dearth of factual allegations regarding RUE PA Belaruskali warrants special emphasis here.  In the few places that RUE PA Belaruskali is mentioned, Plaintiffs do not specifically identify any individual or allege that RUE PA Belaruskali was a party to any agreement.  A reference by reference review of the allegations against RUE PA Belaruskali is instructive.

Plaintiffs mention RUE PA Belaruskali exactly once when they list the parties, and even then it is a minimal reference stating that that it is "a business entity organized under the laws of Belarus with its headquarters in Soligorsk, Republic of Belarus," which "marketed, sold and distributed potash throughout the United States." Direct Compl. ¶ 22; Indirect Compl. ¶ 20. It is mentioned again when Plaintiffs state that it has a "nearly 18% share of global fertilizer market" individually and "approximately 71% of the potash market" with "other producers from the Former Soviet Union." Direct Compl. ¶ 53; Indirect Compl. ¶ 53. Further, Plaintiffs mention RUE PA Belaruskali exactly three times in connection with the Belarus Potash Company. Direct Compl. ¶¶ 21, 23, and 60; Indirect Compl. ¶¶ 20, 22, and 58. Additionally, Plaintiffs obliquely refer once to "*other representatives* of RUE PA Belaruskali" after they list the *specific names* of the senior executives of other defendants who visited Uralkali in the Former Soviet Union. Direct Compl.¶ 64; Indirect Compl. ¶ 63. Plaintiffs also note vaguely that "visiting groups from RUE PA Belaruskali" were mentioned by the Director of Silvinit in a 2005 press interview. Direct Compl.¶ 66; Indirect Compl. ¶ 65. Also, RUE PA Belaruskali is mentioned as a member of the International Fertilizer Industry Association. Direct Compl. ¶ 70. Finally, except for a single conclusory allegation that merely recites stock potential activities that could serve as basis for Sherman Act violations, the Direct Complaint fails to assert any facts that even suggest that RUE PA Belaruskali engaged in any of these activities or that it sold or distributed potash within the United States. *See* Direct Compl. ¶ 22. The Indirect Complaint simply asserts that it "cut exports by 50 percent." Indirect Compl. ¶¶ 20; 74.

As the basis for the Court's subject matter jurisdiction, Plaintiffs purport to invoke only "28 U.S.C. §§ 1331 and 1337(a) and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 (a)

and 26," and also state that "[t]he Court has jurisdiction over the state law claims under the 28 U.S.C. §§ 1367 and 1332." Direct Compl. ¶¶ 5-6; Indirect Compl. ¶¶ 4-5.

Notwithstanding the fact that Plaintiffs have not alleged a single act by RUE PA Belaruskali in the United States, Plaintiffs also allege that venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 (a) and 22, and 28 U.S.C. § 1391 (b) and (c), because at least one of the defendants resides, transacted business, or is found in this judicial district, is licensed to do business, or is doing business in this judicial district, and because a substantial portion of the affected interstate trade and commerce described below has been carried out in this judicial district. Direct Compl. ¶¶ 6-7; Indirect Compl. ¶ 6.

According to Plaintiffs, "[t]he Court has personal jurisdiction over each defendant because, *inter alia*, each defendant: (a) transacted business throughout the United States, including this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of potash throughout the United States, including this District; (c) had substantial contacts with United States, including this District; and/or (d) engaged in an antitrust conspiracy that was directed and had a direct, foreseeable and intended effect causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District" and "in the Indirect Purchaser States." Direct Compl. ¶ 8; Indirect Comp. ¶ 43.

Finally, Plaintiffs claim that they "have been injured in their business and property in that they have paid more for potash than they otherwise would have paid in the absence of defendants' unlawful conduct" and that "defendants' business activities … caused injury in the United States and/or in the Indirect Purchaser States. Direct Compl. ¶ 123; Indirect Compl. ¶ 128.

- 5 -

## II.   REPUBLICAN UNITARY ENTERPRISE "PRODUCTION AMALGAMATION 'BELARUSKALI'"

RUE PA Belaruskali is a state-owned entity of the Republic of Belarus that is responsible for the exploration, development and trade, including exportation of potash from the Republic of Belarus. See Declaration of Valeriy Kirienko ¶¶ 6, 9, 10. ("Kirienko Decl.") attached as Exhibit 1. Mr. Kirienko is the First Deputy General Director and Chief Engineer of RUE PA Belaruskali who has been with RUE PA Belaruskali for nearly 30 years. *Id.* ¶ 1. He has held his current position since 2000. *Id.* RUE PA Belaruskali is directly and entirely owned by the Republic of Belarus. *Id.* ¶6. RUE PA Belaruskali was established pursuant to the governmental Decision of the Council of Ministers of USSR No. 205, dated March 11, 1975, to explore, develop and trade potash extracted from the mines of the Republic of Belarus. Id. RUE PA Belaruskali functions on the foundation of the Starobin potash deposit and comprises four mine and refinery complexes, auxiliary shops and servicing units which employ about 20,000 people. *Id.* ¶ 8.

RUE PA Belaruskali has its principal place of business in Soligorsk, Republic of Belarus and is the mainstay of the local economy. *Id.* RUE PA Belaruskali does not own property, and has never transacted or conducted business, or had any presence in the State of Illinois or anywhere else in the United States. *Id.*

Pursuant to the Belarusian Constitution and legislation, potash salts ("potash") are strategic mineral resources of the Republic of Belarus, constitute its exclusive property, and the State has the exclusive right to develop those resources. Kirienko Decl. ¶ 4. Potash has special significance for the socio-economic development of the Republic of Belarus and its national security. *Id.* Moreover, the petrochemical complex of the Republic of Belarus, which includes RUE PA Belaruskali, is a vital sphere of the economy. *Id.* ¶ 5.

Pursuant to the Belarusian Civil Code, RUE PA Belaruskali is a republican unitary enterprise. Kirienko Decl. ¶ 9. Specifically, the Republic of Belarus owns the property of RUE PA Belaruskali and has transferred that property to RUE PA Belaruskali with the right to manage it in the interest of the Republic of Belarus. *Id.* The Republic of Belarus also owns the production and the proceeds derived from the use of the property, as well as any property subsequently acquired by RUE PA Belaruskali. *Id.* The Council of Ministers determines long-term development plans for RUE PA Belaruskali and the use and the distribution of its revenue. *Id.*

RUE PA Belaruskali conducts all its operations pursuant to the legislation of the Republic of Belarus, the decisions of the President and the Council of Ministers of the Republic of Belarus, the Belarusian State Concern for Oil and Chemistry, and its Charter. Kirienko Decl. ¶ 7. The volume of potash that can be exported from the Republic of Belarus is determined by Council of Ministers only after taking domestic needs into account. *Id.* ¶ 10. The Government of the Republic of Belarus, through the Ministry of Economy, sets forth the minimum export price and through the State Customs Committee, controls the exportation of the potash of the Republic of Belarus. *Id.*

**ARGUMENT**

I.     **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER RUE PA BELARUSKALI**

    A. **RUE PA Belaruskali Is Undeniably an Agency or Instrumentality of The Republic of Belarus Entitled to Sovereign Immunity**

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Argentina v. Weltover, Inc.*, 504 U.S. 607, 618-19 (1992). Under the FSIA "[t]he district courts shall have

original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state ... as to any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity either under sections 1605-1608 of this title or under any international agreement." 28 U.S.C. § 1330(a). Thus, the FSIA provides "the *sole* basis for obtaining jurisdiction over a foreign state" in the United States courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (2000) (emphasis added); *Olympia Exp., Inc. v. Linee Aeree Italiene, S.P.A.*, 509 F.3d 347, 350 (7th Cir. 2007) ("There is no doubt that 28 U.S.C. § 1330(a) ...[is] the sole source of a district court's jurisdiction over a civil action against a foreign state as defined by the FSIA.") (internal citation omitted). The FSIA "must be applied by a district court in every action against a foreign sovereign." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983).

As a foreign sovereign, RUE PA Belaruskali is entitled to certain protections unavailable to ordinary litigants such as special service of process rules, nonjury trials, special venue requirements, and a presumption of immunity from jurisdiction and suit in the courts of the United States. 28 U.S.C. § 1602 *et seq.* and § 1330 (a). Unless the Plaintiffs demonstrate that a statutory exception to foreign sovereign immunity applies in a particular case, the foreign sovereign is entitled to assert immunity and obtain dismissal of the claim. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."); *see also Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 743 (7th Cir. 2007). Sovereign immunity is not just a defense to liability on the merits; it is also "an immunity from trial and the attendant

- 8 -

burdens of litigation." *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 576 n.2 (7th Cir. 1989).

In addition, under Section 1603(a) of the FSIA a "foreign state" includes an "agency or instrumentality of a foreign state," which is defined as:

> [A]ny entity –
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ or a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States …nor created under the laws of any third country."

28 U.S.C. § 1603(b).

RUE PA Belaruskali indisputably qualifies as an agency or instrumentality of the Republic of Belarus. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, 477 (2003) ("[m]ajority ownership by a foreign state … is the benchmark of instrumentality"). As Mr. Kirienko explains,[2] RUE PA Belaruskali is organized under the laws of the Republic of Belarus and is directly and entirely owned by the Republic of Belarus. *See* Kirienko Decl. ¶¶ 6, 7.

---

[2] The Court may consider Mr. Kirienko's declaration in support of RUE PA Belaruskali's motion to dismiss because "on the immunity issue, the district court is the finder of fact and it should consider all evidence before it in resolving the immunity issue." *Adler*, 107 F.3d at 728. A district court "may properly look beyond the complaint's jurisdictional allegations and view whether evidence has been submitted to determine whether in fact subject matter jurisdiction exists." *Bowyer v. U.S. Dept. of Air Force*, 875 F.2d 632, 635 (7th Cir. 1989). Moreover, allowing the district court to look beyond the bare allegations of the complaint, preserves the purpose of the sovereign immunity doctrine, by permitting a foreign sovereign to avoid being "put to the expense of defending what may be a protracted lawsuit without an opportunity to obtain an authoritative determination of its amenability to suit at the earliest possible opportunity.") *Segni v. Commercial Office of Spain*, 816 F.2d 344, 347 (7th Cir. 1987).

As the exclusive owner[3] of its strategic mineral resource – potash – the Government of Belarus established RUE PA Belaruskali to explore, develop and trade potash extracted from the mines of the Republic of Belarus for the interest of the Republic of Belarus. Kirienko Decl ¶¶ 4, 9. RUE PA Belaruskali is a separate juridical entity, a republican unitary enterprise, and is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of title 28, the U.S. Code, nor created under the laws of any third country. *Id.* ¶¶ 6-7. Thus, RUE PA Belaruskali is entitled to immunity from suit unless Plaintiffs' allegations show that one of the statutory exceptions to immunity under the FSIA applies.[4]

The limited factual allegations that Plaintiffs have asserted regarding RUE PA Belaruskali individually, as a matter of law, cannot create jurisdiction over RUE PA Belaruskali under the FSIA. Furthermore, Plaintiffs fail to even plead 28 U.S.C. § 1330 *et seq.* Instead, Plaintiffs erroneously allege that jurisdiction exists against RUE PA Belaruskali under 28 U.S.C. §§ 1331, 1332, 1337(a) and 1367; and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 (a) and 26. Direct Compl. ¶¶ 5-6; Indirect Compl. ¶¶ 4-5.

Plaintiffs improper pleading and legally insufficient invocation of the Court's jurisdiction are not sufficient, on their face, to obtain jurisdiction over RUE PA Belaruskali. See, *e.g.*,

---

[3] The Republic of Belarus is also the owner of the production and the proceeds derived from the use of the property by RUE PA Belaruskali, and any property subsequently acquired by RUE PA Belaruskali. Kirienko Decl. ¶ 9.

[4] Under the FSIA, once it is established that the respondent is a foreign sovereign, the party seeking to invoke the jurisdiction of the court must come forward with grounds to overcome the presumption of immunity. *See Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250, 255 (7th Cir. 1983). The plaintiff "bears the burden to produce evidence that the entity is not entitled to immunity." *Enharo v. Abubakar*, 408 F.3d 877, 882 (7th Cir. 2005) (citing to *Int'l Insurance Co. v. Caja Nacional De Ahorro Seguro*, 293 F.3d 392, 397 (7th Cir. 2002).

- 10 -

*Amerada Hess*, 488 U.S. at 434; *Olympia Express*, 509 F.3d at 349 ("a suit against a foreign state is not within ... [diversity] jurisdiction"). Accordingly, RUE PA Belaruskali is immune from jurisdiction and suit in this action, and Plaintiffs' Complaints should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

## 1. Plaintiffs Failed to Allege Any Exceptions to Sovereign Immunity

The Complaints do not allege that RUE PA Belaruskali engaged in any improper or tortious conduct, any commercial activitiy in the United States or elsewhere, or any conduct that had a direct effect in the United States.[5] The Complaints do not contain *any* allegation regarding RUE PA Belaruskali's participation in the alleged price fixing conspiracy. Direct Compl. ¶¶ 21-23, 60, 64, 66, 70, and 73-106; Indirect Compl. ¶¶ 20, 22, 53, 58, and 60-128. Conclusory allegations that RUE PA Belaruskali engaged in a conspiracy to violate U.S. antitrust laws cannot be used to stand in the place of specific evidence that must be offered pursuant to the FSIA. *Alberti*, 705 F.2d at 256 (noting that the plaintiff must rebut claims of sovereign immunity by offering evidence that one of the statutory exceptions applies); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 137-38, 146 (2d Cir. 2001) (concluding that "generic allegations" in the complaint were insufficient to establish subject matter jurisdiction under the FSIA).[6]

---

[5] RUE PA Belaruskali does not own property, has never transacted or conducted business, or had any presence in the state of Illinois or anywhere else in the United States. Kirienko Decl. ¶ 8.

[6] *See also Herbage v. Meese*, 747 F. Supp. 60, 65 (D.D.C. 1990) (dismissing on FSIA grounds and noting that "[a] plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of motion to dismiss") (citation omitted), *aff'd*, 946 F.2d 1546 (D.C. Cir. 1991); *see also Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1391 (5th Cir. 1985). (In determining whether the commercial activity exception applies, the court must focus on the acts of the specific named defendant, "not on other acts that may have had a causal connection with the suit. In particular, we must isolate those *specific acts* of the *named defendant* that form the basis of plaintiff's suit.") (emphasis added).

- 11 -

### 2.    The "Commercial Activity" Exception Does Not Apply

Had Plaintiffs recognized Belaruskali's sovereign status in the Complaints and pleaded jurisdiction under the FSIA and its exceptions, the only exception that could even colorably have been asserted by Plaintiffs is the "commercial activity exception. " 28 U.S.C. § 1605(a)(2).

Under this exception:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the State in any case in which the action is based

- upon a commercial activity carried on in the United States by the foreign state; or

- upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or

- upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

"A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603 (d). Although the FSIA does not define "commercial," the Supreme Court has explained that a state (or an agency or instrumentality) engages in commercial activity "where it exercises only those powers that can also be exercised by private citizens in commercial activity ... only where it acts in the manner of a private player within the market." *Nelson*, 507 U.S. at 360 (internal citations omitted).

Further, courts have held that § 1605 (a)(2) "requires that the lawsuit itself must be "based upon" the commercial activity that supports a waiver of sovereign immunity." *Haven v. Polska*, 215 F.3d 727, 736 (7th Cir. 2000), citing *Nelson*, 504 U.S. at 357-588; *see also Santos v. Compagnie Nationale Air France*, 934 F.2d 890, 892 (7th Cir. 1991) ("This Court and most

others have stated that the term 'based upon' requires an 'identifiable nexus' between the claim and the commercial activity at issue.").

In the ordinary course, RUE PA Belaruskali would be able to respond to specific factual allegations and/or evidence related to alleged commercial activities by it, whether in the United States or elsewhere. However, Plaintiffs' failure to recognize the sovereign status of RUE PA Belaruskali requires it to briefly address and explain all three prongs of the commercial activity exception, while at the same time demonstrating that RUE PA Belaruskali's activities are sovereign rather than commercial.

**a.    Prong 1: Based Upon A Commercial Activity Carried on in the United States**

To demonstrate commercial activity under the first prong, Plaintiffs must prove that their claims are *based upon* a commercial activity *carried on* in the United States by RUE PA Belaruskali. *Nelson*, 507 U.S. at 356 (stating that the action "must be 'based upon' some 'commercial activity' … that had 'substantial contact' with the United States within the meaning of the Act") (emphasis added). Plaintiffs' allegations fail to make any such showing. Instead, they merely allege limited and conclusory allegations against RUE PA Belaruskali, claiming that its actions involve only activities carried on outside the United States. Plaintiffs do not even allege that RUE PA Belaruskali's actions have "substantial contact" with the United States. *See* Direct Compl. ¶ 123; Indirect Compl. ¶ 128; *Abubakar*, 408 F.3d at 882 (noting that the plaintiff bears the burden to produce evidence that the entity is not entitled to immunity). Plaintiffs have not satisfied this first prong.

- 13 -

**b.      Prong 2: Based Upon an Act Performed in the United States in Connection With a Commercial Activity Elsewhere**

For the second prong, Plaintiffs must prove that RUE PA Belaruskali's alleged acts in the United States were conducted "in connection with" a commercial activity elsewhere. *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1289-91 (3rd Cir. 1993) (to satisfy the "in connection with" requirement, the acts complained of must have some "substantive connection" or a "causal link" to the commercial activity); *see also Heroth v. Kingdon of Saudi Arabia*, 565 F. Supp. 2d 59, 67 (D.D.C. 2008) (finding that "[t]he second clause of the commercial activity exception only applies if the acts or omissions occurring in the United States are themselves alone sufficient to sustain a cause of action"). "This prong 'is generally understood to apply to *non-commercial* acts in the United States that relate to commercial acts abroad.'" *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007) (emphasis in original) (internal citations omitted). Plaintiffs have not made the necessary showing under the second prong because the Complaints lack any factual allegations regarding RUE PA Belaruskali's acts performed in the United States linked to a commercial activity elsewhere. Kirienko Decl. ¶ 8.

**c.      Prong 3: Based Upon an Act Outside of the United States in Connection with a Commercial Activity Elsewhere that Causes a Direct Effect In the United States**

Nor can Plaintiffs find support in the third clause of § 1605(a)(2) because Plaintiffs have made no showing that anything RUE PA Belaruskali did had a direct effect in the United States. The Supreme Court considered the applicability of this clause in *Weltover*, and framed the proper inquiry as whether the basis for the claim asserted in the lawsuit is "(1) 'based . . . upon an act outside the territory of the United States'; (2) that was taken 'in connection with a commercial activity' of [the foreign state] outside this country; and (3) that 'cause[d] a direct effect in the

- 14 -

United States.'" *Weltover*, 504 U.S. at 611. Absent such proof, the exception simply does not apply.

### B. RUE PA Belaruskali Is Immune From Jurisdiction and Suit in this Court

#### 1. RUE PA Belaruskali's Activities are not Commercial

In determining whether an activity is commercial, the courts look at the "nature of the course of conduct or particular transaction or act, rather than" at "its purpose." 28 U.S.C. § 1603(d). The FSIA codified the "restrictive" theory of foreign sovereign immunity, which holds that "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts *( jure imperii )*, but not as to those that are private or commercial in character *( jure gestionis )*." *Nelson*, 507 U.S. at 359-60 (noting in the FSIA's "Findings and Declaration of Purpose" that "[u]nder international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned"); *see also Alberti*, 705 F.2d at 256. Thus, pursuant to the commercial activities exception, the Court must determine whether the nature of RUE PA Belaruskali's conduct is something that is peculiar to sovereigns. *Nelson*, 507 U.S. at 360-61; *see also Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 187-88 (D.D.C. 2007).

The Supreme Court has held that:

> [Th]e [relevant] question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in "trade and traffic of commerce."

*Weltover*, 504 U.S. at 614 (emphasis in original).

Accordingly, for the Court to have subject matter jurisdiction over RUE PA Belaruskali as a foreign sovereign under the FSIA, the Plaintiffs must show that the activities in which RUE

- 15 -

PA Belaruskali has allegedly engaged are "commercial" in nature and are not peculiar to sovereigns. *See Rush-Presbyterian St. Luke's Med. Ctr.*, 877 F.2d 574, 578 (7th Cir. 1989) ("natural resources, to the extent they are 'affected with public a interest,' are goods in which only the sovereign may deal."); *Int'l Ass'n of Machinists & Aerospace Workers ("IAM") v. OPEC,* 477 F. Supp. 553, 556 (C.D. Cal. 1979), *aff'd on other grounds*, 649 F.2d 1354 (9th Cir. 1981, *cert denied*, 454 U.S. 1163 (1982) (*"IAM I"* )) (foreign governments' participation in cartel to regulate price and supply of crude oil is not a commercial activity, because such activities are sovereign acts to regulate the exploitation of a non-renewable natural resource.); *MOL, Inc. v. Bangladesh*, 736 F.2d 1326, 1329 (9th Cir. 1984), *cert. denied*, 469 U.S. 1037 (1984) (the "right to regulate import and exports, a sovereign prerogative.") (citing *Bokkelen v. Grumman Aerospace Corp.*, 432 F. Supp. 329 (E.D.N.Y. 1977).

Under the FSIA, the Court must base its determination of "commercial activity" on specific facts alleged against RUE PA Belaruskali and make its ruling upon specific evidence. Broad brush, vague allegations will not suffice. *See IAM I*, 477 F. Supp. at 567; *see also Sanchez*, 770 F.2d at 1391.

Plaintiffs attempt to base their claims on vague allegations that defendants fix, raise, maintain and stabilize the price at which potash is sold on the world market. According to Plaintiffs, this occurs through agreements to restrict manufacturing capacity and production, which in turn restricts the supply of potash to the United States. Direct Compl. ¶¶ 73-106; Indirect Compl. ¶¶ 60-128. Perforce, Plaintiffs complain of constraints imposed on the production and exploitation of a non-renewable natural resource – potash. It is beyond dispute that a country's right to regulate its non-renewable natural resources is a uniquely sovereign function. *MOL, Inc. v. Bangladesh*, 736 F.2d at 1329. "The control over a nation's natural

- 16 -

resources stems from the nature of sovereignty. By necessity and by traditional recognition, each nation is its own master in respect to its physical attributes." *IAM I*, 477 F. Supp. at 568 ("We need not look beyond our own borders for examples of a government taking a determinative role in the marketing of its wealth and natural resources.") citing *Parker v. Brown*, 317 U.S. 341, 352 (1943) (where the Supreme Court reversed an order enjoining a California state program which controlled the marketing of raisins grown in the state, so as to restrict competition among the growers, and maintain prices, holding that the program was "an act of government").

The Seventh Circuit has similarly already held that "natural resources, to the extent they are 'affected with a public interest,' are goods in which only the sovereign may deal." *Rush-Presbyterian*, 877 F.2d at 578 (internal citations omitted).

Additionally, each State's sovereign right to control its own natural resources is recognized by international law, and this right has been explicitly confirmed and recognized by the United States. *See, e.g.*, G.A. Res. 1803 preamble, 17 U.N. GAOR, 2d Comm. 327, U.N. Doc. A/5217 (Dec. 1962); Statement of the U.S. Representative to the United Nations, U.N. GAOR, 28th Sess., 2203rd Plen. Mtg., U.N. Doc. A/PV. 2203 (1973) ("The United States sincerely and strongly supports the right of each state to exercise permanent sovereignty over its natural resources. This is almost a sacred right."); *see also* United Nations Framework Convention on Climate Change, May 9, 1992, 1771 U.N.T.S. 107, 31 I.L.M. 849, 851 (1992), entered into force Mar. 21, 1994 of which United States is a signatory. ("States have, in accordance with the Charter of the United Nations and the principles of international law, the sovereign right to exploit their own resources pursuant to their own environmental and developmental policies..."); *see also IAM I*, 477 F. Supp. at 567 (stating that "[i]n determining

- 17 -

whether the activities of the OPEC members are governmental or commercial in nature, the court can and should examine the standard recognized under international law.").

The substance of Plaintiffs' limited and inadequate allegations regarding alleged constraints on production, supply and exportation of potash by RUE PA Belaruskali relate to, and are imposed as part of, sovereign activities (and not commercial activities) by the State and constitute sovereign rather than commercial activities. Specifically, potash salts are strategic mineral resources for the Republic of Belarus, constitute its exclusive property, and the State has the exclusive right to develop those resources. Kirienko Decl. ¶ 4. Because of its special significance for the socio-economic development of the Republic of Belarus and its national security, any available volume of potash to be exported by RUE PA Belaruskali is determined by the Council of Ministers after it takes domestic needs into account. Kirienko Decl. ¶¶ 4,10. Additionally, the Council of Ministers determines long-term development plans for RUE PA Belaruskali and the use and distribution of its revenue. *Id.* ¶ 9.

Accordingly, RUE PA Belaruskali's purported acts to restrict the production and manufacturing capacity of potash, and to set the volumes of the supply and the price of potash are, utterly sovereign acts decided by the Government of Belarus within its sovereign right to administer its own limited non-renewable natural resources, and do not constitute "commercial activities" under the FSIA. These are hardly "the *type* of actions by which a private party engages in 'trade and traffic of commerce.'" *Weltover*, 504 U.S. at 614. (emphasis in original). Consequently, the Belarusian Government's acts, are "peculiarly sovereign in nature" and immunized from review by this Court under the FSIA's commercial activities exception. *See Nelson*, 507 U.S. at 361.

- 18 -

## 2. RUE PA Belaruskali's Activities have not Caused a Direct Effect in the United States

There is a second reason why the commercial activity exception does not apply to the Belaruskali's activities with respect to potash. To support application of the § 1605(a)(2) commercial activities exception, the commercial activity on which Plaintiffs' claims are "based upon" must cause a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2). This direct effect requirement is mandated by the FSIA. As the Supreme Court explained in *Weltover*, under the commercial activity exception, "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's … activity.'" *Weltover*, 504 U.S. at 618 (internal citations omitted). The effect cannot be direct if "there are too many intervening elements between the asserted cause and effect." *Princz v. Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994).

To show that the commercial activity exception applies to RUE PA Belaruskali in order to obtain jurisdiction under the FSIA, Plaintiffs necessarily need to demonstrate the direct effect that RUE PA Belaruskali's actions in particular had in the United States. *See Weltover*, 504 U.S. at 618-19; *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534, 537 (5th Cir. 1992) (no jurisdiction under the commercial activity exception where plaintiff failed to allege a single activity by defendant "in or directly affecting the United States"). "The requirement that an effect be 'direct' indicates that Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States." *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238, n.4 (10th Cir. 1994) (citing *Verlinden*, 461 U.S. at 490).

In this case, Plaintiffs make no specific allegations as to the effect RUE PA Belaruskali's actions taken outside the United States had here. Mere conclusory assertions that defendants

"engaged in an antitrust conspiracy that was directed and had a direct, foreseeable and intended effect causing injury to the business or property of persons … throughout the United States …" are insufficient to satisfy the FSIA standard and to demonstrate that there is a direct effect caused by RUE PA Belaruskali's actions taken within the sovereign territory of the Republic of Belarus. Direct Compl. ¶ 8; Indirect Compl. ¶ 43. *Alberti*, 705 F.2d at 256; *Robinson*, 269 F.3d at 137-38, 146; *Meese*, 747 F. Supp. at 65; *Sanchez*, 770 F.2d at 1391.

### 3. The Mere Financial Losses Claimed by Plaintiffs are Not Cognizable as Direct Effects in the United States under the FSIA

Moreover, for FSIA purposes, mere financial loss in the United States cannot constitute a direct effect. *Antares Aircraft L.P. v. Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993) ("[i]f a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states"); *see also Wahba v. National Bank of Egypt*, 457 F. Supp. 2d 721, 735 (E.D. Tex 2006); *Kensington*, 505 F.3d at 158-59; *Rush-Presbyterian*, 877 F.2d at 581-82. To interpret § 1605(a)(2) to mean that any financial loss in the United States constitutes a direct effect "would give the district courts jurisdiction over virtually any suit arising out of an overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state." *United World Trade*, 33 F.3d at 1238-39. The statute's language "limiting jurisdiction to cases where there is a "*direct* effect" in the United States makes it unlikely that this was Congress's intent." *Id.* (emphasis in original). Plaintiffs fail to state any facts that demonstrate the required connection between their purported injury and the sovereign acts taken by RUE PA Belaruskali in the Republic of Belarus and that their injury is the direct effect of those acts.

Thus, the bare allegation that Plaintiffs "have been injured in their business and property in that they paid more for potash than they otherwise would have paid in the absence of the defendants' unlawful act" is not enough to demonstrate that their injury is cognizable under the FSIA. Direct Compl. ¶108; Indirect Compl. ¶128. RUE PA Belaruskali must therefore be dismissed with prejudice.

## II.     DIRECT PLAINTIFFS' PURPORTED SERVICE OF RUE PA BELARUSKALI WAS LEGALLY INSUFFICIENT

The Federal Rules of Civil Procedure require that "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). The FSIA is also absolutely clear that "[s]ervice in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state by a delivery of a copy of the summons and complaint." *See* 28 U.S.C. § 1608(b).

Plaintiffs filed these actions more than a year ago, on September 11, 2008. *See Gage's Fertilizer & Grain, Inc. v. Agrium Inc.*, Case No. 08-cv-5192 DE #1. On October 14, 2008, the Court granted Gage's Fertilizer & Grain, Inc.'s motion to find relatedness and reassigned the pending cases involving direct purchasers of potash: *Gillespie v. Agrium Inc.*, Case No. 08-cv-5252, *Tilman v. Agrium Inc.*, Case No. 08-cv-5257, and *Kraft Chem. Co. v. Agrium Inc.*, Case No. 08-cv-5356. *Id.*, DE #45. On November 13, 2008, the Direct Purchaser Plaintiff, Gage's Fertilizer & Grain, Inc. then filed a Direct Purchaser Consolidated Class Action Amended Complaint. *Id.*, DE #60. On December 2, 2008, the MDL Panel issued the transfer Order establishing Case No. 08-cv-6910 as the master docket for MDL 1996. *See* Case No. 08-cv-6910, DE #1.

On February 2, 2009, the transferor court issued an order in original Case no. 08-cv-5192 stating the case "has been consolidated for all purposes with MDL 1996. This case is dismissed without prejudice with full leave to reinstate once the proceedings are completed in MDL 1996 which has been assigned Case No. 08-cv-6910." *See* Case No. 08-cv-5192, (DE #84). Despite the facts that the Court had just dismissed the case, on March 11, 2009, the Court then issued a Summons as to RUE PA Belaruskali. *Id.*, (DE #86). Then, on April 3, 2009, Direct and Indirect Plaintiffs filed further Amended Consolidated Class Action Complaints in the MDL proceeding.[7] *See* Case No. 08-cv-6910, (DE #50, 51).

On June 1, 2009, RUE PA Belaruskali received a copy of the original Direct Complaint[8] filed in the *dismissed* case, Case No. 08-cv-5192 (DE #60) and the Summons dated March 11, 2009, from the same *dismissed* docket, pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 1361, 658 U.N.T.S. 163 ("Hague Convention").

### A. The Purported Summons that was Delivered to RUE PA Belaruskali was Improper and Legally Insufficient

The purported summons that was sent to RUE PA Belaruskali was improper, legally deficient, and accordingly incapable of creating jurisdiction over RUE PA Belaruskali. The purported summons delivered by the Direct Plaintiffs to RUE PA Belaruskali was issued on

---

[7] The Indirect Amended Complaint is virtually identical with the original Indirect Complaint as to the limited allegations against RUE PA Belaruskali, while the Direct Amended Complaint includes an additional allegation against RUE PA Belaruskali that it "immediately cut exports by 50 percent, removing approximately 250,000 tons of potash from the market." Direct Amended Complaint, ¶ 91; 08-cv-6910 DE # 51.

[8] On August 7, 2009, RUE PA Belaruskali received a copy of the Indirect Purchasers Consolidated Class Action Complaint filed in the MDL proceeding in Case No. 08-cv-6910 (DE #50) and the Summons, also pursuant to the Hague Convention.

March 11, 2009, even though that Complaint had already been dismissed by that date and the case had been transferred to the MDL proceeding. The date on which the purported summons was issued and the docket from which it was issued alone demonstrate the legal invalidity of the purported summons. At the time the summons was issued out of Case No. 08-cv-5192, the Court lacked the power to issue an enforceable summons either because the case had "already been dismissed without prejudice" or because the case had already been transferred to docket MDL 1996, Case No. 08-cv-6910.

**B.      The Direct Purchasers Complaint had already been Superseded at the time it was Served on RUE PA Belaruskali and was of No Legal Effect**

If a complaint has been amended, subsequent service of a summons along with the original but superseded complaint instead of with the amended complaint is legally invalid. *See, e.g., Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 564 (S.D.N.Y. 1985) (dismissing the action where plaintiff served the original complaint after filing an amended complaint because "[a]fter an amended complaint has been filed, service of the superseded original complaint is inappropriate"); *Phillips v. Murchison*, 194 F. Supp. 620, 622 (S.D.N.Y. 1961) ("The Court holds that serving a superseded complaint with the summons was not a proper service of process and sets aside such service as insufficient.").

As explained in *Philips*, "[u]pon the filing of the amended complaint . . . that amended complaint supersede[s] the original complaint. The effect of this [is] to withdraw the prior complaint, which thereupon [becomes] *functus officio*." *Phillips*, 194 F. Supp. at 622 (citing *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955)). *See also* 1 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 4.50 (3d ed. 2009) ("If a complaint has properly been amended, service of a summons and only the original complaint is invalid."); 28 Fed. Proc., L. Ed. § 65:74

- 23 -

("If an amended complaint is filed before service has been effected, service of the original complaint is not sufficient, because that complaint has been superseded."); 62B Am. Jur. 2d Process § 140 (same). In the Seventh Circuit, "when a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).

Here, the Direct Purchaser Plaintiff Gage Fertilizer & Grain, Inc. filed its Original Complaint on September 11, 2008, *Gage Fertilizer & Grain, Inc. v. Agrium Inc.*, 08-cv-5192 DE #1, and filed its first Amended Complaint on November 13, 2008, *id.*, DE #60. As noted above, RUE PA Belaruskali received the Original Complaint dated September 11, 2008 on June 1, 2009 - almost six months after the Direct Purchaser Plaintiff filed an Amended Complaint. *Id.*, DE #60. Accordingly, the Original Complaint had already been superseded at the time it was served and was therefore *functus officio* and incapable of obtaining jurisdiction over RUE PA Belaruskali because it lacked any legal authority or effect. Therefore, the Direct Purchaser Complaint should be dismissed against RUE PA Belaruskali pursuant to Fed. R. Civ. P. 12(b)(4).

### III.  THE COURT LACKS PERSONAL JURISDICTION OVER RUE PA BELARUSKALI

Under the FSIA, personal jurisdiction equals subject matter jurisdiction plus valid service of process. *See* 28 U.S.C. § 1330 (b). "[P]ersonal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions to foreign sovereign immunity in [the FSIA] applies." *Amerada Hess*, 488 U.S. at 453, n. 3.

Personal jurisdiction over RUE PA Belaruskali therefore does not exist in this Court as to either the Direct or Indirect Purchasers' Complaints because Plaintiffs have not and cannot prove that an exception to RUE PA Belaruskali's sovereign immunity applies. Moreover,

- 24 -

personal jurisdiction does not exist as to the Direct Purchasers' Complaint as a result of the service defects discussed in Section III, *supra*. Accordingly, both Complaints should be dismissed against RUE PA Belaruskali for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### IV. UNDER 28 U.S.C. §1391 (f)(4) ORIGINAL VENUE IN THIS COURT IS IMPROPER

Plaintiffs assertions that their claims were properly brought against RUE PA Belaruskali in this judicial district pursuant are incorrect. As an agency or instrumentality of the Republic of Belarus, RUE PA Belaruskali is subject to the venue provisions of the FSIA. Under the FSIA venue provision,

> A civil action against a foreign state as defined in section 1603(a) of [the FSIA which includes agencies or instrumentalities] may be brought:
>
> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of action is situated;
> [...]
>
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).

Because RUE PA Belaruskali has not participated at all in any alleged events or omissions giving rise to Plaintiffs' claims in this judicial district or indeed in any judicial district in the United States, venue is proper, if at all, only pursuant to section 1391(f) (4) of 28 U.S.C. (the general catchall provision). *See*, e.g., *Tifa Ltd. v. Republic of Ghana*, 692 F. Supp. 393, 404 (D.N.J. 1988) ("Courts have required extensive events or omissions giving rise to a claim to occur in the forum in order for venue to be appropriate under the FSIA venue provision") (citing

- 25 -

*Schmidt v. Polish People's Republic*, 479 F. Supp. 23, 28 (S.D.N.Y. 1984), *aff'd*, 742 F.2d 67 (2d Cir. 1984)).

Accordingly, the proper venue for these Complaints to have been filed against RUE PA Belaruskali, prior to MDL consolidation is in the United States District Court for the District of Columbia pursuant to § 1391 (f) (4). Consequently, RUE PA Belaruskali respectfully requests that this Court dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(3) or in the alternative transfer the action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1406(a).

## V.   ANY FURTHER AMENDMENTS OF THE COMPLAINTS BY THE PLAINTIFFS WITH RESPECT TO RUE PA BELARUSKALI WOULD BE FUTILE

Additionally, because RUE PA Belaruskali is entitled to immunity from jurisdiction and suit in the courts of the United States as an agency or instrumentality of a foreign state, even if Plaintiffs were to further amend their pleadings and properly re-serve RUE PA Belaruskali, doing so would be futile and a waste of judicial and party resources as the Court would still lack subject matter jurisdiction over RUE PA Belaruskali. *See, e.g., Alberti*, 705 F.2d at 256 ("As plaintiffs will be unable to obtain jurisdiction over defendants [under the FSIA] even if they serve process properly there is no reason not to dismiss this particular suit."); *Week v. Cayman Islands*, 983 F.2d 1074, 1992 WL 372241 *2 (7th Cir. 1992) ("it would be a waste of judicial resources to allow plaintiff [a second chance to effect proper service] …if the Court would still not have subject matter jurisdiction.") (internal citation omitted).

- 26 -

## CONCLUSION

For the reasons stated above, RUE PA Belaruskali respectfully requests that the Court dismiss the Direct Purchaser Consolidated Class Action and Indirect Purchasers Amended Consolidated Class Action Complaints, with prejudice.

Dated: October 7, 2009

GREENBERG TRAURIG, LLP

_____/s/_____
Thomas E. Dutton (Bar No. 6195923)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: 312-456-8400
Fax: 312-456-8435
duttont@gtlaw.com

David A. Baron
2101 L Street, Suite 1000
Washington, DC 20037
Tel: (202) 331-3165
Fax: (202) 261-0465
barond@gtlaw.com
Counsel RUE PA Belaruskali

- 27 -