# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE: POTASH ANTITRUST  )    Case No. 08-CV-6910
LITIGATION (No. II)     )
           )    MDL No. 1996
THIS DOCUMENT APPLIES TO: )
           )
ALL  ACTIONS      )    Judge Ruben Castillo
_____)

# REPLY MEMORANDUM OF RUE PA BELARUSKALI IN SUPPORT OF ITS MOTION TO DISMISS THE DIRECT PURCHASER CONSOLIDATED CLASS ACTION COMPLAINT AND INDIRECT PURCHASERS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

GREENBERG TRAURIG, LLP
Thomas E. Dutton (Bar No. 6195923)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: 312-456-8400
Fax: 312-456-8435
duttont@gtlaw.com

David A. Baron
2101 L Street, Suite 1000
Washington, DC 20037
Tel: (202) 331-3165
Fax: (202) 261-0465
barond@gtlaw.com
Counsel for RUE PA Belaruskali

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 3

I.    RUE PA BELARUSKALI MADE A *PRIMA FACIE* SHOWING THAT
IT IS AN AGENCY OR INSTRUMENTALITY OF THE REPUBLIC OF
BELARUS ...................................................................................................... 3

II.   PLAINTIFFS FAILED TO DEMONSTRATE THAT THE COURT HAS
PERSONAL JURISDICTION OVER RUE PA BELARUSKALI ................... 5

     A.    Plaintiffs Served an Invalid Summons upon RUE PA Belaruskali ......... 6

     B.    Plaintiffs Do Not Deny That the Complaint That They Caused To
Be Served on RUE PA Belaruskali Was Superseded at the Time It
Was Served by a Subsequently Filed Complaint ..................................... 7

     C.    In Light of the Deficiencies in the Documents That Were Served,
the Fact That RUE PA Belaruskali Had "Actual Notice" of These
Proceedings is Insufficient ...................................................................... 7

III.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
RUE PA BELARUSKALI UNDER THE FSIA ............................................ 8

     A.    Plaintiffs Failed to Demonstrate That Any of the Commercial
Activities Exceptions Apply ................................................................... 8

     B.    The Allegedly Commercial Activities that Plaintiffs Allege Form
the Basis of their Claims Are Not 'by' or 'of RUE PA
Belaruskali" ............................................................................................ 9

     C.    The Alleged Activities of RUE PA Belaruskali That Form the
Basis of Plaintiffs' Antitrust Claims are Sovereign Rather Than
Commercial Acts ..................................................................................... 11

     D.    Plaintiffs Failed To Demonstrate That There Is Sufficient Nexus
with the United States ............................................................................. 14

          1.    The Alleged Commercial Activity Was Not Carried On in the
United States ..................................................................................... 14

          2.    There Is No Act in The United States in Connection with a
Commercial Activity Elsewhere ....................................................... 15

i

         3.     The Alleged Conduct Had No Direct Effect in the United States ............................................................................................. 16

IV.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEY ARE ENTITLED TO JURISDICTIONAL DISCOVERY AND TO LEAVE TO AMEND THEIR COMPLAINTS ................................................................ 17

V.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT VENUE IN THIS DISTRICT WAS PROPER ............................................................ 19

CONCLUSION ............................................................................................................. 20

TABLE OF AUTHORITIES

**Cases**

*Aircrash Disaster Near Roselawn, Ind. On October 31, 1994,*
909 F. Supp. 1083 (N.D. Ill. 1995) .................................................................. 5

*Aldy v. Valmet Paper Mach*, 74 F.3d 72 (5th Cir. 1996). ........................................... 16

*Alperin v. Vatican Bank*, No. 99-04941, 2006 WL 1663847 (N.D. Cal. June 15, 2006) ............ 18

*Antares Aircraft L.P. v. Nigeria*, 999 F.2d 33 (2d Cir. 1993)........................................... 17

*Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (2000) ..................................... 14

*Arriba Ltd. v. Petroleus*, 962 F.2d 528 (5th Cir. 1992) ..................................... 16, 18, 19

*Autotech Tech. v. Integral Research & Development*, 499 F.3d 737 (7th Cir. 2007)..................... 7

*Box v. Dallas Mexican Consulate General*, No. 08-1010,
2009 WL 3163551 (N.D. Tex. Sept. 30, 2009)........................................................... 11

*BP Chem. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677 (8th Cir. 2002) .......................................... 16

*Can-Am Int'l, LLC v. Trinidad and Tobago*, 169 Fed. Appx. 396 (4th Cir. 2006) ..................... 17

*Car Carriers v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984).................................................. 11

*C.C.P. Corp. v. Wynn Oil Co.*, 354 F. Supp. 1275 (N.D. Ill. 1973) ......................................... 20

*Dale v. Colagiovanni*, 443 F.3d 425 (5th Cir. 2006) ......................................... 10, 15

*De Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385 (5th Cir. 1985)........................... 8, 9

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009).......................................................... 9

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)...................................................... 4

*EAL v. European Org. for the Safety of Air Navigation,*
No. 93-578, 1994 WL 828320 (D. Del. Aug. 3, 1994)........................................... 14

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996).......................................18,19

*Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270 (3rd Cir. 1993) ..................................... 16

*Filus v. Lot Polish Airlines*, 907 F.2d 1328(2d Cir. 1990) ........................................... 18

*First City, Texas-Houston, N.A. v. Rafidian Bank*, 150 F.3d 172 (2d Cir. 1998)........................ 18

*Foremost-McKesson v. Iran*, 905 F.2d 438 (D.C. Cir. 1990) ......................................... 18, 19

*Garb v. Poland*, 440 F.3d 579 (2d Cir. 2006).......................................................... 8

*Globe Nuclear Services and Supply (GNSS), Ltd. v. AO Techsnabexport,*

376 F.3d 282 (4th Cir. 2004) .................................................................................... 12, 13

*Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143 (D.C. Cir. 1994)........................... 19

*Harris Corp. v. Nat'l Iranian Radio and Television*, 691 F.2d 1344 (11th Cir. 1982) .............. 7, 8

*Heroth v. Saudi Arabia*, 565 F. Supp. 2d 59 (D.D.C. 2008) ......................................... 15

*In re Chicken Antitrust Litig.,* 407 F. Supp. 1285 (N.D. Ga. 1976) ........................................ 20

*In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*,
No. 1:00-MDL-1898, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005)............................... 20

*In re Refined Petroleum Prod. Anti-Trust Litig.*,
No. 07-MDL-01886, 2009 WL 81923 (S.D. Tex. Jan. 9, 2009)................................... 13

*Int'l Ass'n of Machinists & Aerospace Workers ("IAM I") v. OPEC.*,
477 F. Supp. 553 (C.D. Cal. 1979) .......................................................................... 13

*Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392 (7th Cir. 2002) ...................... 4

*Jones v. Petty Ray Geophysical Geosource*, 722 F. Supp. 34 (S.D. Tex. 1989) ........................ 15

*Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F. Supp. 910 (S.D.N.Y. 1993) ............ 4, 5

*Kelly v. Syria Shell Petroleum Dev.*, 213 F.3d 841 (5th Cir. 2000)........................................ 18

*King v. Johnson Wax Assoc.*, 565 F. Supp. 711 (D. Md. 1983).......................................... 20

*Lee v. Ply\*Gem Industries*, 593 F.2d 1266 (D.C. Cir. 1979)........................................ 20

*Mar. Int'l Nominees Establishment v. Guinea*, 693 F.2d 1094 (D.C. Cir. 1993) ........................ 15

*Milcom Int'l Cellular, S.A. v. Costa Rica*, No. 96-315,
1997 WL 527340 (D.D.C. Aug. 18, 1997) ................................................................ 18

*MOL, Inc. v. Bangladesh*, 572 F. Supp. 795 (D. Or. 1983) ........................................... 13

*Murphy Bro., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344(1999)........................................ 6

*O'Connell Mach. Co., v. M.V. "Americana"*, 734 F.2d 115 (2d Cir. 1984) ................................. 4

*Phoenix Consulting, Inc. v. Angola*, 216 F.3d 36 (D.C. Cir. 2000).............................................. 18

*Prachand v. Gov't of India Tourist Office*,
No. 92c4336, 1992 WL 245523 (N.D. Ill. Sep. 22, 1992)........................................... 7

*Racoon Recovery, LLC v. Navoi Mining and Metallurgical Kombinat*,
244 F. Supp. 2d 1130 (D. Col. 2002)........................................................................ 5

*Robinson v. Gov't of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ........................................... 17

*Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Rep.*,
877 F.2d 574 (7th Cir. 1989) ................................................................................... 17

2

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)..................................................................... 15

*Sun v. Taiwan*, 201 F.3d 1105 (9th Cir. 2000)...................................................................... 12

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555(9th Cir. 1995) ................................................ 18

*Tucker v. Whitaker Travel, Ltd.*, 620 F. Supp. 578 (E.D. Pa. 1985).................................... 14

## Statutes

15 U.S.C. § 22 ........................................................................................................................ 20

28 U.S.C. § 1330 ...................................................................................................................... 1

28 U.S.C. § 1330(b) .......................................................................................................... 2, 3, 5

28 U.S.C. § 1391 (f) ......................................................................................................... 19, 20

28 U.S.C. § 1391(f)(3) ...................................................................................................... 19, 20

28 U.S.C. § 1407 .................................................................................................................... 20

28 U.S.C. § 1603(b) ................................................................................................................. 3

28 U.S.C. § 1605(a)(5) .......................................................................................................... 10

28 U.S.C. § 1605(a)(7) .......................................................................................................... 10

28 U.S.C. § 1605A(a)(1) ........................................................................................................ 10

28 U.S.C. § 1608(b) ................................................................................................................. 7

28 U.S.C. § 1746 ...................................................................................................................... 4

## Other Authorities

Fed. R. Civ. P. 12(b)(1).............................................................................................................. 1

Fed. R. Civ. P. 12(b)(2).............................................................................................................. 1

Fed. R. Civ. P. 12(b)(3).............................................................................................................. 1

Fed. R. Civ. P. 12(b)(4).............................................................................................................. 1

Fed. R. Civ. P. 12(h)(1)............................................................................................................ 20

H.R. Rep. No. 94-1487, at 15-16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ........................ 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: POTASH ANTITRUST LITIGATION (No. II) | ) ) ) | Case No. 08-CV-6910 |
| THIS DOCUMENT APPLIES TO: | ) ) | MDL No. 1996 |
| ALL ACTIONS | ) ) ) | Judge Ruben Castillo |

## DEFENDANT RUE PA BELARUSKALI'S REPLY
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, Republican Unitary Enterprise "Production Amalgamation 'Belaruskali'" ("RUE PA Belaruskali"), by and through undersigned counsel, submits this Reply Memorandum in Support of It's Motion to Dismiss The Direct Purchaser Consolidated Class Action Complaint ("Direct Complaint") and Indirect Purchasers Amended Consolidated Class Action Complaint ("Indirect Complaint") pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(4) and the Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891, 28 U.S.C. § 1602 *et seq.* ("FSIA" or "Act")), 28 U.S.C. § 1330.

As with their Complaints, Plaintiffs' Oppositions[1] fail to address RUE PA Belaruskali's primary basis for seeking dismissal -- that RUE PA Belaruskali is entitled to sovereign immunity. Because Plaintiffs fail to demonstrate otherwise, their claims against RUE PA Belaruskali should be dismissed with prejudice.

## INTRODUCTION

Plaintiffs' arguments in their Opposition are premised on mistaken assertions of law and inaccurate statements of fact in an attempt to divert the Court's attention from their failure to properly plead facts that establish this Court's jurisdiction over RUE PA Belaruskali. Rather than

---

[1] Throughout this Brief all references to the "Opposition" include Direct Purchaser Plaintiffs' Opposition to Defendant RUE PA Belaruskali's Individual Motion to Dismiss Direct Purchasers' Amended Consolidated Class Action Complaint, [Dkt. # 196] and Indirect Purchaser Plaintiffs' Opposition to RUE PA Belaruskali's Motion to Dismiss the Indirect Purchasers' Amended Consolidated Class Action Complaint [Dkt. # 199].

rebut RUE PA Belaruskali's Motion to Dismiss ("MTD"), Plaintiffs' Opposition highlights the fundamental flaws in the Complaints.

In its Motion to Dismiss, RUE PA Belaruskali made a *prima facie* showing that it is an agency or instrumentality of the Republic of Belarus. The Declaration of Valeriy Kirienko, former First Deputy Director and Chief Engineer of RUE PA Belaruskali and now the newly appointed Director General of RUE PA Belaruskali is legally sufficient and accurate evidence that RUE PA Belaruskali is a wholly owned juridical entity of the Republic of Belarus and thus meets the test for an "agency or instrumentality" within the FSIA's definition of a foreign state.

As an agency or instrumentality, the Court can only have personal and subject matter jurisdiction over RUE PA Belaruskali, if at all, under the FSIA. Under 28 U.S.C. § 1330(b) that means that jurisdiction is only appropriate if the Court finds that there has been proper service of legally effective documents and an applicable exception to RUE PA's Belaruskali's sovereign immunity. In this case, the purported "Summons" and Complaint were legally ineffective and accordingly the Court lacks personal and subject matter jurisdiction over RUE PA Belaruskali

Further, Plaintiffs' effort to bootstrap jurisdiction via its interest in BPC Chicago must fail as well. No exception to immunity under the FSIA permits a court to exercise subject matter jurisdiction over a foreign sovereign because of alleged "commercial acts" of other independent legal entities and alleged co-conspirators over whom the foreign sovereign had no control and Plaintiffs offer no authority in support of their argument. Moreover, Plaintiffs' own cited authorities support dismissal of this action against RUE PA Belaruskali and demonstrate that the actions allegedly taken by RUE PA Belaruskali are sovereign and not commercial, taken in Belarus and with no direct effect in the United States.

Plaintiffs' argument that RUE PA Belaruskali had "actual notice" of the lawsuit is equally defective as service with an "expired" complaint and legally ineffective "summons" is defective both under the Federal Rule of Civil Procedure and the service provisions of the FSIA.

Furthermore, Plaintiffs' request for jurisdictional discovery is similarly flawed because immunity under the FSIA is immunity from the "burdens of litigation" such as discovery, and Plaintiffs have failed to allege any specific facts against RUE PA Belaruskali that could be verified in their discovery requests. Because Plaintiffs' requested discovery cannot substantiate

Plaintiffs' argument that RUE PA Belaruskali is not an agency or instrumentality of the Republic of Belarus, the Court should deny Plaintiffs' request for discovery and leave to amend and grant RUE PA Belaruskali's Motion to Dismiss, with prejudice.

## ARGUMENT

### I.  RUE PA BELARUSKALI MADE A *PRIMA FACIE* SHOWING THAT IT IS AN AGENCY OR INSTRUMENTALITY OF THE REPUBLIC OF BELARUS

Apparently, Plaintiffs misinterpret and therefore attempt to misapply the FSIA. Demonstrating their lack of understanding, Plaintiffs argue that the "FSIA does not apply to RUE PA Belaruskali, because it is not a foreign state under that statute," and "[r]egardless of its ownership, RUE PA Belaruskali is a business entity," and "a separate legal entity from the Republic of Belarus."  Opp. at 1, 13.  Further, Plaintiffs argue that "[t]he Belarusian government's decision to place RUE PA Belaruskali in a separate legal entity further bolsters the commercial nature of RUE PA Belaruskali's existence and confirms the commercial nature of its activity in the global potash market." *Id.* at 13.

Unfortunately for Plaintiffs, the FSIA's definition of "a 'foreign state' *includes* ... an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(b) (emphasis added).  As the FSIA's legislative history shows, entities like RUE PA Belaruskali are precisely the type of economic entities the drafters intended to include in the definition of agency or instrumentality:

> [A]s a general matter, entities which meet the definition of an agency or instrumentality of a foreign state could assume a variety of forms, including a state trading corporation ... a central bank [or] export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name…

H.R. Rep. No. 94-1487, at 15-16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614.

As demonstrated in its Motion to Dismiss, RUE PA Belaruskali meets all the requirements and qualifies as an agency or instrumentality of the Republic of Belarus.  MTD at 8-11.  To substantiate its status as an agency or instrumentality of the Republic of Belarus, RUE PA Belaruskali provided the Declaration of Mr. Valeriy Kirienko, a duly authorized officer (and since October 14, 2009 the newly appointed General Director)[2] of RUE PA Belaruskali who

---

[2]  On October 14, 2009, the Council of Minister of the Republic of Belarus, meaning the Government of Belarus and the President of the Republic of Belarus, appointed Mr. Valeriy Kirienko as

declared under penalty of perjury, pursuant to 28 U.S.C. § 1746, that RUE PA Belaruskali: (1) "is a wholly owned [(2)] juridical entity that is owned directly by the Republic of Belarus" that (3) "was established pursuant to the governmental Decision of the Council of Ministers" of the Republic of Belarus." MTD at 9; Kirienko Decl. at ¶¶ 6,7; Notwithstanding Plaintiffs' unsupported and unsupportable allegations in this respect, Mr. Kirienko's Declaration constitutes evidence sufficient to establish a *prima facie* case that RUE PA Belaruskali is a foreign agency or instrumentality under the FSIA. *See Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 397-99 (7th Cir. 2002) (authenticated corporate document or affidavit of authorized officer or director demonstrating greater than 50% ownership by foreign state at time of suit would be sufficient to establish *prima facie* case of agency or instrumentality status); *see also O'Connell Mach. Co., v. M.V. "Americana"*, 737 F.2d 115, 116 (2d Cir. 1984) (holding affidavit of Embassy official that majority ownership of defendant was sufficient to establish agency of instrumentality status under FSIA); *See also Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003) ("Majority ownership by a foreign state … is the benchmark of instrumentality status.").

Although Mr. Kirienko's Declaration is sufficient proof of RUE PA Belaruskali's foreign sovereign status, RUE PA Belaruskali attaches to its Reply an additional Declaration of the Chief of the Legal Department of RUE PA Belaruskali and the attestation, dated December 15, 2009, from the Ministry of Justice confirming the state ownership over RUE PA Belaruskali and its sovereign status. *See Shumak Decl.* ¶¶ 1-4. Pursuant to the Ministry of Justice extract from the State Registry, RUE PA Belaruskali is a directly and wholly owned entity of the Republic of Belarus. *Id.* ¶¶ 4, 6. Additionally, Mr. Shumak attests that RUE PA Belaruskali's Charter provides that RUE PA Belaruskali was founded by the Government of the Republic of Belarus on the basis of Resolution No. 205, dated March 11, 1975 of the Council of Ministers of the USSR, and was renamed RUE PA Belaruskali by Decree No. 11 of the President of the Republic of Belarus dated March 16, 1999. *Id.* ¶ 5. This supplemental, indisputable proof eliminates any potential need for discovery on RUE PA Belaruskali's status and demonstrates that RUE PA Belaruskali is a foreign agency or instrumentality of the Belarusian state. *See In re Aircrash*

---

the General Director of RUE PA Belaruskali. *See* Vadim Shumak Declaration ¶ 7, attached hereto as Exhibit A (hereinafter "Shumak Declaration"); *see also Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F. Supp. 910, 914-15 (S.D.N.Y. 1993) (holding that Taiwan steel company was "instrumentality" of Republic of China, entitled to protections of FSIA, where government of Republic of China owned majority of company's outstanding stock, and the government, *inter alia*, appointed or designated many of company's officers and directors).

*Disaster Near Roselawn, Ind. On October 31, 1994*, 909 F. Supp. 1083, 1089 (N.D. Ill. 1995) (J., Castillo) (finding that declarations of Legal Counsel, in conjunction with supporting materials, such as the abstract of the Registry of Commerce and Corporations of Toulouse France, "sufficiently evidence the ownership interest of the French and Italian governments" for FSIA purposes).[3]

## II. PLAINTIFFS FAILED TO DEMONSTRATE THAT THE COURT HAS PERSONAL JURISDICTION OVER RUE PA BELARUSKALI

In its Motion to Dismiss, RUE PA Belaruskali established that this Court lacks personal and accordingly subject matter jurisdiction over it pursuant to 28 U.S.C. § 1330(b) of the FSIA because Plaintiffs served RUE PA Belaruskali with a superseded Complaint and a legally ineffective summons. *See* MTD at 21-24. In their Opposition, Plaintiffs' responses are essentially three: (1) that Plaintiffs' attorneys were given bad advice from their selected private process server (*see* Opp. at 15-18), (2) that Plaintiffs' attorneys assert that RUE PA Belaruskali was served with the Complaint that was operative at the time Plaintiffs initiated service to their private process server and that in any event, RUE PA Belaruskali has in fact been served with "Plaintiffs' Amended Consolidated Class Action Complaint (Doc. 51 in this matter)" (Opp. at 2 n.4 and 17 n.23); and (3) that RUE PA Belaruskali had actual notice either directly because of service of the legally insufficient documents in Belarus or indirectly through service upon BPC Chicago. *Id.* at 17. Taken individually or together, Plaintiffs' arguments reduce to a new and unimagined level the minimum standards for attempting to subject a foreign sovereign to the jurisdiction of the courts of the United States.

---

[3]     *See also Racoon Recovery, LLC v. Navoi Mining and Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1138 (D. Col. 2002) (finding that declarations of the Chairman of the State-Owned Concern for Rare Metals and Gold and Director of Navoi Mining and Metallurgical Kombinat, accompanied by their respective Charters are sufficient evidence to make a prima facie showing that defendant is an agency or instrumentality of a foreign state and accordingly governed by the FSIA); *Kao Hwa Shipping Co. v. China Steel Corp.*, 816 F. Supp. 910, 914-15 (S.D.N.Y. 1993) (finding that the affidavits submitted by defendant detailing its corporate status and the ownership by Chinese government of a majority of the company's stock as being sufficient to demonstrate that it is an "instrumentality" of a foreign state within the meaning of the FSIA).

5

### A.    Plaintiffs Served an Invalid Summons upon RUE PA Belaruskali.

In their Opposition, Plaintiffs do not deny that the Summons they served upon RUE PA Belaruskali pursuant to the Hague Convention was issued out of a closed docket following dismissal of that case.  Instead, Plaintiffs claim that after consultation with private process servers that they applied to the Court for a summons that they knew or should have known was legally invalid and ineffective without apparently notifying the Court why they were doing so. In any case, the mere fact that they now claim they were informed by someone other than the Court that they should serve a legally ineffectual document entitled "Summons" so that the captions on the purported "Summons" and the Complaint should match does not make the purported "Summons" that was served on RUE PA Belaruskali legally effective.

Plaintiffs argue in their Opposition that "even if Belaruskali asserts that some sort of technicality prevented perfect service, Plaintiffs' good faith efforts to comply with the Hague Convention should be deemed sufficient to effect service on Belaruskali." Opp. at 17.  Plaintiffs' good faith efforts at service cannot overcome the fatal legal inadequacies in the purported "Summons" and the superseded Complaint that were identified in RUE PA Belaruskali's Motion to Dismiss but which were ignored by Plaintiffs in their Opposition.

As the Supreme Court has noted in the context of removal, there is "a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bro., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "mere receipt of the complaint unattended by any formal service" was legally insufficient).  "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party must appear and defend." *Id.* at 350.

The purported "Summons" was therefore legally incapable of bringing RUE PA Belaruskali "under [the] court's authority" and there is nothing in the text of the Hague Convention on Service of Process or in the Practical Handbook on the Operation of Hague Convention on Service of Process that can substitute or otherwise empower documents that are otherwise legally ineffective.

**B.    Plaintiffs Do Not Deny That the Complaint That They Caused To Be Served on RUE PA Belaruskali Was Superseded at the Time It Was Served by a Subsequently Filed Complaint**

Direct Plaintiffs do not deny that the Complaint that was served on RUE PA Belaruskali was superseded at the time it was served on RUE PA Belaruskali or that it was superseded at the time that it was sent to Belarus. Instead, their Opposition asserts that the November 13, 2008 Consolidated Class action Complaint was "the operative complaint at the time Plaintiffs initiated service." Opp. at 17 n.23. At the same time, Plaintiffs explain that the "service documents" were not sent by their private process server to Belarus (for the first time) until April 9, 2009, 6 days after Plaintiffs filed the Amended Consolidated Complaint in this Court on April 3, 2009. *Id.* at 16. Plaintiffs' selected private process server then subsequently transmitted to Belarus these same "service documents" through the formal Hague Convention process on April 21, 2009 -- nearly 3 weeks after Plaintiffs filed the Amended Consolidated Complaint. As noted in RUE PA Belaruskali's Motion to Dismiss, these facts, now admitted to by Plaintiffs mean that the Complaint that was properly served through the Hague Convention Process had already been superseded at the time it was sent and was therefore legally ineffective at the time it was served.

As to Plaintiffs' statement in footnote 4 of their Opposition that "Belaruskali was served with ... Plaintiffs' Amended Consolidated Class action Complaint (Doc. 51 in this matter), RUE PA Belaruskali denies ever receiving such service and Direct Plaintiffs have never filed any proof of service pursuant to Rule 4 of the Federal Rules of Civil Procedure. *See* Opp. at 2; *Autotech Tech. v. Integral Research & Development*, 499 F.3d 737, 748 (7th Cir. 2007) (concluding that plaintiff's assertion, unsupported by any proof of service, that the foreign sovereign had notice was "no competent record evidence of proper service").

**C.    In Light of the Deficiencies in the Documents that were Served, the Fact that RUE PA Belaruskali had "Actual Notice" of these Proceedings is Insufficient**

Although not cited by Plaintiffs, there is a doctrine of "substantial compliance" when it comes to certain technical and minor errors in service upon agencies or instrumentalities pursuant to the FSIA service rules under 28 U.S.C. § 1608(b); but this is not such a case. *See, e.g.*, *Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1352 (11th Cir. 1982) (*dictum*); *see also Prachand v. Gov't of India Tourist Office*, No. 92c4336, 1992 WL 245523, at *2 (N.D. Ill. Sep. 22, 1992) (noting that "substantial compliance" is proper in

extraordinary circumstances, such as when the United States had broken off diplomatic relations with Iran, and finding plaintiff's failure to serve translations of the documents sent, combined with its failure to supply the court with any signed receipt as required as being legally insufficient.) It would be illogical and improper to permit service of process upon a foreign sovereign in a case where the same defects in service of process upon a domestic entity would not be permitted. *Harris Corp.*, 691 F.2d at 1352 ("Though we find service adequate here, we admonish those seeking to invoke the FSIA to follow the service provisions it contains. [] There is no excuse for departure from the dictates of the statute.")

Thus, these fatal deficiencies in the documents, regardless of whether those documents were properly served, render Plaintiffs' service deficient and defeat Plaintiffs' claims that this Court may exercise jurisdiction over RUE PA Belaruskali.

### III. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER RUE PA BELARUSKALI UNDER THE FSIA

#### A. Plaintiffs Failed to Demonstrate That Any of the Commercial Activities Exceptions Apply

Although Plaintiffs' Complaints failed to allege that the FSIA's commercial activities exceptions were applicable, MTD at 13. Plaintiffs nevertheless attempt to invoke the commercial activity exception to the FSIA by arguing that "RUE PA Belaruskali is a business entity that markets potash in the United States, including through its joint venture office in Chicago." Opp. at 1. This belated attempt to invoke the commercial activates exception to the FSIA is incurably flawed and fails even under the case law cited by Plaintiffs.

As RUE PA Belaruskali's Motion to Dismiss explains, three questions must be answered to determine whether the commercial activity exception applies. MTD at 11-21. First, the "'threshold step in assessing plaintiffs' reliance on the 'commercial activity' exception [is to] identify the act of the foreign sovereign state that serves as the basis for plaintiffs' claims." *Garb v. Poland*, 440 F.3d 579, 586 (2d Cir. 2006); *Box v. Dallas Mexican Consulate General*, No. 08-1010, 2009 WL 3163551 (N.D. Tex. Sept. 30, 2009). Next, determine whether the activity is commercial or governmental in nature. *De Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985). Finally, determine whether there is a sufficient nexus between the commercial activity and the United States. *Id.* Based on the allegations in the Complaints, the commercial activity exception does not confer jurisdiction as a matter of law.

**B.** **The Allegedly Commercial Activities that Plaintiffs Allege Form the Basis of their Claims Are Not 'by' or 'of RUE PA Belaruskali"**

In response to RUE PA Belaruskali's argument that Plaintiffs Complaints do not specifically identify RUE PA Belaruskali's acts on which their claims are based, Plaintiffs' attempt to restate their allegations by imputing to RUE PA Belaruskali the acts of other, non-sovereign "defendants." Opp. at 2-3. Plaintiffs assert that RUE PA Belaruskali sells potash in the United States through its alleged agent, Defendant BPC Chicago, which "sold and distributed potash in the United States, directly or through its affiliates." *Id.* at 10, 11. Regardless of whether such allegations are sufficient under *Twombly*, they are subject to scrutiny under the FSIA. Under the FSIA, plaintiffs must "define with precision" the defendant's "relevant commercial activity" in order to invoke the commercial activity exception, and this "requires focusing on the acts of the named defendant, not on other acts that may have had a causal connection with the suit." *De Sanchez,* 770 F.2d at 1391.

Plaintiffs appear to believe that because RUE PA Belaruskali is a shareholder (not a joint venturer) in Joint Stock Company Belarusian Potash Company ("JSC BPC Minsk") and because JSC BPC Minsk has a wholly owned subsidiary with an office in Chicago ("BPC Chicago") and may do business in the United States, that they can bootstrap their jurisdictional arguments against the BPC entities to also attempt to acquire jurisdiction over RUE PA Belaruskali under the FSIA. Plaintiffs misunderstand the specific legal regime that is to be applied to attempts to acquire jurisdiction over a foreign sovereign under the FSIA.

As the Plaintiffs note in their brief, in *First Nat. City Bank v. Banco Para el Comercio Exterior de Cuba* ("Bancec"), the Supreme Court "survey[ed] international and federal law on the status of corporations" and "recognized a presumption of "separate juridical status for the instrumentalities of foreign states." *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009) (quoting *Bancec*, 462 U.S. 611, 624-28) (internal quotation marks omitted). This presumption of juridical separateness has been extended by all of the Circuit Courts that have considered the issue to jurisdictional questions and attempts by plaintiffs to impute alleged jurisdictional contacts of others to foreign sovereigns. In *Doe v. Holy See*, the Ninth Circuit recently "join[ed] the D.C. Circuit and the Fifth Circuit in extending the Supreme Court's *Bancec* analysis to the question of whether the actions of a corporation may render a foreign sovereign amenable to suit." *Id.* at 1078. The Ninth Circuit explained that "[a]pplying *Bancec's* presumption in favor of separate

9

juridical status for foreign state instrumentalities at the jurisdictional phase, not just at the liability phase, is consistent with the FSIA's broad policy goals [and] makes good sense." *Id.* at 1080.

Under the *Bancec* standard, plaintiffs would have to "pierce the corporate veil" between RUE PA Belaruskali and JSC BPC Minsk and BPC Chicago by showing actual "day to day control" of these separate juridical entities by RUE PA Belaruskali:

> The *Bancec* standard is in fact most similar to the "alter ego" or "piercing the corporate veil standards applied in many state courts to determine whether the actions of a corporation are attributable to its owners. . . . Even reading the complaint generously to Doe, as we must, we cannot infer from the use of the word "agent" that Doe is alleging the type of day-to-day control that *Bancec* and Flatow [vs. Iran][4] require to overcome the presumption of separate juridical status."

*Id.*[5] Applying this standard to the limited facts alleged in Plaintiffs' Complaints, it is self-evident that RUE PA Belaruskali, as either an equal or 45% shareholder in JSC BPC Minsk, could not possibly have "day-to-day control" over either, let alone both of the BPC entities.

Nor do Plaintiffs' allegations of a conspiracy save its attempt to bootstrap RUE PA Belaruskali into the Court's jurisdiction because of the alleged personal jurisdictional contacts of other named defendants. *See* Opp. at 2 n.5 ("Like its joint venture and agent, Defendant BPC Chicago, LLC, Belaruskali improperly constrains a fair reading of Plaintiffs' Complaint .... As

---

[4]   *Flatow v. Iran* demonstrates yet another reason why the FSIA cannot possibly be used to impute jurisdictional contacts of private corporations to agencies or instrumentalities of foreign states.  In 28 U.S.C. § 1605(a)(7) (now recodified at 28 U.S.C. § 1605A, otherwise known as the *Flatow* Amendment, immunity from jurisdiction is withdrawn from foreign states in cases in which:

> money damages are sought ... for personal injury or death that was caused by an act of torture, extrajudicial killing, ... or the provision of material support or resources for such an act *if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.*

*See* 28 U.S.C. § 1605A(a)(1).  Were plaintiffs correct that agency principles can be used to impute commercial activities or other jurisdictional contacts to agencies or instrumentalities by their agents, the italicized portion of the above statute would be superfluous and unnecessary.  *See also* 28 U.S.C. § 1605(a)(5) (applying the non-commercial tort exception to the FSIA to acts of "officials or employees of that foreign state while acting within the scope of his office or employment".

[5]   *See also Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir. 2006) ("We agree with the Fourth and Ninth Circuits that an agent's acts conducted with the apparent authority of the state is insufficient to trigger the commercial exception to FSIA.")

Plaintiffs have demonstrated ... conspiracy allegations need not be delineated defendant by defendant."). The conspiracy theory of jurisdiction is a judicially created doctrine of *personal jurisdiction* and Plaintiffs have cited no authority, and RUE PA Belaruskali is aware of none, that applies the conspiracy theory to commercial activities in order to obtain jurisdiction over a foreign sovereign.

Thus, Plaintiffs' need to reach out to agency and conspiracy theories essentially admits that they have no FSIA jurisdiction over RUE PA Belaruskali absent their agency and conspiracy theories. However, Plaintiffs cannot attribute other defendants' conduct to RUE PA Belaruskali consistent with the FSIA, and accordingly RUE PA Belaruskali should be dismissed from this case with prejudice.

### C. The Alleged Activities of RUE PA Belaruskali That Form the Basis of Plaintiffs' Antitrust Claims are Sovereign Rather Than Commercial Acts

In their attempt to obtain jurisdiction over RUE PA Belaruskali under the commercial activities exception to the FSIA, the Plaintiffs have recharacterized the factual allegations made in their Complaint to extend beyond their original allegations. Initially, Plaintiffs alleged that RUE PA Belaruskali has engaged in commercial activities through restraints on the production, supply and exportation of potash (Dir. Compl. at ¶¶73-106; Indirect Compl. ¶¶ 60-128). Now Plaintiffs include allegations in their Opposition that "this case centers on RUE PA Belaruskali's sales of potash to Plaintiffs in the United States." Opp. at 6-8. Plaintiffs recent attempt to recharacterize their allegations are understandable, but unsupportable.[6]

As discussed in its Motion to Dismiss, RUE PA Belaruskali's alleged acts to restrict the production and manufacturing capacity of potash, and to set the volumes of the supply and the price of potash are, even if true, sovereign. MTD at 16-17. Plaintiffs' attempts to focus on case law discussing "nature versus purpose" under the FSIA[7] are therefore similarly unavailing because these are not commercial acts. Rather they are acts that in Belarus only the sovereign can do. Moreover, they are actions by the Government of Belarus conducted within its own sovereign territory and by its sovereign right to administer its own limited, non-renewable natural resources. These actions, therefore, do not constitute "commercial activities" under the

---

[6]     *See Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (finding that it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss).

[7]     *See, e.g.*, Opp. at 5-6 (discussing *Sun v. Taiwan*, 201 F.3d 1105, 1107-08 (9th Cir. 2000); *Globe Nuclear Services and Supply(GNSS), Ltd. v. AO Techsnabexport*, 376 F.3d 282 (4th Cir. 2004)).

FSIA. *Id.* at 18. In order to try and find any kind of commercial activity, Plaintiffs argue that "[p]rivate sales contracts and other matters of ordinary commerce, even when engaged in by a sovereign, are commercial." Opp. at 6.

Plaintiffs also misconstrue RUE PA Belaruskali's Motion to Dismiss, insofar as Plaintiffs are incorrect in their assertion that RUE PA Belaruskali argued that its "purpose in selling potash is to regulate natural resources belonging to the Republic of Belarus." Opp. at 7 & n.8. Plaintiffs have apparently conflated contractual sales of goods with the uniquely sovereign right to regulate and control the production, supply and export of the Republic of Belarus' limited supply of its non-renewable natural resources. Plaintiffs' error is illustrated by their reliance on *Globe*, 376 F.3d 282. *See* Opp. at 7-9. *Globe* involved a contract between a Russian state-owned company (Tenex) and a U.S. company (GNSS) in which Tenex obligated itself to supply GNSS with specific quantities of a product derived from uranium taken out of decommissioned Russian nuclear warheads. *Globe*, 376 F.3d at 284. During the period of the contract, Tenex unilaterally terminated delivery on the grounds that "further sales to GNSS are inimical to the interests of the Russian Federation." *Id.* In identifying "precisely the conduct by Tenex upon which GNSS's lawsuit was based," the Fourth Circuit found that the "action is 'based upon' nothing more or less than Tenex's entrance into a contract to supply GNSS with uranium hexafluoride and subsequent repudiation thereof." *Id.* at 286, 288. Plaintiffs reliance is therefore misplaced.

Plaintiffs argue that like *Globe*, "this case centers on RUE PA Belaruskali's sale of potash to Plaintiffs in the United States," and like the defendant in Globe, "RUE PA Belaruskali obligated itself to supply products derived from the [natural] resources." Opp. at 8. As in the hypothetical above, if this was a breach of contract case against JSC BPC Minsk (according to the Complaint, RUE PA Belaruskali's exclusive sales distributor in the U.S. (Dir. Pl. Comp. at ¶ 23)), the analogy might work. But it is not. This is not a breach of contract case and perhaps even more importantly, even the *Globe* court recognizes that the activities that RUE PA Belaruskali engages in are sovereign rather than commercial:

> [F]ocus on the elements of GNSS's claim, as required by *Nelson,* yields the conclusion that the district court erred by taking an overly broad view of Tenex's conduct relevant to GNSS's lawsuit. For purposes of section 1605(a)(2), GNSS's action is "based upon" nothing more or less than Tenex's entrance into a

12

> contract to supply GNSS with uranium hexafluoride and
> subsequent repudiation thereof.

*Globe*, 376 F.3d at 288. (internal citations omitted). By contrast, the *Globe* court recognized that a governmental decision, such as the decision by the Republic of Belarus to have RUE PA Belaruskali "operate within sovereign territory and to extract natural resources from within that territory is sovereign activity." *Id.* at 291.

As demonstrated in the Motion to Dismiss, and wholly ignored by Plaintiffs, RUE PA Belaruskali, as an agency or instrumentality of the Republic of Belarus is involved in the regulation of "natural resources belonging to the Republic of Belarus," much like the oil producing nations at issue in *Int'l Ass'n of Machinists & Aerospace Workers ("IAM I") v. OPEC*. 477 F. Supp. 553 (C.D. Cal. 1979), *aff'd on other grounds*, 649 F.2d 1354 (9th Cir. 1981), *cert denied*, 454 U.S. 1163 (1982)) and *In re Refined Petroleum Prod. Anti-Trust Litig.*, 2009 WL 81923, No. 07-MDL-01886 (S.D. Tex. Jan. 9, 2009).

In *IAM I*, the court noted that "[t]he control over a nation's natural resources stems from the nature of sovereignty; [b]y necessity and by traditional recognition, each nation is its own master in respect to its physical attributes." 477 F. Supp. at 568. The *IAM I* case similarly concerned an alleged price-fixing conspiracy entered into by the OPEC nations. The *IAM I* court reasoned that even assuming that the price-fixing would be illegal if engaged in by private citizens, the sovereign state must often engage in regulation of a nation's natural resources, and doing so is a sovereign function not subject to be challenged in a suit. *Id.*, *MOL, Inc. v. Bangladesh*, 572 F. Supp. 79, 85 (D. Or. 1983).[8]

Thus, the alleged actions of RUE PA Belaruskali are sovereign in nature and Plaintiffs failed in the Opposition to demonstrate the contrary.

---

[8]     The Plaintiffs' bizarre argument that RUE PA Belaruskali "is a government-owned business entity, rather than a government" is likewise irrelevant because as noted above, *supra* at p.3 , the FSIA unsurprisingly recognizes the sovereign immunity of majority state-owned entities. The Republic of Belarus implements RUE PA Belaruskali's policies related to exploration, development and trade of potash extracted from the mines of the Republic of Belarus. Kirienko Decl. at ¶¶ 6, 10; *see also Tucker v. Whitaker Travel, Ltd.*, 620 F. Supp. 578, 584 (E.D. Pa. 1985) (foreign government's "decisions whether and how to regulate an industry ... [is] peculiarly governmental and may not be subjected to scrutiny in the United States").

**D.    Plaintiffs Failed To Demonstrate That There Is Sufficient Nexus with the United States**

Plaintiffs make the conclusory allegation that "the elements of Plaintiffs' claims are 'based upon the commercial activities of RUE PA Belaruskali and the other Defendants" and then seek to demonstrate that their allegations meet all three prongs of 1605 (a)(2). *Id.* at 10-12. As demonstrated in RUE PA Belaruskali's Motion to Dismiss and further emphasized below, Plaintiffs' allegations have failed to demonstrate an "identifiable nexus" between their claims of anti-trust violations and RUE PA Belaruskali's alleged commercial activities. MTD at. 12-15. Moreover, Plaintiffs' attempt to obtain jurisdiction over RUE PA Belaruskali under the Sherman Act (effects on interstate commerce) is a red herring because the FSIA is "the sole basis for obtaining jurisdiction over a foreign state" and the courts must look to the FSIA, not other statutes, in order to find jurisdiction over a claim against a foreign sovereign. Opp. at 9; *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (2000); *EAL v. European Org. for the Safety of Air Navigation*, No. 93-578, 1994 WL 828320, at *12 (D. Del. Aug. 3, 1994).

**1.    The Alleged Commercial Activity Was Not Carried On in the United States**

Plaintiffs allege that their claims are "based in part upon RUE PA Belaruskali's marketing and sales of potash in the United States, including through its joint venture, BPC, and therefore meet the first alternative scenario in the FSIA's commercial activity exception." Opp. at 10. Plaintiffs have not offered any evidence or information, however, to suggest that RUE PA Belaruskali has any direct presence in the United States. Further, as noted above, conclusory allegations are insufficient to demonstrate the existence of an agency relationship between RUE PA Belaruskali and to impute the actions of other defendants to RUE PA Belaruskali.

Furthermore, as stated in RUE PA Belaruskali's Motion to Dismiss, Plaintiffs have failed to prove that the "commercial activity had substantial contact" with the United states within the specific meaning of the FSIA. MTD at 13; *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993). Proof of substantial contact requires more than the minimum contacts sufficient to satisfy due process in establishing personal jurisdiction. *Mar. Int'l Nominees Establishment v. Guinea*, 693 F.2d 1094, 1109 n.23 (D.C. Cir. 1993). FSIA significant contacts need to be much more

14

significant, for example, than isolated visits to satisfy the FSIA's requirement. *BP Chem. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 687 (8th Cir. 2002). Therefore, because Plaintiffs have failed to identify acts carried on in the United States having substantial contact with the United states by RUE PA Belaruskali, the Court lacks jurisdiction under this first prong of the commercial activity exception.

### 2. There Is No Act in The United States in Connection with a Commercial Activity Elsewhere

Plaintiffs argue that they meet the second prong because "RUE PA Belaruskali performed 'an act in the United States' - it marketed and sold billions of dollars of potash to U.S. customers, and [it had] a marketing office in this District through BPC." Opp. at 11. Plaintiffs allege that "[t]hese U.S. acts were 'in connection with" RUE PA Belaruskali's commercial activities elsewhere." *Id.* Plaintiffs provide as an example of such an activity, the alleged fact that "shortly after July 8, 2008, RUE PA Belaruskali's joint venture contracted to supply 30,000 tons of potash to U.S. buyers at $1,000 per ton." *Id.* fn. 12. Yet, again, Plaintiffs inappropriately attempt to assert jurisdiction over RUE PA Belaruskali based on the actions of a subsidiary of an independent legal entity in which RUE PA Belaruskali is a shareholder; not a joint venturer. *Colagiovanni*, 443 F.3d at 429 (commercial activity must be of the foreign state); *supra* at pp. 9-11. Moreover, these legal conclusions masquerading as conclusory factual allegations are insufficient to demonstrate that RUE PA Belaruskali engaged directly in any acts "which in and of themselves are sufficient to form the basis of a cause of action." *See Heroth v. Saudi Arabia*, 565 F. Supp. 2d 59, 67 (D.D.C. 2008). Plaintiffs have offered no evidence to refute the sworn statement in Mr. Kirienko's Declaration that RUE PA Belaruskali's committed no acts within the United States. *See Jones v. Petty Ray Geophysical Geosource*, 722 F. Supp. 343, 347 (S.D. Tex. 1989). Similarly, although the "in connection with" language of the second prong might arguably allow for a more tenuous causal link between the claims alleged and the commercial activity, Plaintiffs have failed to demonstrate that the purported acts of RUE PA Belaruskali in the United States were in connection with the alleged claims against it. *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1289-91 (3rd Cir. 1993); MTD at 14.

The legal authorities relied upon by Plaintiffs to support their argument are distinguishable and inapposite. Specifically, unlike here, in *Kirkham v. Societe Air France*, defendant conceded that it is present in the United States through the sale of the tickets - a fact

necessary for the plaintiff to establish a passenger-carrier relationship with the airline and a duty of care element of the plaintiff's negligence claim. 429 F.3d 288, 292 (D.C. Cir. 2005). Similarly, unlike Plaintiffs' conclusory allegation here, in *BP Chem.* - a dispute concerning misappropriation of trade secrets in which the Eight Circuit failed to consider the Supreme Court's decision in *Bancec,* plaintiff plead significant facts demonstrating the existence of an agency relationship and that defendant solicited business in the United States through its agent. 285 F.3d at 688. In particular, BP alleged that Sopo procured essential materials from American vendors on Sopo's behalf and without these materials Sopo could not have copied BP's trade secrets designs and constructed an acetic acid plant in China. *Id.* at 687. Plaintiffs allegations in the Complaint against RUE PA Belaruskali are limited to legal conclusions that do not rise to the level of the allegations in *BP Chem.* MTD at 2-4.

Therefore, Plaintiffs do not meet the second prong of the "based upon" requirement.

### 3. The Alleged Conduct Had No Direct Effect in the United States

Plaintiffs also contend that under the third prong, there is "a direct effect in the United States because RUE PA Belaruskali and its co-conspirators directly increased their prices for potash they sold in the United States to Plaintiffs." Opp. at 12. Like with the previous two prongs, rather than point to any specific factual allegations in their Complaints, Plaintiffs instead continue to present legal conclusions that are insufficient, on their face, to demonstrate that RUE PA Belaruskali's actions caused a direct effect in the United States. *Id.*; *see Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992); MTD. at 19-20.

Plaintiffs' reliance on *Aldy v. Valmet Paper Mach.,* is misplaced because the facts are distinguishable. 74 F.3d 72 (5th Cir. 1996). In *Aldy*, the plaintiff, a U.S. citizen, filed a products liability suit asserting failure to warn, and design and manufacturing defects. *Id.* at 73. The Court of Appeals found that the defendant was not entitled to sovereign immunity because the *injury occurred* in the United States when plaintiff was operating machinery designed and manufactured in Finland by defendant and installed in a Hodge, Louisiana paper mill. *Id.* at 75-76. (emphasis added). Plaintiffs' bare allegations that they "have been injured in their business and property" are obviously not "similar" to *Adler*. Opp. at 12.

Moreover, Plaintiffs failed to even address RUE PA Belaruskali's argument that mere financial losses claimed by Plaintiffs are not legally cognizable direct effects in the United States under the FSIA. MTD at 20-21. As stated in the Motion to Dismiss, Plaintiffs' alleged

financial loss in the United State by itself is not enough to meet this prong of the commercial activity exception. *Id.*; *see Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Rep.*, 877 F.2d 574, 581-82 (7th Cir. 1989), *cert. denied*, 493 U.S. 937, (1989); *Can-Am Int'l, LLC v. Trinidad and Tobago*, 169 Fed. Appx. 396, 408 (4th Cir. 2006); *Antares Aircraft L.P. v. Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993).

Thus, the Court lacks jurisdiction under this prong as well. Because the commercial activity exception to sovereign immunity under the FSIA does not apply, the Complaints against RUE PA Belaruskali must be dismissed with prejudice.

## IV. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEY ARE ENTITLED TO JURISDICTIONAL DISCOVERY AND LEAVE TO AMEND THEIR COMPLAINTS

Plaintiffs argue that they "should be allowed to conduct jurisdictional discovery to refute RUE PA Belaruskali's untested claim that it qualifies as a foreign state under the FSIA." Opp. at 19. Plaintiffs allege that "[d]ismissal on jurisdictional grounds, particularly under the FSIA, often requires a court to look beyond pleadings and should not be granted without allowing discovery directed to the issue." *Id.* at 13-14. However, besides a legal conclusion that they are entitled to jurisdictional discovery, Plaintiffs failed to allege any specific facts against RUE PA Belaruskali that could be verified in their discovery requests. Plaintiffs need to provide more than speculations and conclusory assertions before they can be allowed to put RUE PA Belaruskali through the cost and expense of engaging in the discovery process. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001).

The sovereign immunity afforded by the FSIA "is an immunity from trial and *the attendant burdens of litigation*, and not just a defense to liability on the merits." *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F. 2d 574, 576 n.2 (7th Cir. 1989) (emphasis added). To preserve the essence of that immunity, "the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible" and "should closely control and limit the discovery and fact-finding so as to avoid frustrating the significance and benefit of ... immunity from suit." *Phoenix Consulting, Inc. v. Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000), citing *Foremost-McKesson v. Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990) (internal citations omitted). The court in *Kelly v. Syria Shell Petroleum Dev.* noted:

17

> [W]hen FSIA immunity has been claimed, unlimited jurisdictional discovery is *not* permitted as a matter of course. Instead, it "should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.

213 F.3d 841, 849 (5th Cir. 2000) (upholding denial of discovery where plaintiffs failed to identify specific facts which would show that an FSIA exception applied) (emphasis in original) *citing Arriba Ltd. v. Petroleus*, 962 F.2d 528, 534 (5th Cir. 1992); *see also First City, Texas-Houston, N.A. v. Rafidian Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (noting that comity concerns implicated by allowing jurisdictional discovery from a foreign sovereign "require a delicate balancing between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign or sovereign agency's legitimate claim to immunity from discovery).

In general, the court may allow "limited discovery with respect to the jurisdictional issue" only after the plaintiff has shown a reasonable basis for assuming jurisdiction. *Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2d Cir. 1990). Requests for FSIA-related discovery shall be granted only if plaintiff has presented non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA. *Milcom Int'l Cellular, S.A. v. Costa Rica*, No. 96-315, 1997 WL 527340, at *4, (D.D.C Aug. 18, 1997) citing *Foremost-McKesson*, 905 F.2d at 448 (requiring plaintiff to submit additional proof supporting conclusory allegations to avoid dismissal); *see also El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996) (stating that plaintiff was not entitled to discovery against a defendant raising a FSIA defense in the "absence of any showing" by plaintiff that the defendant might not be an agency or instrumentality within the meaning of the FSIA). "If, however, the assertions relating to jurisdiction appear 'attenuated and based on bare allegations in the face of specific denials made by defendants,' a court would not abuse its discretion in denying discovery." *Alperin v. Vatican Bank*, No. 99-04941, 2006 WL 1663847, at *3 (N.D. Cal. June 15, 2006) citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995). Jurisdictional discovery should be denied if additional facts sought to be proven in discovery would not alter the court's analysis as to whether the FSIA applies. *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994). An essential precondition to granting limited jurisdictional discovery is the court's "clear understanding of the plaintiff's claims against a sovereign entity." *Arriba*, 962 F.2d at 534.

18

Here, Plaintiffs are not entitled to discovery against RUE PA Belaruskali because, in light of the evidence that RUE PA Belaruskali proffered to the Court and the absence of any showing by Plaintiffs that RUE PA Belaruskali is not an agency or instrumentality, discovery would "frustrate the significance and benefit of entitlement to immunity from suit." *Foremost-McKesson, Inc.*, 905 F.2d at 449; *El-Fadl*, 75 F.3d at 671. Plaintiffs have failed to produce any specific facts which demonstrate that RUE PA Belaruskali is not a "foreign state" under the FSIA. *Supra* at pp. 4-5. Plaintiffs' claim that RUE PA Belaruskali's status is "untested" is insufficient to create a factual dispute that requires jurisdictional discovery. Accordingly, Plaintiffs have not met the standard for granting even limited jurisdictional discovery.

Thus, because Plaintiffs have not met their burden of producing evidence showing that jurisdiction is appropriate under an exception to the FSIA, Plaintiffs' request for discovery should not be granted because there is no genuine factual issue over whether RUE PA Belaruskali is a foreign state and Plaintiffs' leave to amend their Complaints should be denied.

## V. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT VENUE IN THIS DISTRICT WAS PROPER

Plaintiffs' argument that venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(f) (1) and (3) is misplaced. Opp. at 18. Plaintiffs' baseless allegations and recitation of the statute are insufficient to demonstrate that RUE PA Belaruskali "is licensed to do business or is doing business" in this District or that a "substantial part of the events or omissions giving rise to [their] cause of action had occurred in the District." Opp. at 1, 18; MTD at 25. As Mr. Kirienko states in his Declaration in Support of RUE PA Belaruskali's Motion to Dismiss, "RUE PA Belaruskali does not own property, has never transacted or conducted business, or had any presence in the state of Illinois or anywhere else in the United States. MTD at 6; Kirienko Decl. ¶ 8. RUE PE Belaruskali has its principal place of business in Soligorsk, Republic of Belarus and is the mainstay of the local economy and any purported acts by RUE PA Belaruskali occurred exclusively in Belarus. *Id.;* MTD at 20. The limited factual allegations in Plaintiffs' Complaint are insufficient to establish the applicability of any exceptions to immunity under the FSIA, its acts or any alleged "commercial acts" of others in this District are similarly insufficient to demonstrate that RUE PE Belaruskali does business here for the venue purpose. *Supra* at pp 9-11. Accordingly, 28 U.S.C. § 1391(f)(3) does not apply to RUE PA Belaruskali for purposes of establishing proper venue in this District.

19

Plaintiffs' invocation of the specific venue provision in the Clayton Act is similarly flawed. Opp. at 18. Because RUE PA Belaruskali made a *prima facie* showing that it is a foreign state under the FSIA, the venue provisions of 28 U.S.C. § 1391(f) apply. *Supra* at pp.3-5. Even if Clayton Act would apply to RUE PA Belaruskali, Plaintiffs have similarly failed to allege sufficient facts to demonstrate that RUE PA Belaruskali "transacts business in this District" 15 U.S.C. § 22[9]; *King v. Johnson Wax Assoc.,* 565 F. Supp. 711, 717 (D.C. Md. 1983), citing *Lee v. Ply*Gem Industries,* 593 F.2d 1266, 1273 n.58 (D.C. Cir. 1979), *cert. denied,* 441 U.S. 967, (1979).

RUE PA Belaruskali's venue argument is not an attempt to flout the transfer of this matter to the Northern District of Illinois pursuant to 28 U.S.C. § 1407. RUE PA Belaruskali does not dispute that this case has been consolidated here for pre-trial matters. The focus instead is the court to which RUE PA Belaruskali will return for trial and what substantive law may apply. The question of the applicable substantive law may also impact the law that this Court must apply when deciding certain issues with regard to RUE PA Belaruskali. *See, i.e., In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, No. 1:00-1898, MDL 1358, M21-88, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005). For these reasons, and because improper venue is an argument that must be raised or waived RUE PA Belaruskali has raised the venue issue, and requests this Court to determine that the only proper venue for claims against RUE PA Belaruskali in this action is the United States District Court for the District of Columbia. Fed. R. Civ. P. 12(h)(1).

## CONCLUSION

For the reasons stated above, RUE PA Belaruskali respectfully requests that the Court reject the arguments set forth in Direct and Indirect Purchasers' Opposition to RUE PA Belaruskali's Motion to Dismiss Consolidated Class Action and Indirect Purchasers Amended Consolidated Class Action Complaints, deny Plaintiffs' requests for discovery and leave to amend, and dismiss the actions with prejudice.

---

[9] There is a split in the Circuits as to whether the defendant must currently transact business or whether it had to have been transacting business at the time the cause of action accrued. *See generally In re Chicken Antitrust Litig,* 407 F. Supp. 1285, 1292-93 (N.D. Ga. 1976) (discussing the split in the case law). The Seventh Circuit has not spoken on this. However, several district courts in the Northern District of Illinois have discussed the issue and have agreed that the defendant must be transacting business at the time that suit was filed. *See e.g., C.C.P. Corp. v. Wynn Oil Co.,* 354 F. Supp. 1275 (N.D. Ill. 1973).

Dated: December 17, 2009

GREENBERG TRAURIG, LLP

/s/ _____

Thomas E. Dutton (Bar No. 6195923)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: 312-456-8400
Fax: 312-456-8435
duttont@gtlaw.com

David A. Baron
2101 L Street, Suite 1000
Washington, DC 20037
Tel: (202) 331-3165
Fax: (202) 261-0465
barond@gtlaw.com
Counsel RUE PA Belaruskali