

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: POTASH ANTITRUST LITIGATION | No. 08 C 6910 <br><br> MDL No. 1996 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Before the Court are motions to dismiss from RUE PA Belaruskali ("Belaruskali") and JSC Belarusian Potash Company ("BPC Minsk"). (R. 190, Belaruskali's Mot. to Dismiss; R. 222, BPC Minsk's Mot. to Dismiss.) For the reasons stated below, Belaruskali's motion is granted and BPC Minsk's motion is denied.

## BACKGROUND[1]

This Multi-District Litigation ("MDL") consists of two class actions. In the first action, the Direct Purchaser Plaintiffs[2] bring suit on behalf of themselves and all others who purchased potash products in the United States directly from Defendants.[3] (R. 142, Am. Direct Compl.) In

---

[1] The facts of this case have been set forth in the Court's previous order and will not be extensively repeated here. *See In re Potash Antitrust Litig.*, No. 08C6910, 2009 U.S. Dist. LEXIS 102623 (N.D. Ill. Nov. 3, 2009).

[2] Direct Purchaser Plaintiffs include Gage's Fertilizer & Grain, Inc., Kraft Chemical Company, Minn-Chem, Inc., Shannon D. Flinn, Thomasville Feed & Seed, Inc. and Westside Forestry Services, Inc. (R. 142, Am. Direct Compl.)

[3] Defendants include Belaruskali, BPC Minsk and BPC Chicago LLC ("BPC Chicago") (collectively, "BPC"), Agrium Inc. and Agrium U.S. Inc., JSC Uralkali ("Uralkali"), JSC Silvinit, JSC International Potash Company, Potash Corporation of Saskatchewan Inc., PCS Sales (USA), Inc., Mosaic Company and Mosaic Crop Nutrition LLC. (R. 142, Am. Direct Compl.; R. 50, Indirect Compl.)

the second action, Indirect Purchaser Plaintiffs[4] bring suit on behalf of themselves and all others who purchased potash products in the United States indirectly from Defendants. (R. 50, Indirect Compl.) Both the Direct Purchaser Plaintiffs and the Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") allege that Defendants conspired to fix the price of potash in violation of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1, and various state laws. (R. 142, Am. Direct Compl.; R. 50, Indirect Compl.) On November 3, 2009, this Court entered an opinion and order addressing eight motions to dismiss the Direct and Indirect Complaints filed by various Defendants. *In re Potash Antitrust Litig.*, 2009 U.S. Dist. LEXIS 102623. In that opinion, the Court denied the motions to dismiss the Direct Complaint and granted in part and denied in part the motions to dismiss the Indirect Complaint.[5] *Id.* at *115. Belaruskali and BPC Minsk now file separate motions to dismiss, purportedly addressing arguments that were not covered in this Court's November 3 Order. (*See* R. 190, Belaruskali's Mot. to Dismiss; R. 222, BPC Minsk's Mot. to Dismiss.)

## I. Belaruskali's Motion

Belaruskali argues that both the Direct and Indirect Complaints should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(4) and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.* (R. 190, Belaruskali's Mot. at 1.) Specifically, Belaruskali claims that: (1) it is an agency of the Republic of Belarus, and is therefore immune from jurisdiction and suit as a foreign sovereign under the

---

[4] Indirect Purchaser Plaintiffs include Kevin Gillespie, Gordon Tillman, Feyh Farms Company, William H. Coaker, Jr. and David Baier. (R. 50, Indirect Compl.)

[5] The Court dismissed Count I, Count III, Count II except for the Michigan and Kansas claims, and Count IV except for the Iowa claim of the Indirect Complaint. *Id.* at *115.

FSIA; (2) Plaintiffs' service was insufficient; (3) the Court lacks personal jurisdiction over it; and (4) the Northern District of Illinois is not the proper venue for Plaintiffs to bring this action. (*Id.*)

### A. Subject Matter Jurisdiction

Belaruskali first claims that the Complaints should be dismissed with regard to it pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. (R. 190-2, Belaruskali's Mem. at 2.) Belaruskali argues that it is immune from this Court's jurisdiction pursuant to the FSIA. (*Id.*) If a complaint is formally sufficient but the contention is that there is no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The burden of proof on a 12(b)(1) motion is on the party asserting jurisdiction. *Id.*

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover*, 504 U.S. 607, 610 (1992); *see also Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347, 349 (7th Cir. 2007) (stating that the FSIA is the "sole source" of a district court's jurisdiction for a civil action against a foreign state). "Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India to the UN v. City of New York*, 551 U.S. 193, 197 (2007). A "foreign state" as defined by the FSIA includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" is any entity: "(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares

or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country." *Id.* at § 1603(b).

Belaruskali argues that it "unquestionably qualifies as an agency or instrumentality of the Republic of Belarus." (190-2, Belaruskali's Mem. at 9-10.) In support of its argument, Belaruskali submits a declaration by Valeriy Kirienko ("Kirienko"), Belaruskali's First Deputy General Director and Chief Engineer. (R. 190-3, Kirienko Decl.) In the declaration, Kirienko states that the government of Belarus established Belaruskali to explore, develop, and trade potash extracted from the mines of the Republic of Belarus. (*Id.* ¶¶ 4, 9.) Kirienko also explains that Belaruskali is organized under the laws of Belarus and is directly and entirely owned by the Republic of Belarus. (*Id.* ¶¶ 6, 7.) Although Plaintiffs "do not concede" that Belaruskali is a agency or instrumentality of the Republic of Belarus, they do not present any evidence to rebut Kirienko's declaration. (R. 196, Pls.' Belaruskali Resp. at 4.) Therefore, this Court finds that Belaruskali qualifies as a "foreign state" under the FSIA. *See* 28 U.S.C. § 1603.

Plaintiffs, however, argue that even if Belaruskali is a "foreign state" as defined by the FSIA, it is not immune from jurisdiction. (R. 196, Pls.' Belaruskali Resp. at 4.) Plaintiffs claim that Belaruskali engaged in "commercial activity," one of the statutory exceptions to immunity under the FSIA. (*Id.*) If the exception is applicable, this Court has subject matter jurisdiction over the claim and personal jurisdiction over Belaruskali. *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 743 (7th Cir. 2007); 28 U.S.C. § 1330.

4

As a threshold step in assessing Plaintiffs' reliance on the "commercial activity" exception, the Court must identify the particular conduct that serves as the basis for Plaintiffs' claims. *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993); *see also Haven v. Rzeczpospolita Polska*, 215 F.3d 727, 736 (7th Cir. 2000) ("the lawsuit must be 'based upon' the commercial activity that supports a waiver of sovereign immunity"). In this case, Plaintiffs allege that Belaruskali has a 50% interest in BPC Minsk through which it markets, sells, and distributes potash.[6] (R. 50, Indirect Compl. ¶ 20; R. 142, Am. Direct Compl. ¶ 25.) Plaintiffs claim that through BPC Minsk, Belaruskali coordinated supply restrictions and artificially increased global potash prices. (*Id.* ¶¶ 93, 94, 98, 99, 101, 103.) In addition, Plaintiffs allege that as part of a "joint reduction" in potash supply, Belaruskali cut exports by 50% in January of 2006 and that its "representatives" met with other Defendants through a "routine exchange program" and trade organization meetings. (*Id.* ¶¶ 75, 77, 78-79, 81-83, 92; *see also* R. 196, Pls' Belaruskali Resp. at 2-4.) The Court will now determine if these allegations are sufficient to usurp Belaruskali's sovereign immunity.

### 1. Allegations Based on Belaruskali's Relationship with BPC Minsk

As the majority of the claims against Belaruskali are premised on its relationship with BPC Minsk, Belaruskali first argues that such "bootstrap[ing]" fails to establish a jurisdictional basis under the FSIA. (R. 248, Belaruskali's Reply at 9-10.)

---

[6] Defendant Uralkali, a Russian stock company, is the other 50% interest holder in BPC Minsk. (R. 50, Indirect Compl. ¶ 19; R. 142, Am. Direct Compl. ¶ 24.) BPC Minsk has a wholly owned subsidiary, BPC Chicago, through which Plaintiffs allege the company "sold and distributed potash in the United States." (*Id.* ¶ 27.)

The FSIA clearly states that the commercial activity must be that "of the foreign state." 28 U.S.C. § 1605(a)(2). Moreover, the Supreme Court has recognized a presumption of "separate juridical [status]" for the instrumentalities of foreign states. *First National City Bank v. Banco Para el Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 624 & 629 (1983). In *Bancec*, the Supreme Court indicated that this presumption can be overcome in two instances: (1) when a "corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," or (2) when recognizing the separate status of a corporation "would work fraud or injustice." *Id.* at 629 (citation omitted). Although in *Bancec* jurisdiction was not the issue before the Supreme Court,[7] this presumption of juridical separateness has been extended to the jurisdictional analysis of the FSIA. *See, e.g., Doe v. Holy See*, 557 F.3d 1066, 1079 (9th Cir. 2009) (where the Ninth Circuit joined the D.C. and Fifth Circuits in concluding that it was appropriate to use the *Bancec* standard to determine whether the allegations were sufficient to permit jurisdiction over a foreign sovereign based on acts committed by affiliated domestic corporations). As the Ninth Circuit recognized "[a]s at the merits phase, failing to recognize the presumption of separate juridical status at the jurisdictional phase could 'result in substantial uncertainty over whether an instrumentality's assets would be diverted to satisfy a claim against the sovereign,' and might frustrate 'the efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration.'" *Id.* at 1079 (citing *Bancec*, 462 U.S. at 626).

---

[7] Instead, the Court was determining whether Bancec could be liable for the act of expropriation committed by the Cuban government. *Id.* at 617.

The standard used to determine whether the allegations are sufficient to permit jurisdiction over a foreign sovereign is "most similar to the 'alter ego' or 'piercing the veil' standards applied in many state courts to determine whether the actions of a corporation are attributable to its owners." *Id.* at 1080. For example, in *Doe*, the plaintiff alleged that he was sexually abused by a priest and brought suit against a foreign sovereign based, in part, on the actions of the sovereign's instrumentalities. *Id.* at 1069. The Ninth Circuit determined that even though the plaintiff alleged that the instrumentalities were "agents" of the sovereign, the complaint did not include allegations of the sovereign's "day-to-day, routine involvement" in the affairs of the instrumentalities and therefore the instrumentalities' actions could not be attributed to the sovereign. *Id.* at 1079-80 (citations omitted). Here, Plaintiffs do not claim that Belaruskali has any involvement in the operation of BPC Minsk. (*See* R. 50, Indirect Compl. ¶ 20; R. 142, Am. Direct Compl. ¶ 25.) The Complaints merely allege that Belaruskali has a 50% interest in BPC Minsk. (*Id.*) This does not indicate the extensive control necessary to attribute the actions of BPC Minsk to the Belarusian government. *See Bancec* 462 U.S. at 629. Accordingly, Belaruskali's 50% interest in BPC Minsk cannot serve as a jurisdictional basis to demonstrate an exception to Belaruskali's sovereign immunity under the FSIA.

### 2. Allegations Based on Belaruskali's Own Conduct

In addition to the allegations based on Belaruskali's relationship with BPC Minsk, Plaintiffs also allege that Belaruskali cut exports by 50% in January of 2006 and that its "representatives" met with other Defendants through a "routine exchange program" and trade

organization meetings. (*See* R. 142, Am. Direct Compl. ¶¶ 75, 77, 78-79, 81-83, 92.) The Court must now consider whether these allegations constitute "commercial activity."

Under the "commercial activity" exception: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" quite broadly as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).

In addition, the statute provides that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* Therefore, the question is not whether the foreign government is acting with a "profit motive" or to fulfill "uniquely sovereign objectives." *Republic of Argentina*, 504 U.S. at 614. Instead, "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"[8] *Id.* (citations omitted) (emphasis in

---

[8] The Supreme Court goes on to explain that "a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is 'commercial' activity, because companies can similarly use sales contracts to acquire goods." *Id.* at 614-15.

8

original); *see also Rush-Presbyterian-St. Luke's Medical Ctr. v. Hellenic Republic*, 877 F.2d 574, 578 (7th Cir. 1989) ("If a private person could have engaged in the same type of activity, then the sovereign has presumptively engaged in 'commercial activity' within the meaning of the FSIA; however, if no private party could have engaged in the challenged conduct, then the conduct is a sovereign act, and the foreign sovereign is immune from suit.").

"Contracts for the purchase or sale of good or services are presumptively 'commercial activities.'" *Id.* Plaintiffs argue that by selling potash, Belaruskali "acts as a private player" in the market and therefore "engages in commercial activity." (R. 196, Pls.' Belaruskali Resp. at 6-7.) The remaining allegation, however, is not based on potash sales but on Belaruskali's decision to reduce its potash exportation.[9] (R. 50, Indirect Compl. ¶ 74; R. 142, Am. Direct Compl. ¶ 92.) Such decisions are sovereign. *See Rush-Presbyterian*, 877 F.2d at 578 ("natural resources, to the extent they are 'affected with a public interest,' are goods in which only the sovereign may deal"); *see also MOL, Inc. v. Bangladesh*, 736 F.2d 1326, 1329 (9th Cir. 1984), *cert denied*, 469 U.S. 1037 (1984) (determining that a country's right to regulate imports and exports and its own

---

[9] Plaintiffs make no argument that Belaruskali's participation in trade organizations and exchanges invokes a statutory exception to sovereign immunity. (*See* R. 196, Pls.' Belaruskali Resp.)

natural resources are "uniquely sovereign function[s]," not commercial activity).[10] Accordingly, this Court finds that the allegations related to Belaruskali's conduct is based on "sovereign" rather than "commercial" activity. *See Republic of Argentina*, 504 U.S. at 614. As such, this Court has no jurisdiction over Belaruskali's decision to reduce its potash exports and thus grants Belaruskali's motion to dismiss.[11]

## II. BPC Minsk's Motion

Next, BPC Minsk moves to dismiss the Direct Complaint arguing that Plaintiffs' claims related to sales of Belarusian potash are barred by the act-of-state doctrine.[12] (R. 226, BPC Minsk's Mem. at 1.) A motion to dismiss based on the act-of-state doctrine raises a Rule

---

[10] Plaintiffs cite *Globe Nuclear Services & Supply GNSS, Ltd. v. AO Techsnabexport*, 376 F.3d 282, 291 (4th Cir. 2004) for the proposition that not all conduct involving the exportation of a country's natural resource is unquestionably sovereign. (*See* R. 196, Pls.' Belaruskali Resp. at 7-9.) However, in *Globe*, the sovereign entity entered a contract to supply the plaintiff with its already extracted natural resources. 376 F.3d at 291. Therefore, the Fourth Circuit determined that the sovereign entity "participated in the trade of [the natural resource] in the manner of a private party, and thus engaged in 'commercial activity' within the meaning of the FSIA." *Id.* Plaintiffs have not alleged that Belaruskali similarly acted as a "private party" in this case. (*See* R. 50, Indirect Compl.; R. 142, Am. Direct Compl.)

[11] Because the allegation is based on sovereign activity and Belaruskali has immunity, the Court need not consider if the action was significantly related to the United States. *See* 28 U.S.C. § 1605(a)(2). In addition, the Court need not address the other arguments in Belaruskali's motion. (*See* R. 190, Belaruskali's Mot.)

[12] Again, BPC Minsk is a joint venture between Uralkali, a Russian stock company in Moscow, and Belaruskali. (*See* R. 142, Am. Direct Compl. ¶¶ 24, 26.) BPC Minsk, however, asserts that "[t]his motion does not pertain to the Uralkali distribution." (R. 226, BPC Minsk's Mem. at 2 n.4.) Accordingly, if this Court were to dismiss the claims related to the Belaruskali distribution, BPC Minsk would remain a defendant in this litigation with regard to the Uralkali distribution.

10

12(b)(6) objection.[13] *See Lamb v. Phillip Morris*, 915 F.2d 1024, 1026 n.3 (6th Cir. 1990) (citation omitted) ("Because the act of state doctrine imposes no limitations upon the jurisdiction of the federal courts," it raises "a Rule 12(b)(6) objection, not a jurisdictional defect."). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"The act-of-state doctrine is a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws." *Nocula v. UGS Corp.*, 520 F.3d 719, 727-28 (7th Cir. 2008) (citation omitted). The doctrine is applicable where "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 404-05 (1990). Accordingly, the doctrine is only invoked when the court must decide the effect of an *official action* by a *foreign sovereign*. *Id.* (emphasis added).

Plaintiffs argue that the act-of-state doctrine is not implicated because the validity of a foreign act is not at issue in this case. (R. 255, Pls.' BPC Minsk Resp. at 6-14.) While BPC Minsk contends that the doctrine is applicable because its "conduct with respect to *Belarusian potash* can be unlawful *only if* the underlying export supply restrictions imposed by the Republic

---

[13] Indeed, BPC Minsk brings its motion pursuant to Rule 12(b)(6). (R. 222, BPC Minsk's Mot. to Dismiss.)

11

of Belarus are themselves unlawful." (R. 282, BPC Minsk's Reply at 7.) In support of its argument, BPC Minsk submits a declaration by Sergey Ivanovich Rak ("Rak"), the chief legal counsel for the Belarusian Chamber of Commerce and Industry.[14] (R. 224, English Translation of Rak Decl. at ¶ 4.) In his declaration, Rak addresses the importance of potash to the Republic of Belarus and the legal and regulatory scheme governing its ownership, production, and export. (*Id.* at ¶ 7.) Rak indicates that the potash industry represented about 5% of the Republic of Belarus' gross domestic product and about 10% of the country's export earnings from 2003 to 2008. (*Id.* at ¶ 9.) In addition, Rak states that the Belarusian government establishes annual decrees that set forth the minimum export price and quantity restrictions for both domestic use and the exportation of potash and that the government grants BPC Minsk the exclusive right to sell potash outside the country. (*Id.* at ¶¶ 10, 32, 35, 38.)

In *United States of America v. Labs of Virginia*, 272 F. Supp. 2d 764, 772 (N.D. Ill. 2003), this Court explained that "the fact that [a] case involves export decisions does not automatically warrant application of the act of state doctrine." For the doctrine to apply, defendants must show that the export decisions, which serve as a basis for the complaint, were

---

[14] The Court can consider BPC Minsk's submission regarding the application of foreign law without converting the Rule 12(b)(6) motion into a motion for summary judgment because the determination of foreign law is treated as a ruling on a question of law. *See* Fed. R. Civ. P. 44.1 (allowing a court to consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" when determining foreign law); *see also Figueiredo Ferraz Consultoria e Engenharia de Projeto Ltd. v. Republic of Peru*, 655 F. Supp. 2d 361, 367-68 (S.D.N.Y. 2009). Although Plaintiffs argue that Rak's opinion is biased, they have not presented any evidence to rebut his declaration. (*See* R. 255, Pls.' BPC Minsk Resp. at 5.)

12

officially mandated by the foreign sovereign. *See, e.g., In re Refined Petroleum Prods. Antitrust Litig.*, 649 F. Supp 2d 572, 587-88 (S.D. Tex. 2009) (finding that the collusive acts for which plaintiffs sought redress were agreements made by foreign sovereigns to restrict their productions and barred by the act-of-state doctrine); *Trugman Nash, Inc. v. New Zealand Dairy Bd.*, 954 F. Supp. 733, 736 (S.D.N.Y. 1997) (where the court interpreted the New Zealand Dairy Board Act as "mandating" the actions alleged in plaintiffs' complaint and therefore the suit was barred by the act-of-state doctrine).

In this case, Plaintiffs allege that along with the other Defendants, BPC Minsk engaged in joint supply restrictions, suspensions, and spot price increases. (*See, e.g.*, Am. Direct Compl. ¶¶ 94, 98-99, 101, 104, 143.) Although BPC Minsk argues that all of these alleged acts were "mandated" by the government of Belarus, Rak's declaration merely states that the Belarusian government granted BPC Minsk an exclusive right to export the country's potash and that the Belarusian government set minimum price and quantity restrictions on the exportation. (*See* R. 282, BPC Minsk's Reply at 7; R. 224, English Translation of Rak Decl. at ¶¶ 10, 32, 35, 38.) Rak's declaration, however, does not necessitate the conclusion that the alleged conduct was compelled by an official act of the Republic of Belarus. (*See id.*) Construing the allegations in the light most favorable to Plaintiffs, even if BPC Minsk was operating under supply and price restrictions mandated by the Republic of Belarus, it is possible that BPC Minsk independently engaged in the alleged coordinated supply restrictions and price manipulations to increase the price of potash beyond competitive levels. In such a case, the act-of-state doctrine would be

inapplicable. *See In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1254 n.21 (7th Cir. 1980) (pointing out that the act-of-state doctrine requires the foreign sovereign's action and is not a defense when the sovereign "simply approves or condones certain conduct"); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 59-60 (S.D.N.Y. 1994) (determining that the act-of-state doctrine did not apply because the complaint did not allege conduct that was "compelled" or "necessitated" by the U.K. government). As such, this Court is not convinced that this is a situation where we would be forced to inquire into official acts and conduct of the Republic of Belarus. *See In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 559 (E.D.N.Y. 2008) (denying a motion to dismiss where the record was "simply too ambiguous to foreclose further inquiry into the voluntariness of defendants' actions"). Accordingly, BPC Minsk's motion to dismiss is denied.

## CONCLUSION

For the reasons stated herein, Belaruskali's motion (R. 190) is GRANTED and BPC Minsk's motion (R. 222) is DENIED. Belaruskali is hereby dismissed from this lawsuit. The remaining parties to this litigation are directed to continue with discovery under the plan stipulated in previous orders. *See In re Potash Antitrust Litig.*, 2009 U.S. Dist. LEXIS 102623, at *115-16; *see also* R. 269, Min. Order; R. 281, Standing Order.

Entered: _____

Judge Ruben Castillo
United States District Court

Dated: **February 23, 2010**

14