**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: POTASH ANTITRUST LITIGATION | MDL Docket No. 1996<br>No. 08-C-6910 |
| *THIS DOCUMENT APPLIES TO:*<br>*ALL INDIRECT PURCHASER ACTIONS* | Judge Ruben Castillo |

**INDIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT WITH JSC URALKALI ("URALKALI") AND JSC
SILVINIT ("SILVINIT")**

Indirect Purchaser Class Plaintiffs, through their counsel, move the Court pursuant to

Federal Rule of Civil Procedure 23(c) and (e) for an Order in the form attached hereto

preliminarily approving a proposed settlement with JSC Uralkali (**"Uralkali"**) and JSC Silvinit

(**"Silvinit"**). In support of this Motion, Indirect Purchaser Plaintiffs rely upon and incorporate

by reference herein the facts and legal arguments set forth in the accompanying Memorandum of

Law. Attached hereto are the following Exhibits in support of this Motion and referenced in the

Memorandum of Law:

Exhibit A-Settlement Agreement dated September 20, 2012

Exhibit B- Order Granting Class Certification And Preliminary Approval Of Class Action
Settlement

Exhibit C-Long Form Notice to the Class

Exhibit D-Summary Notice to the Class

Exhibit E-Proposed Final Order and Judgment of Class Action

Uralkali and Silvinit consent to this motion and to the entry of the proposed order.

Dated: November 26, 2012

Respectfully submitted,

Plaintiffs


By: _____*s/Marvin A. Miller*_____
Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400


*s/Christopher Lovell*
Christopher Lovell
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway
Suite 501
New York, NY
(212) 608-1900

Interim Lead Counsel for Indirect Purchaser
Plaintiffs

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: POTASH ANTITRUST LITIGATION (No. II) | *MDL Docket No. 1996 (Civil Action No. 1:08-cv-6910)* |
| *THIS DOCUMENT APPLIES TO:* *ALL INDIRECT PURCHASER ACTIONS* | *Hon. Ruben Castillo* |

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 20th day of September, 2012 by and between JSC Uralkali("Uralkali") and JSC Silvinit ("Silvinit" and together with Uralkali, the "Settling Defendants") and the Indirect-Purchaser Plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of indirect purchasers of potash ("the Class"), as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Potash Antitrust Litigation (No. II)*, MDL Docket No. 1996 (N.D. Ill.) (the "Action") in the United States District Court for the Northern District of Illinois before the Hon. Ruben Castillo (the "Court") on their own behalf and on behalf of the Class against, among others, Settling Defendants, JSC Belarusian Potash Company and BPC Chicago L.L.C., former distributors for Uralkali (collectively "BPC"), and JSC International Potash Company, former exclusive distributor for Silvinit ("IPC");

WHEREAS, Plaintiffs allege that Settling Defendants, BPC and IPC participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of potash at artificially high levels in violation of Section 1 of the Sherman Act and various State laws alleged in Plaintiffs' Consolidated Amended Complaint at the time this Agreement is signed;

WHEREAS, Settling Defendants, BPC and IPC deny Plaintiffs' allegations and have asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Settling Defendants, BPC and IPC according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Settling Defendants, despite their belief that they are not liable for the claims asserted and have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Settling Defendants, BPC, and IPC, based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, Settling Defendants, BPC or IPC, subject to the approval of the Court, on the following terms and conditions:

A.     Definitions.

1.     For purposes of this Agreement, "the Class" and "Class Period" are as defined in Plaintiffs' Amended Consolidated Complaint at the time this Agreement is signed. The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.     For purposes of this Agreement, "potash" shall have the meaning as set forth in the Plaintiffs' Amended Consolidated Class Action Complaint at the time this Agreement is signed.

3.     "Releasees" shall refer to (i) Uralkali and to all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates, including, but not limited to, Fertexim Ltd., Uralkali Trading SA, Uralkali Trading (Gibraltar) Ltd. and UKT Chicago, and (ii) Silvinit, and to all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates, including, but not limited to, IPC, and all of its respective past and present, direct and indirect, parents, subsidiaries, and (iii) JSC Belarusian Potash Company and all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates, including, but not limited to, BPC Chicago, LLC and RUE PA Belaruskali; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Releasees" does not include any defendant in the Action other than Uralkali, Silvinit, BPC Chicago, LLC, JSC Belarusian Potash Company, and IPC. For avoidance of any doubt, Plaintiffs' claims against Potash Corporation of Saskatchewan Inc., PCS Sales (USA), Inc., Mosaic Company, Mosaic Crop Nutrition L.L.C., Agrium Inc., and Agrium U.S. Inc., shall not be released or otherwise affected by this Release.

4.     "Class Member" means each member of the Class who has not timely elected to be excluded from the Class

5.     "Releasors" shall refer to the Indirect-Purchaser Plaintiff Class representatives and the Indirect-Purchaser Plaintiff Class Members, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants,

3

representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons,

partnerships or corporations with whom any of the former have been, or are now,

affiliated, and the predecessors, successors, heirs, executives, administrators and assigns

of any of the foregoing.

6.      "The Settlement Fund" shall be $2,750,000 United States Dollars as

specified in Paragraph 15 plus accrued interest on said deposits set forth in Paragraph 16.

7.      "Co-Lead Counsel" shall refer to the law firm of:

> Marvin A. Miller
> MILLER LAW LLC
> 115 S. LaSalle Street, Suite 2910
> Chicago, IL 60603
>
> Christopher Lovell
> LOVELL STEWART HALEBIAN & JACOBSON LLP
> 61 Broadway
> Suite 501
> New York, NY

B.      Approval of this Agreement and Dismissal
         of Claims Against Settling Defendants, BPC and IPC.

8.      Plaintiffs and Settling Defendants shall use their best efforts to effectuate

this Agreement, including cooperating in seeking the Court's approval for the

establishment of procedures (including the giving of class notice under Federal Rules of

Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with

prejudice of the Action as to the Releasees only.

9.      Plaintiffs shall submit to the Court no later than 30 days following the

execution of this Agreement a motion or motions, to be joined in by the Settling

Defendants, for preliminary approval of the settlement and certification of a settlement

class as described in Paragraph 1 above solely for the purposes of this settlement, and for

approval of a form of notice to be disseminated to all Class Members identified by

Plaintiffs (the "Motion") (with the understanding that such notice, subject to the approval

of the Court, shall be by publication and will be carried out as soon as is reasonably

practicable, or at the earliest of (i) the preliminary approval of a settlement with a

defendant other than the Settling Defendants by which there is created a settlement fund

to pay for the costs of publication notice, or (ii) 120 days after the Court's Preliminary

Approval of this Agreement.). If notice to the Class is given jointly with any other

settling defendant, for purposes of Paragraph 18 below, the costs of notice and claims

administration shall be prorated with any other such defendant based on their respective

settlement amounts. The Motion shall include (i) a proposed form of, method for, and

time for dissemination of notice; and (ii) a proposed form of order and final judgment.

The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Settling

Defendants before submission of the Motion, with the understanding that, among other

things, notice of the settlement shall be by (i) appropriate notice by publication in any

settlement-related press release or other media, including on websites, of Co-Lead

Counsel, and/or their notice administrator, the content of which shall be mutually agreed

on by counsel for Settling Defendants and Co-Lead Counsel and as required by the Court,

and (ii) if possible, practicable and reasonable, by regular mail or email to all Class

Members who have been identified at the time that notice is to be disseminated. All

expenses for dissemination of notice shall be paid from the Settlement Fund subject to

Paragraph 18(a). The Motion shall recite and ask the Court to find that the method of

disseminating notice of settlement to all members of the Class who have been identified

5

at the time that notice is required to be disseminated to the Class, plus any publication notice deemed by Co-Lead Counsel to be appropriate, constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process.

10.    Plaintiffs shall seek, and Settling Defendants will not object unreasonably to the entry of, an order and final judgment, the text of which Plaintiffs and Settling Defendants shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

    a.    certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

    b.    as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

    c.    as to the Settling Defendants, BPC and IPC, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

6

    d.      reserving exclusive jurisdiction over the settlement and this

                 Agreement, including the administration and consummation of this

                 settlement, to the Court; and

    e.      determining under Federal Rule of Civil Procedure 54(b) that there

                 is no just reason for delay and directing that the judgment of

                 dismissal as to the Settling Defendants, BPC and IPC shall be

                 final.

    f.      The Final Judgment shall not dismiss in any way or manner

                 Plaintiffs' claims against Potash Corporation of Saskatchewan Inc.,

                 PCS Sales (USA), Inc., Mosaic Company, Mosaic Crop Nutrition

                 L.L.C., Agrium Inc., and Agrium U.S. Inc.

11.    This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Settling Defendants, BPC and IPC against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Settling Defendants, BPC and IPC described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Settling Defendants, BPC and IPC have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal

7

Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Plaintiffs and Settling Defendants have executed this Agreement, Plaintiffs and Settling Defendants shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 16(h), 27, or 28 of this Agreement.

12.    Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Settling Defendants, BPC, IPC (or the other Releasees) or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Settling Defendants, BPC, IPC (or the other Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the Settling Defendants shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.    Release, Discharge, and Covenant Not to Sue.

13.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in

Paragraph 15 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Releasees (or any of them) concerning the potash that is the subject of the Plaintiffs' Amended Consolidated Complaint up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, other than claims for product defect or personal injury or breach of contract arising in the ordinary course of business. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. However, Plaintiffs shall be entitled to seek enforcement of the terms and conditions of this Agreement unless this Agreement is terminated.

14. In addition to the provisions of Paragraph 13 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all

provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 13 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.    Settlement Amount.

15.    Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, defendant Uralkali shall pay the Settlement Amount of $2,750,000 in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 16 of this Agreement (the "Escrow Account") forty-five (45) days after execution of this Agreement. If the payment is not made timely, Plaintiffs shall have the right to terminate this Agreement or seek to enforce its terms and conditions after providing notice to Settling Defendants' counsel of such

10

failure to pay, and the expiration of a ten (10) day period for Settling Defendants to cure such default.

16.     Escrow Account.

(a)     The Escrow Account will be established at a banking institution chartered pursuant to the National Bank Act to be determined by Plaintiffs' Co-Lead Counsel subject to the reasonable approval of Uralkali, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Co-Lead Counsel and Uralkali. The Escrow agreement shall contain language providing for the entity retained to administer claims by Indirect Purchaser claimants in this Action (the "Claims Administrator") to ensure that each qualified claimant who receives a payment from the Settlement Fund established by this and only this Agreement with Uralkali is a tax resident of the United States of America, and to be responsible to provide Uralkali, on its first demand, any documentation necessary to prove that the recipient of the payment from the Uralkali Settlement Fund is a tax resident of the United States of America. Any such demand for proof by Uralkali shall not be unreasonably made. Any withholding of taxes required by the Russian government of any settlement payment to a claimant shall be considered Taxes (as defined below) payable by the Settlement Fund from that claimant's share of payment, and Uralkali shall be reimbursed by the Settlement Fund, from such claimant's share, for any such taxes it is required to withhold and pay to the Russian budget. Such escrow is to be administered under the Court's continuing supervision and control. The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the

11

United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

     (b)    All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

     (c)    Plaintiffs and Uralkali agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 16, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

     (d)    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including

12

without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described in Paragraph 16 (d)) shall be consistent with Paragraph 16(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 16 (f) hereof.

(e)     All (i) taxes (including any estimated taxes, interest or penalties, as well as any Russian withholding taxes that are imposed on Uralkali notwithstanding the efforts of the Claims Administrator and Uralkali to demonstrate to the Russian tax authorities that such withholding is not required) relating to the Settlement Fund, including any taxes or tax detriments that may be imposed upon Uralkali or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 16(d) through 16(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 16(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(f)     Neither Uralkali nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated

(notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither Settling Defendants nor any other Releasee is responsible nor shall they have any liability therefor. Plaintiffs and Settling Defendants agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 16(d) through 16(f).

(g)    If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Paragraph 1, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Uralkali into the Settlement Fund (other than costs expended in accordance with Paragraph 18(a)) shall be returned to Uralkali from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

17.    Exclusions.

(a)    Any person seeking exclusion from the Class must file a timely written request for exclusion as provided in this Paragraph 17(a). Any person who files such a request shall be excluded from the Class and shall not have any rights with respect to this settlement. A request for exclusion must be in writing and state: (a) the name, address, and phone number of the Class Member seeking exclusion; (b) all trade names or business names and addresses that the Class Member has used, as well as any parents, subsidiaries, or affiliates that have indirectly purchased potash in the United States during

the Class Period directly from Defendants; (c) the name of the Action (*In Re Potash Antitrust Litigation (No. II), MDL Docket No. 1996 (N.D. Ill.)*); and (d) provide a signed statement that "I/we hereby request that I/we be excluded from the proposed settlement with JSC Uralkali and JSC Silvinit in *In Re Potash Antitrust Litigation (No. II), MDL Docket No. 1996 (N.D. Ill.)*." The request must be mailed to Co-Lead Counsel and counsel for Settling Defendants at the address provided in the class notice and postmarked no later than forty-five (45) days prior to the date set for the fairness hearing or any other date set by the Court. A request for exclusion that does not include all of the foregoing information, that does not contain the proper signature, that is sent to an address other than the one designated in the class notice, or that is not sent within the time specified, shall be invalid, and the person(s) serving such an invalid request shall be Class Member(s) and shall be bound by this Settlement Agreement, if approved. Co-Lead Counsel shall immediately forward complete copies of all requests for exclusion, as they are received, to Settling Defendants' Counsel.

(b)     Co-Lead Counsel shall, within ten (10) business days after the Court-ordered deadline for timely requests for exclusion from the Class, cause to be provided to Settling Defendants' Counsel a list of those Class Members who have timely excluded themselves from the Class.

(c)     With respect to any potential Class Member who requests exclusion from the Class, Settling Defendants, BPC and IPC reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class member

is an indirect purchaser of any allegedly price-fixed product and/or has standing to bring any claim.

18.   Payment of Expenses.

(a)   Uralkali agrees to permit use of a maximum of $250,000 of the Settlement Fund towards notice to the Class and the costs of administration of the Settlement Fund set forth in Paragraph 15. Funds expended pursuant to this Paragraph 18(a) for notice and claims administration following preliminary approval of the settlement may be paid without additional approval from the Court, and a maximum of $250,000 in notice and administration expenses are not recoverable if this settlement does not become final or is terminated. Other than as set forth in this Paragraph 18(a), neither Uralkali nor any of the other Releasees under this Agreement, shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs. The Claims Administrator shall determine through the audit process of claims filed that claimants qualify as Class Members and tax residents of the United States of America, and shall provide such documentation to counsel for the parties and the Court as necessary.

(b)   If Co-Lead Counsel enter into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Co-Lead Counsel shall use their reasonable best efforts to provide a single notice to prospective Class Members of all of the settlements. Co-Lead Counsel shall also determine if it is reasonably practical to

conserve costs by combining any newspaper, internet or other publication notice in this action with any such notice to be ordered in the contemporaneous settlement of the direct purchaser class action by the Settling Defendants.

E.     The Settlement Fund.

19.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Releasees of all Released Claims, and shall have no other recovery against Settling Defendants or any Releasee.

20.     After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in Paragraph 18(a) of this Agreement.

21.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. The Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

22.     Class Counsel's Attorneys' Fees And Reimbursement of Expenses.

(a)     Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund for: (i) an award of attorneys' fees (ii) reimbursement of expenses and costs incurred in

connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"); and (iii) an award(s) of incentive payment to the class representatives for their time and expenses incurred in the prosecution of the Action . Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. After this Agreement becomes final within the meaning of Paragraph 11, any Fee and Expense Award shall be paid to Co-Lead Counsel within ten (10) business days, absent the Court's direction to the contrary. Subject to the Court's approval, Co-Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

18

(d)    Neither Settling Defendants, BPC, IPC nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)    Neither Settling Defendants, BPC, IPC nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.    Cooperation.

23.    Settling Defendants shall reasonably cooperate with Co-Lead Counsel as set forth in Paragraphs 23(a)-(h). Settling Defendants' cooperation obligations shall only apply to Releasors who act with, by or through Co-Lead Counsel pursuant to this Agreement in the Action. All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. Any attorney proffers, witness interviews, or depositions, provided pursuant to the below obligations, will be coordinated where possible with the same attorney proffers, witness interviews, or depositions to be provided in the contemporaneous settlement of the direct purchaser class action by the Settling Defendants.

(a)    Within sixty (60) days after the execution of this Agreement, on a date and location to be agreed upon among Co-Lead Counsel and Settling Defendants' Counsel, Settling Defendants' Counsel will make themselves available in the United States for one (1) meeting (such meeting may last one day) to provide an attorney's proffer of facts known to them

19

regarding: (i) allegations of meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash, including, without limitation, information about the expected testimony of any employees of Settling Defendants with knowledge (if any) of any such meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash; (ii) documents, including electronically stored information ("ESI"), (if any) relating to any such meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash, (iii) Settling Defendants' witnesses (if any) regarding any such meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash; and (iv) to the extent known to Settling Defendants, information about IPC and BPC regarding (if any) their meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash; provided that such information described in (i)-(iv) above is not covered by privilege or other protections available under any applicable United States law. Beginning thirty (30) days after the completion of production of documents in Paragraph 23(c), Settling Defendants' counsel will make themselves available for one (1) additional meeting (such meeting may last one day) to provide an attorney's proffer of facts known to them regarding the information described in (i)-(iv) above. Settling Defendants' counsel will make themselves available for

20

reasonable follow-up conferences (by telephone or in-person in the United States, as counsel for the parties hereto may agree) including, but not limited to, identifying individuals, such as current or former employees, who may provide information or potential testimony relevant to any alleged meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash.

(b)     Within sixty (60) days of the execution of this Agreement, Settling Defendants shall identify and produce relevant documents including ESI and data, to the extent reasonably available, sufficient to show sales, prices, capacity, and production of potash sold worldwide, including in the United States.

(c)     Within ninety (90) days of the execution of this Agreement, Settling Defendants shall identify and produce documents, including ESI, (if any) in the possession of or reasonably accessible to Settling Defendants (including documents and ESI of two (2) former employees of BPC who are current employees of Uralkali and UKT Chicago) related to meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash (if any) , including, but not limited to: (i) all emails sent to or received from a domain controlled by any alleged co-conspirator (other than a Releasee) during the Class Period related to meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash (if any); or (ii)

21

internal communications documents and other reports referring to any meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash (if any). Settling Defendants shall begin production of such documents, including ESI, on a rolling basis after execution of the Agreement.

(d)     Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Settling Defendants' counsel as strictly confidential, except as may be required by the Federal Rules of Civil Procedure or order of the Court; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action. The parties and their counsel further agree that any statements made by Settling Defendants' counsel in connection with and/or as part of this settlement, including the attorney's proffer(s) referred to in Paragraph 23 above, shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind.

(e)     Upon reasonable notice after the production of information in Paragraph 23(c), Settling Defendants agree to use reasonable efforts to make available for interviews, depositions (or, if Plaintiffs' Co-Lead Counsel and Counsel for Settling Defendants so agree, in lieu of depositions, the preparation of declarations and/or affidavits), and testimony at hearings or trial, via videoconference or at a mutually agreed

upon location or locations (except for testimony at hearings or trial, which shall be at the United States Courthouse of the United States District Court for the Northern District of Illinois), and at Settling Defendants' expense up to a total of nine (9) persons for Settling Defendants, which may consist of current directors, officers, and/or employees of Settling Defendants (or former directors, officers and/or employees of Settling Defendants, if such former employees agree they would cooperate), and including two (2) former employees of BPC who are current employees of Uralkali and UKT Chicago, whom Co-Lead Counsel, in consultation with counsel for Settling Defendants, reasonably and in good faith believe to have knowledge regarding the alleged meetings, communications, cooperation or agreements with competitors during the Class Period concerning potash. Interviews shall be limited to a total of six (6) hours over one day per interview, except in the event any interview requires the services of a translator, any such interview may be extended to a total of 8 hours. Co-Lead Counsel and counsel for Settling Defendants may agree to conduct overseas interviews telephonically or by videoconference. Depositions shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure and the Court's orders, regardless of the location at which they take place or the citizenship of the deponent. Settling Defendants agree to bear reasonable travel expenses incurred by each of their respective witnesses pursuant to this Paragraph. Settling

23

Defendants also agree to use good faith efforts to obtain the cooperation of each of their respective former directors, officers and/or employees, as part of the total of nine (9) witnesses identified above, if Co-Lead Counsel asks to include such individuals within the list of nine (9).

(f)     Upon reasonable notice after the production of information in Paragraph 23(b), Settling Defendants agree to provide one or, if necessary, more witnesses for deposition, and if necessary at trial, to provide information, to the best of their ability, with respect to Settlement Defendants' data regarding sales, prices, production, capacity and cost of potash.  In addition, Settling Defendants agree to provide one or, if necessary, more witnesses to establish in discovery, and if necessary at trial, to the best of their ability, (i) the foundation of any document or data produced by Settling Defendants that Co-Lead Counsel identify as necessary for summary judgment and/or trial; and (ii) the corporate structures of Settling Defendants and those of any respective parents, subsidiaries and affiliates, including those that market and/or sell potash, and the channels for their respective sales of potash.

(g)     If any document including ESI which is protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be destroyed and/or returned to counsel for Settling Defendants, and its production shall

24

in no way be construed to have waived any privilege or protection attached to such document.

(h)     Plaintiffs and Co-Lead Counsel agree they will not use the information provided by Settling Defendants, or the Releasees or their representatives under this Paragraph for any purpose other than the pursuit of the Action, and will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by law.  Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

24.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, including certification of the Class as defined in Paragraph 1, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the Releasees, their counsel, or any individual made available by Settling Defendants pursuant to the cooperation provisions of Paragraph 23.

25.     Except as provided in Paragraph 23 of this Agreement, Settling

Defendants, BPC and IPC need not respond to formal discovery from Plaintiffs or

otherwise participate in the Action during the pendency of the Agreement. Neither

Settling Defendants nor Plaintiffs shall file motions against the other during the pendency

of the Agreement, except as may be necessary to resolve any disputes pertaining to this

Agreement. In the event that the Agreement is not approved by the Court, or otherwise

terminates, Settling Defendants and Plaintiffs will each be bound by and have the benefit

of any rulings made in the Action to the extent they would have been applicable to

Settling Defendants or Plaintiffs had Settling Defendants been participating in the Action.

26.     Settling Defendants and Plaintiffs agree that the terms of this Agreement

may be disclosed publicly or to any other defendant upon execution.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

27.     If the Court refuses to approve this Agreement or any part hereof,

including if the Court does not certify a settlement class in accordance with the specific

class definition set forth in Paragraph 1, or if such approval is modified or set aside on

appeal, or if the Court does not enter the final judgment provided for in Paragraph 10 of

this Agreement, or if the Court enters the final judgment and appellate review is sought,

and on such review, such final judgment is not affirmed in its entirety, then Uralkali and

the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement

in its entirety. Written notice of the exercise of any such right to rescind shall be made

within thirty (30) days of such triggering event and in accordance with the terms of

Paragraph 38. A modification or reversal on appeal of any amount of Class Counsel's

fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

28.     In the event that this Agreement does not become final, or this Agreement otherwise is terminated pursuant to Paragraph 27, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Uralkali less only disbursements made in accordance with Paragraph 18 of this Agreement. Settling Defendants, BPC and IPC reserve all of their rights and defenses if this Agreement does not become final.

29.     Further, and in any event, Plaintiffs and Settling Defendants agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Settling Defendants, BPC, IPC, or the other Releasees, or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

30.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide for, through this Agreement, a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

31.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the final approval of this Settlement Agreement, will be given to Class Members.

H.     Miscellaneous.

32.     This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Amended Consolidated Class Action Complaint or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class. The Settling Defendants', BPC's and IPC's sales to the Class shall not be removed from the Action.

33.     The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Settling Defendants. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Illinois without regard to its choice of law or conflict of laws principles.

34.     This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Settling Defendants pertaining to the settlement of the Action against Settling Defendants, BPC and IPC, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Settling Defendants in connection herewith. This

Agreement may not be modified or amended except in writing executed by Plaintiffs and Settling Defendants, and approved by the Court.

35.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs, Settling Defendants, BPC and IPC. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Co-Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors. The Releasees (other than Settling Defendants which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

36.    This Agreement may be executed in counterparts by Plaintiffs and Settling Defendants, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

37.    Neither Plaintiffs nor Settling Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

38.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

39.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

*[signatures to follow on the next page]*

Dated: September 20, 2012

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400

Christopher Lovell
LOVELL STEWART HALEBIAN &
JACOBSON LLP
61 Broadway, Suite 501
New York, NY
(212) 608-1900

*Lead Counsel for the Class*

JEFFREY L. KESSLER
E:mail: JKessler@winston.com
/s/ PAUL VICTOR
E:mail: PVictor@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for JSC Uralkali and JSC Silvinit*

Dated: September 20, 2012

_____

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400


Christopher Lovell
LOVELL STEWART HALEBIAN &
JACOBSON LLP
61 Broadway, Suite 501
New York, NY
(212) 608-1900


*Lead Counsel for the Class*



_____

JEFFREY L. KESSLER
E:mail: JKessler@winston.com
A. PAUL VICTOR
E:mail: PVictor@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for JSC Uralkali and JSC Silvinit*

# EXHIBIT  B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: POTASH ANTITRUST LITIGATION (No. II) | MDL Docket No. 1996 (Civil Action No. 1:08-cv-6910) |
| THIS DOCUMENT APPLIES TO: ALL INDIRECT PURCHASER ACTIONS | Judge Ruben Castillo |

## ORDER GRANTING CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This cause having come on for preliminary approval of a settlement agreement between Plaintiffs and certain Defendants, and the Court having considered the Motion for Preliminary Approval of Class Action Settlement, the Settlement Agreement, the pleadings and other papers filed in this action, and the statements of counsel and the parties, hereby makes the following findings:

WHEREAS, a consolidated class action is pending before the Court entitled *IN RE: POTASH ANTITRUST LITIGATION (No. II), MDL Docket No. 1996 (Civil Action No. 1:08-cv-6910)* and includes the separate Indirect Purchaser Plaintiffs' complaints, actions, and claims as: *Gillespie v. Agrium Inc., et. al.,* Case No. 1:08-cv-5253 (filed September 15, 2008 and assigned to this Court); *Tilman v. Agrium Inc., et.al.,* 1:08-cv-5255 (N.D.Ill.), *Feyh Farm Co. et. al. v. Agrium Inc., et.al.,* Case No. 1:08-cv-5257 (N.D.Ill.); and *Kraft Chem. Co. v. Agrium Inc., et.al.,* Case No. 1:08-cv-5635 (N.D.Ill.), which were consolidated on the parties' motion on October 14, 2008, and made part of the Amended Consolidated Class Action Complaint;

WHEREAS, the Court has received the Indirect Purchaser Settlement Agreement dated as of September 20, 2012 (the "Settlement Agreement"), that has been entered into by Plaintiffs and Defendants JSC Uralkali and JSC Silvinit ("Settling Defendants");

WHEREAS, the Court has before it a motion for certification of a settlement class, for appointment of Lead Counsel for the settlement class, for preliminary approval of a proposed settlement between Plaintiffs and Settling Defendants, and for approval of the form of notice to the Settlement Class.

**ORDERED, ADJUDGED AND DECREED:**

Preliminary Approval of Settlement Agreement

1.     Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.     This Court has jurisdiction over the subject matter of the Action (and all actions and proceedings consolidated in the Action), and over Lead Plaintiffs, all Class Members and Settling Defendants.

3.     The Court finds, subject to final determination following a hearing on notice to potential class members, that the proposed settlement with JSC Uralkali and JSC Silvinit set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that notice of the settlement should be provided to the Settlement Class (defined in paragraph 4 of this Order) and a hearing should be held as provided in paragraph 17 of this Order.

Class Certification

4.     For purposes of the settlement, the Court certifies the following Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

> all persons or entities who purchased Potash or products which contain Potash, for end use, indirectly from one of the Defendants in the United States during July 1, 2003 through the present and in

the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming. The Class excludes Defendants, and their parents, subsidiaries, affiliates, officers, directors, and employees and any co-conspirators and their parents, subsidiaries, affiliates, officers, directors, and employees. Also excluded are any federal, state, or local governmental entity, and any judge or judicial officer presiding over this matter, judicial staff and the members of their immediate families.

5.     Potash products refers to all forms of mineral and chemical salts that contain potassium (chemical symbol K), and a multitude of other elements in various combinations derived from mining naturally occurring ore deposits, including but not limited to, potassium chloride (KCl or muriate of potash (MOP)), potassium-magnesium sulfate (K2SO4·MgSO4 or sulfate of potash magnesia (SOPM)), carbonate of potash (K2CO3), or mixed sodium-potassium nitrate (NaNO3+KNO3 or Chilean saltpeter). Potash also includes manufactured potash known as potassium sulfate (K2SO4 or sulfate of potash (SOP)) or potassium nitrate (KNO3 or saltpeter).

6.     Subject to final approval of the settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action under Rule 23 are satisfied in that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) Plaintiffs and Lead Counsel (defined below) will fairly and adequately represent the Settlement Class; and (d) common issues predominate over any individual issues affecting the members of the Settlement Class. The Court further finds that Plaintiffs' interests are aligned with the interests of all other

members of the Settlement Class. The Court also finds settlement of this action on a class action basis superior to other means of resolving this matter. The Court appoints Marvin A. Miller of Miller Law LLC and Christopher Lovell of Lovell Stewart Halebian & Jacobson LLP as Lead Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment. The Court hereby appoints Kevin Gillespie, Gordon Tillman, Feyh Farms Company, William H. Coaker, Jr. and David Baier to serve as Class Representatives on behalf of the Settlement Class.

Notice to Potential Class Members

7.      The Court approves the Notice of Pendency and Proposed Settlement of Class Action (the "Settlement Notice"),  and finds that the publication of the Notice substantially in the manner and form complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

8.      The foregoing notice provisions are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

9.      As provided in the Settlement Agreement, Plaintiffs do not need to disseminate notice of the proposed settlement at this time but shall present to the Court a notice plan at such time as provided in paragraph 18 of the Settlement Agreement.

10.      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such

time as such funds shall be distributed pursuant to the Settlement Agreement and further order(s) of the Court.

11.     The Settlement Fund shall be a trust under Illinois law and, to the extent it is held at a financial institution designated by Lead Counsel or the Administrator, it shall be established as a fiduciary account and administered in accordance with the provisions of paragraph 16 of the Settlement Agreement.  The Court approves the establishment of the escrow account under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF.  Lead Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for payment of taxes, notice costs, and related expenses.

12.     All further indirect purchaser class proceedings as to the Settling Defendants and Releasees are hereby stayed, except for any actions required to effectuate the Settlement Agreement, or matters related to the Settlement Fund, including applications for attorneys' fees, reimbursement of expenses, and incentive awards to Class Representatives.

13.     Plaintiffs and Settlement Class members are hereby preliminarily enjoined, pending final approval of the settlement, from commencing or proceeding with any action against JSC Uralkali and JSC Silvinit or any of the Releasees that includes allegations or claims on account, or arising out of, relating to, or based on conduct alleged or asserted in this Action.

14.     If the Settlement Agreement is not approved by the Court, or is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the

Settlement Agreement, and without prejudice to the *status quo ante* rights of Plaintiffs, JSC Uralkali and JSC Silvinit, Releasees and the members of the Settlement Class.

Dated: _____

_____

Ruben Castillo, U.S.D.J.

EXHIBIT  C

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

# If You Bought Potash or A Product Containing Potash

## A class action lawsuit could affect you

*A court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- A class action lawsuit claims that among others, JSC Uralkali ("Uralkali") and the company formerly known as JSC Silvinit ("Silvinit"), which produce and sell Potash, violated federal and state laws by agreeing to fix the price of Potash sold in the United States. The lawsuit seeks compensation for those who have paid more for potash, including, for example, potash-based fertilizers, as a result of the defendants' improper conduct.

- As a consumer, you may be included if you paid for purchases of potash, including, for example, potash-based fertilizers during July 1, 2003 through the present indirectly from one of the defendants and in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming.

- The Court has not decided whether Uralkali and Silvinit did anything wrong. The sole purpose of this notice is to inform you of the lawsuit so that you can make an informed decision as to whether you should remain in this class action or exclude yourself. There is no money available now, and no guarantee that there will be. However, your legal rights are affected, and you have a choice to make now.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING STAY IN THE LAWSUIT** | **Stay in this lawsuit. Await the outcome. Share in possible benefits. Give up certain rights.** By doing nothing, you keep the possibility of getting money or other benefits that may come from the settlement with Uralkali and Silvinit. But, you give up any rights to sue Uralkali or Silvinit, as well as defendants JSC Belarusian Potash Company, BPC Chicago L.L.C., and JSC International Potash Company, on your own about the same legal claims in this |

| | lawsuit. |
|---|---|
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.** <br><br> If you ask to be excluded  you won't share in the money and benefits achieved by the settlement. But, you keep any rights to sue Uralkali and Silvinit, as well as defendants JSC Belarusian Potash Company, BPC Chicago L.L.C., and JSC International Potash Company, on your own about the same legal claims in this lawsuit. |

- Your options are explained in more detail in this notice.  To be excluded, you must act before **Month            00,                    2012**.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ........................................................ **PAGE 3**
1. Why was this Notice issued?
2. What is this lawsuit about?
3. What is a class action?

**WHO IS IN THE CLASS** ...................................................... **PAGE 4**
4. Who is included in the Class?
5. What if I'm still not sure if I am included in the Class?

**THE CLAIMS IN THE LAWSUIT** ............................................ **PAGE 4**
6. What are Plaintiffs asking for?
7. Is there any money available now?

**YOUR RIGHTS AND OPTIONS** .............................................. **PAGE 5**
8. What happens if I do nothing at all?
9. Why would I ask to be excluded?
10. How do I ask to be excluded?

**THE LAWYERS REPRESENTING YOU** ..................................... **PAGE 5**
11. Do I have a lawyer in this case?
12. How will the lawyers be paid?

**A TRIAL** ....................................................................... **PAGE 6**
13. How and when will the Court decide who is right?
14. Do I have to come to the trial?
15. Will I get money after the trial?

**GETTING MORE INFORMATION** .............................................. **PAGE 6**
16. Where can I get more information?

## BASIC INFORMATION

### 1. Why was this Notice issued?

A Court has preliminarily approved a Settlement Agreement and certified a settlement class. The class action is about the alleged conduct by Uralkali, Silvinit and others to fix the price of potash. If you are included, you have legal rights and options before the court decides whether the claims being made against the companies being sued on your behalf are correct. This notice explains all of these things.

The Court in charge of the case is the U.S. District Court for the Northern District of Illinois. The case is known as *In re Potash Antitrust Litigation*, No. 08-C-6910. U.S. District Court Judge Ruben Castillo is overseeing the case.

The people who sued are called plaintiffs, and the companies they sued are called the defendants, which in this case are, among others, Uralkali and Silvinit and other companies.

### 2. What is this lawsuit about?

The lawsuit relates to Defendants' sale of potash in the several states mentioned above. The lawsuit claims that Defendants violated federal and state laws by agreeing among themselves to fix the price for the sale of potash.

This lawsuit is only about pricing.

Defendants generally, and Uralkali and Silvinit in particular, deny that they did anything wrong. The Court has not decided which side is correct. The lawyers for the Class will have to prove their claims at a trial with respect to those defendants other than Uralkali and Silvinit.

### 3. What is a class action?

In a class action, one or more people, called class representatives, sue on behalf of people who have made similar claims. All these people are a "class" or "class members." One court resolves the issues for all class members, except for those who choose to exclude themselves from the class. More information about why the Court is allowing this lawsuit to be a class action is available at www.[Website].com.

## WHO IS IN THE CLASS

### 4. Who is included in the Class?

**Consumers**
You are included as a Class Member in this case if you made purchases, not for resale, of potash or potash-based fertilizer, for personal or family use indirectly from one of the defendants between July 1, 2003 and the present and in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska,

Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming.

### 5. What if I'm still not sure if I am included in the Class?

If you are still not sure whether you are included, you can get more information at www.[Website].com, or get free help by calling or writing the lawyers in this case, at the phone number or address listed in Question 11.

## THE CLAIMS IN THE LAWSUIT

### 6. What are Plaintiffs asking for?

Plaintiffs are seeking money on behalf of themselves and the Class. Plaintiffs want money to help reimburse Class Members who paid for potash or product which contain potash, typically fertilizer. Plaintiffs also want additional money that is available under certain laws that protect consumers from anti-competitive behavior by companies.

Uralkali and Silvinit claim that Plaintiffs should not recover any money and that they did not violate the law.

### 7. Is there any money available now?

Uralkali and Silvinit have agreed to pay $2,750,000 to create a Settlement Fund in receipt of a release of all claims asserted or which could have been asserted against them in the litigation and against JSC Belarusian Potash Company, BPC Chicago L.L.C., or JSC International Potash Company. The Settlement Fund will be held in escrow and will be disbursed in accordance with a plan of allocation, either separately or in conjunction with other funds received from other defendants and pursuant to order of the Court. The case will continue against those other defendants which have not agreed to settle or are not being released. There is no guarantee that any money or benefits will ever be obtained from those other defendants. You can register at www.[Website].com to be notified if the Court makes a decision or if any of the other defendants settle. If that happens then you may file a claim for a cash payment if money or benefits are ever awarded.

## YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded before the trial, and you have to decide this prior to **Month 00, 2012**.

### 8. What happens if I do nothing at all?

You don't have to do anything now if you want to remain a member of the Class. If you stay in the Class and the Plaintiffs obtain benefits of the settlement with Uralkali and Silvinit, you can be notified about how to file a claim for those benefits. To do so, you must register to receive notifications at www.[Website].com.

However, if you stay in the lawsuit, you will be legally bound by all of the decisions the Court makes in connection with this settlement. No matter whether Plaintiffs win or lose the trial, you will not be able to sue, or continue to sue, Uralkali and Silvinit, as well as defendants JSC Belarusian Potash Company, BPC Chicago L.L.C., and JSC International Potash Company, ever again as part of any other lawsuit about the same legal claims in this lawsuit.

**9. Why would I ask to be excluded?**

If you would like to pursue your own lawsuit or claim against Uralkali, Silvinit, JSC Belarusian Potash Company, BPC Chicago L.L.C., or JSC International Potash Company, for the claims in this case, or if you simply don't want to be part of this lawsuit against them, you need to ask to be excluded from the Class.

If you exclude yourself from the Settlement Class –sometimes called "opting-out" of the Class – you won't get any benefits from this lawsuit alleged against Uralkali and Silvinit. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action, and you may or may not be able to later sue Uralkali and Silvinit for the claims being made in the case.

If you wish to file your own lawsuit against Uralkali, Silvinit, JSC Belarusian Potash Company, BPC Chicago L.L.C., or JSC International Potash Company, after you exclude yourself, you will have to hire and pay your own lawyer (if you decide to retain one), and you will have to prove your claims.

**10. How do I ask to be excluded?**

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *In re Potash Antitrust Litigation,* No. _____. Be sure to include your name, address, telephone number, and signature. You must mail your Exclusion Request by **Month 00, 2012[13]** to Potash Class, PO Box 0000, City, ST 00000.

## THE LAWYERS REPRESENTING YOU

**11. Do I have a lawyer in this case?**

Yes. The Court has appointed the following lawyers to represent the Class as "Class Counsel":

| Marvin A. Miller | Christopher Lovell | |
|---|---|---|
| Miller Law LLC | Lovell Stewart Halebian | |
| 115 S. LaSalle Street, Suite 2910 | Jacobson LLP | |
| Chicago, IL 60603 | 61 Broadway, Suite 501 | |
| | New Yrok, NY | |

The lawyers handling the case are experienced in handling similar cases.

**12. How will the lawyers be paid?**

You will not be charged personally for these lawyers. Class Counsel will ask the Court for payment of their fees and reimbursement of their litigation costs. You will not have to pay these fees and expenses out of your own pocket. If the Court approves Class Counsel's request for payment, the fees and expenses will be deducted from the money obtained for the Class.

## A TRIAL

**13. How and when will the Court decide who is right?**

If the case is not dismissed or settled, Class Counsel will have to prove the Class claims at a trial that will take place at the U.S. District Courthouse for the Northern District of Illinois, 219 S. Dearborn, Chicago, IL. There is no guarantee that Class Counsel will win any money or benefits for the Class against the nonsettling defendants.

**14. Do I have to come to the trial?**

No. You will not need to attend unless you choose to do so. Class Counsel will present the case for the Class, and the lawyers for the nonsettling defendants will present their defenses. You and/or your own lawyer are welcome to appear in this case, at your own expense.

**15. Will I get money after the trial?**

If Class Counsel obtains money or benefits as a result of the trial or a settlement, and you're registered to receive updates about this case, you will be notified about how to file a claim or what your other options are at that time. These things are not known right now. Court orders and other important information about the case will be posted on the website, www.[Website].com as they become available.

## GETTING MORE INFORMATION

**16. Where can I get more information?**

If you want more detailed information, you may visit the website www.[Website].com where you will find the important case-related documents. You may also call toll-free at 1-800-000-0000 for more information, or write to Flonase Class, PO Box 0000, City, ST 00000.

EXHIBIT  D

# If You Bought Potash or A Product Containing Potash

## A class action lawsuit could affect you

There is a lawsuit against JSC Uralkali ("Uralkali") and the company formerly known as JSC Silvinit ("Silvinit") and others which produce and sell Potash. The Court in charge of the lawsuit has granted preliminary approval of a partial settlement of the lawsuit which includes a provision that, for purposes of settlement with Uralkali and Silvinit, the case should be a class action on behalf of a "Class," or group of people, that could include you. The Court has not decided which side of the lawsuit is right. Uralkali and Silvinit have denied any liability but have agreed to pay $2,750,000 to create a settlement fund. There is no money available now from the other defendants and no guarantee that there will be in the future.

### What is this case about?

The lawsuit claims that Uralkali and Silvinit, and the other producers of Potash violated state and federal laws by agreeing to fix the price of Potash during the period July 1, 2003 to the present. The lawsuit claims the defendants allegedly agreed to fix the price of Potash and consequently, the price of products which contain Potash, including, for example, Potash-based fertilizer. Defendants deny they did anything wrong. However, Uralkali and Silvinit have agreed to pay $2,750,000 to settle the claims asserted against them, subject to approval from the Court. The lawyers for the Class will have to prove their claims in Court against the other defendants.

### Are you included?

You are included as a Class Member in this case if you made certain purchases, not for resale, of Potash or products which contain Potash indirectly from one or more defendants in: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming.

### Who represents the Class?

The Court has appointed a group of attorneys as "Class Counsel" to represent the "Class." You don't have to pay Class Counsel or anyone else to participate. Instead, they will ask the Court to award attorneys' fees and costs. Any fees and costs would be deducted from any money obtained, or paid separately by Defendants. You may hire your own lawyer to appear in Court for you, but if you do, you have to pay that lawyer.

### What are your options?

To stay in the Class, you do not have to do anything but you will be bound by all Court rulings and you will not be able to sue Uralkali or Silvinit or defendants JSC Belarusian Potash Company, BPC Chicago L.L.C., and JSC International Potash Company over the claims in this case. You may register at www.[Website].com to be notified if money or benefits become available. If you want to keep your rights to sue Uralkali or Silvinit, as well as defendants JSC Belarusian Potash Company, BPC Chicago L.L.C., and JSC International Potash Company, on your own over the claims in this case, you need to exclude yourself. If you exclude yourself, you cannot get money or benefits from this part of the lawsuit. The deadline to exclude yourself is **Month 00, 2012[13]**. More information about how to exclude yourself is available at the website or by calling the toll-free number below.

**For more information: 1-800-000-0000 www.[Website].com**

# EXHIBIT  E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: POTASH ANTITRUST LITIGATION | MDL Docket No. 1996<br>No. 08-C-6910 |
| *THIS DOCUMENT APPLIES TO:*<br>*ALL INDIRECT PURCHASER ACTIONS* | Judge Ruben Castillo |

**FINAL ORDER AND JUDGMENT OF CLASS ACTION**
**AS TO SETTLING DEFENDANTS**

This matter having come before the Court for approval of a settlement of the above-caption consolidated class action litigation (the "Action"), pursuant to this Court's November ____, 2012 Preliminary Order in Connection with Settlement Proceedings (the "Preliminary Order"), and the Court having heard all parties and having considered all papers filed in connection therewith, it is

**ORDERED, ADJUDGED AND DECREED:**

1.    Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Stipulation and Agreement of Settlement dated September 20, 2012 (the "Stipulation").

2.    This Court has jurisdiction over the subject matter of the Action (and all actions and proceedings consolidated in the Action), and over Lead Plaintiffs, all Class Members and Defendants.

3.    The Court finds and determines that the Action may proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons or entities who purchased potash products indirectly for end use, from

the Defendants in the United States, and/or Indirect Purchaser States (defined below), or the consumer fraud states (defined below), and/or the unjust enrichment states (defined below) during the Class Period. The Class excludes Defendants, and their parents, subsidiaries, affiliates, officers, directors, and employees and any co-conspirators and their parents, subsidiaries, affiliates, officers, directors, and employees. Also excluded, are any federal, state, or local governmental entity, and any judge or judicial officer presiding over this matter, judicial staff and the members of their immediate families. Also excluded from the Class are persons or entities, if any, who requested exclusion as listed on Exhibit A hereto. The Court further finds and determines, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that those persons who are members of the Class are so numerous that joinder is impracticable, that there are issues of law or fact common to the Class, that the claims of the Lead Plaintiffs are typical of the Class, and that Lead Plaintiffs and their Interim Lead Counsel have fairly and adequately represented the interests of the members of the Class in enforcing their rights in the Action. The Court also finds that under Rule 23(b)(3) of the Federal Rules of Civil Procedure, questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the subject matter of the Action.

4.      Based upon the evidence submitted by Lead Counsel, this Court finds that the form of and method of dissemination of the published, as previously approved by the Court, to all members of the Class, was adequate and reasonable and constituted the best notice practicable under the circumstances.

5.      The Court also finds that the notice, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and

2

any other applicable law, and constituted due and sufficient notice of the matters set forth therein.

6.      The proposed Dismissal and Settlement Agreement is, in all respects, approved as fair, reasonable and adequate, meets the requirements of due process, and is in the best interests of the Class, especially in light of the complexity, expense and probable duration of further litigation, the risks of establishing liability and damages, the arm's-length negotiation of experienced counsel, and the reasonableness of the recovery herein considering the range of possible recovery and the attendant risks of litigation.  The parties are directed to consummate the Voluntary Dismissal and Settlement in accordance with the terms and provisions of the Voluntary Dismissal and Settlement Agreement.

7.      The Lead Plaintiffs and all members off the Class, and their respective heirs, executors, administrators, personal representatives, successors, assigns, guardians, conservators, attorneys-in-fact, or other agents for and in consideration of the Settlement and other good and sufficient consideration, are hereby permanently barred and permanently enjoined from instituting, maintaining, prosecuting or participating in, either directly or indirectly, any action or other proceeding relating in any way to, or otherwise asserting, any of the Settled Claims, including all Unknown Claims, against any of the Defendants or the Released Parties, and shall conclusively be deemed to have released and forever discharged as by an instrument under seal, any and all Settled Claims whatsoever, including all Unknown Claims, against Defendants and the other Released Parties.  Lead Plaintiffs, and all other members of the Class who have not properly excluded themselves from the Class, shall further and conclusively be deemed to have waived the rights afforded by California Civil Code §1542 and any other statute or law, or

principle of common law, of any other jurisdiction which is similar, comparable, or equivalent to Cal. Civ. Code §1542.

8.  All the Released Parties are hereby barred and permanently enjoined from prosecuting against any Lead Plaintiff or members of the Class, and their respective heirs, executors, administrators, personal representatives, successors, assigns, guardians, conservators, attorneys-in-fact, or other agents and Plaintiffs' Counsel, and each of them, any claim arising out of or relating to the institution, prosecution, assertion or resolution of the Action, except against any Lead Plaintiff, member of the Class or Plaintiffs' Counsel who or which commences an action or other proceeding in violation of this Final Order and Judgment.

9.  Without in any way affecting the finality of this Final Order and Judgment, this Court shall retain continuing exclusive jurisdiction over all matters relating to the Action and the Settlement Agreement, including but not limited to matters relating to the administration, interpretation, effectuation or enforcement of the Settlement and related papers hereby approved, enforcement of this Final Order and Judgment, as well as matters relating to applications for fees and expenses incurred relating to the Action.

10. No request for exclusion having been received, no person who is a member of the Class is excluded from the Class.

11. Neither the Settlement, this Final Order and Judgment, nor the Stipulation, nor any other papers relating to the Settlement, nor any negotiations, discussions or proceedings in connection herewith shall be:

(a)  offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any fact alleged by Lead Plaintiffs or the validity of any

claim that has been or could have been asserted in the Action or in any other proceeding, or the deficiency of any defense that has been or could have been asserted in the Action or in any other proceeding, or of any alleged liability, fault, or wrongdoing of Settling Defendants or Released Parties;

(b)  offered or received against Settling Defendants or Released Parties as evidence of a presumption, concession, or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Settling Defendant or Released Parties, or against Lead Plaintiffs and the Class as evidence of any infirmity in the claims of Lead Plaintiffs and the Class;

(c)  offered or received against any Settling Defendant or Released Parties as evidence of a presumption, concession, or admission of any alleged liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Settlement Agreement, in any other civil, criminal or administrative action or other proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement; provided, however, that if the Settlement Agreement is approved by the Court, Defendants may refer to it to effectuate the liability protection granted them hereunder;

(d)  construed against any Settling Defendant or Released Parties or Lead Plaintiffs and the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)  construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or the Class or their counsel or any of them that

any of the claims asserted in this Action are without merit or that damages are recoverable under the Complaint.

12.     Neither the Settlement Agreement nor this Final Order and Judgment, nor any other papers relating to the Settlement, nor any negotiations, discussions or proceedings in connection herewith shall be construed as an admission by any person or entity with regard to the merit or lack of merit of their claims in the Action.

13.     The Court finds that each party and each attorney representing any party in the Action complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

14.     The provisions of this Final Order and Judgment constitute a full and complete adjudication of the matters considered and adjudged herein, and the Court determines that there is no just reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  The Clerk is hereby directed to enter Judgment in accordance with this Final Order and Judgment as a final judgment with respect to all matters ordered, judged and decreed.

15.     Entry of Judgment and final approval of the Settlement settles and disposes of and discharges all claims that have been asserted or could have been asserted in the Action only against Settling Defendants and Released Parties.

Dated: _____, 2012

_____
Ruben Castillo
United States District Judge

6

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Marvin A. Miller, one of the attorneys for plaintiffs, hereby certify that on , service of Indirect Purchaser Class Plaintiffs' Motion For Preliminary Approval of Settlement with JSC Uralkali ("Uralkali") and JSC Silvinit ("Silvinit"), was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

*/s/ Marvin A. Miller*